

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

JAN 1 9 2022

CLERK, U.S. DISTRICT COURT

By _____
Deputy

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS

Civil Action No. **2-22CV-006-Z**

Hunter Tyler Schreck,

   Plaintiff,

v.

City of Amarillo, a Texas municipality; Randall County, a Texas municipality; Potter County, a Texas Municipality; Randall County District Attorney's Office; Robert Love, Dave Blount; Warren Clark; Randall County Clerk of Court's Office; Joel Forbis; Randall County District Courts; Judge Dan L. Schaap; Judge Ana Estevez; Judge Kent Sims; Angela Johnson; Andrea Weigle; Justice of the Peace; Randall County Jail; Amarillo Police Department; Chief Martin Birkenfeld; Officer Daniel Rivera; Officer Samantha Fontenot; Officer Allison Muncell; Officer Matthew Brush; Sergeant Anthony Merryman; Detective Shea Lichtie; Officer Daniel Smith; Officer Wiley D. Frazier; Jason Bailey; Sergeant Jason Riddlespurger; Sergeant Eatley; Ryann Kass; W. Brooks Barfield; Samantha Wilson; Jubilee Apostolic Church; Nathan Carrington; Rolonda Carrington; Nataley Carrington; Aaron Gurule; Dana Gurule; Maria Veronica Canales; Victor Pimentel; George Hastings; Deborah Rauh; Dr. Ron Rankin; Leann Rhimes; Samona Pearson; Margaret Pearson; Timothy Bailey; Ileta Bailey; Ashley Hinsley; Blake Hume; Blake Couch, Maya Couch, Amaya Couch; Maya Coutoh; Kreston Cahoon; Jim Pops Couch; Stephen Dunlap; Adriana Cortez; Angelica Esparza; Brayan Zubiate; Chris Boroughs; Christian Morgan; Mariah Rose Murillo; Nyah Gonzalez; Andres Soria; Baptist St. Anthony Hospital; Dr. Thomas Martin; Dr. Gina Matteson; and John Does 1-500,

   Defendants.

---

## VERIFIED COMPLAINT AND JURY DEMAND

---

1

The Plaintiff, Hunter Tyler Schreck ("HUNTER" or "PLAINTIFF"), by and through his mother Marcie Schreck by virtue of her Texas Statutory Durable Power of Attorney, respectfully alleges this *Verified Complaint and Jury Demand* ("COMPLAINT") and avers as follows:

## PRELIMINARY STATEMENT

# "A police man can not arrest a man who has not done no breaking of law."

1.      "A police man can not arrest a man who has not done no breaking of law." Those were the words of HUNTER Tyler Schreck in his Diary following his beating and arrest on June 24, 2020. [EXHIBIT 99.]

2.      First, this is a civil rights action to seek relief for the Defendants' violations of rights secured by the Ku Klux Klan Act (Civil Rights Act of 1871) and 42 U.S.C. § 1983 and the rights secured by the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution and rights secured under the Constitution and common law of the State of Texas.

3.      This is an action for declaratory relief pursuant to 28 U.S.C. § 2201 & § 2202; for injunctive relief, pursuant to Rule 65 of the Federal Rules of Civil

Procedure ("FRCP"); and for other relief.

4.      Defendants have conspired to perpetrate a fraud directed squarely at the integrity of the courts' decision-making.  Intentional misstatements or omissions of material facts with knowledge of falsity or in reckless disregard for whether statements were true or false were made by some of the Defendants.

5.      HUNTER brings this action against JUDGE DAN L. SCHAAP, a judicial officer, pursuant in part to 28 U.S.C. § 1331, in claims arising from violations of federal Constitutional rights guaranteed in the First, Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments to the U.S. Constitution and redressable pursuant to *Bivens v. Six Unknown Narcotics Agents*.

6.      ***PLEASE NOTE:  HUNTER was charged with assault on a police officer when his face and body were hit by the fists, boots, and guns of Amarillo Police officers.  This is Randall County District Court Criminal Case Number 30487A.  HUNTER has been denied access to most of the discovery in that case and from Texas Public Information Act Requests.  As a result, significant detail and the identities of some of the perpetrators of the assault on HUNTER and the conspiracy are not yet available.  This COMPLAINT should be amended when that information is available.***

## JURISDICTION

7.     HUNTER alleges deprivation of rights secured by the United States Constitution and Bill of Rights as protected by *Bivens*, 42 U.S.C. § 1983; the Americans with Disabilities Act, 42 U.S.C. § 12131; and the Rehabilitation Act, 29 U.S.C. § 794.

8.     This Court has subject matter jurisdiction pursuant to 42 U.S.C. § 1983 as Defendants were acting under color of state law; 28 U.S.C. § 1331 because acts complained of raise federal questions under the Constitution and laws of the United States; and 28 U.S.C. § 1343(a)(3)(4).

9.     HUNTER's claims for declaratory and injunctive relief are authorized by 28 U.S.C. § 2201 and § 2202 and Rule 57 of the FRCP.

10.    This Court has authority to award attorneys' fees pursuant to 42 U.S.C. § 1988.

11.    HUNTER further invokes this Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(a) over any and all state Constitutional and state law claims that are so related to the claims within the original jurisdiction of this Court that they form a part of the same case of controversy.

12.     Venue is proper in this District under 28 U.S.C. § 1391 (b) and (c) on the grounds that most of the events alleged herein occurred within the State of Texas or were directed at individuals within the State of Texas.

## SUBJECT MATTER JURISDICTION

13.     This Court has subject matter jurisdiction.  Texas statutes [EXHIBIT 158] and HUNTER's Texas Statutory Durable Power of Attorney [EXHIBIT 400] give Marcie Schreck and/or William M. Windsor the legal authority to serve as attorneys-in-fact for HUNTER TYLER SCHRECK in all litigation.  This is the law in Texas, and the statute makes any federal rule of procedure inapplicable.

14.     This is the law in this Circuit.

"The Rules Enabling Act confers upon the Supreme Court rulemaking authority over general matters of practice and procedure in the federal courts. The Act mandates, however, that these **federal procedural rules 'shall not abridge, enlarge or modify any substantive right**.' 28 U.S.C. Sec. 2072." *Exxon Corp. v. Burglin*, 42 F.3d 948 (5th Cir. 1995). [**emphasis added**.]

15.     Texas statutes establish substantive rights for citizens of Texas. Black's Law Dictionary defines "substantive right" as "that part of the law which the courts are established to administer, as opposed to the rules according to which the substantive law itself is administered. That part of the law which creates,

5

defines, and regulates rights, as opposed to adjective or remedial law, which prescribes the method of enforcing rights or obtaining redress for their invasion.

16.    Substantive law is Texas statutes.

17.    Adjective or remedial law is rules of procedure.

18.    28 U.S. Code § 2072 provides: "Rules of procedure and evidence; power to prescribe…(b) Such rules shall not abridge, enlarge or modify any substantive right."

19.    This Court cannot deny subject matter jurisdiction as to do so would be violations of the Texas Constitution:

Texas Constitution Article I Sec. 1. FREEDOM AND SOVEREIGNTY OF STATE. "Texas is a free and independent State, subject only to the Constitution of the United States, and the maintenance of our free institutions and the perpetuity of the Union depend upon the preservation of the right of local self-government, unimpaired to all the States."

Texas Constitution Article I Sec. 28. SUSPENSION OF LAWS. "No power of suspending laws in this State shall be exercised except by the Legislature."

Texas Constitution Article I Sec. 29. BILL OF RIGHTS EXCEPTED FROM POWERS OF GOVERNMENT AND INVIOLATE. "To guard against transgressions of the high powers herein delegated, we declare that everything in this 'Bill of Rights' is excepted out of the general powers of government, and shall forever remain inviolate, and all laws contrary thereto, or to the following provisions, shall be void."

20.    Federal Rules of Civil Procedure Rule 17(b) says: "Capacity to sue or be sued is determined as follows: (3)…by the law of the state where the court is

6

located." Therefore, TEXAS law applies, and Texas law trumps federal rules of procedure.

21. Federal Rules of Civil Procedure Rule 17(c) says: "The following representatives may sue or defend on behalf of a minor or an incompetent person: (D) a like fiduciary."

22. Texas Statute Chapter 752 defines those who serve as attorneys-in-fact to be fiduciaries:

> "Sec. 752.001. USE, MEANING, AND EFFECT OF STATUTORY DURABLE POWER OF ATTORNEY. (a) **A person may use a statutory durable power of attorney to grant an attorney in fact** or agent powers with respect to a person's property and financial matters." [**emphasis added**.]

> "Sec. 752.051. "THE AGENT, BY ACCEPTING OR ACTING UNDER THE APPOINTMENT, ASSUMES THE **FIDUCIARY AND OTHER LEGAL RESPONSIBILITIES** OF AN AGENT." [**emphasis added**.]

> "Sec. 752.101. CONSTRUCTION IN GENERAL. By executing a statutory durable power of attorney that confers authority with respect to any class of transactions, **the principal empowers the attorney in fact or agent for that class of transactions to: (1) demand, receive, and obtain by litigation, action, or otherwise any money or other thing of value to which the principal is, may become, or may claim to be entitled;(5) with respect to a claim existing in favor of or against the principal: (A) prosecute, defend, submit to arbitration, settle, and propose or accept a compromise; or (B) intervene in an action or litigation relating to the claim**…." [**emphasis added**.]

> "Sec. 752.110. CLAIMS AND LITIGATION. **The language conferring general authority with respect to claims and litigation in a statutory durable power of attorney empowers the attorney in fact or agent to**:

"(1) **assert and prosecute before a court or administrative agency a claim, a claim for relief**, a counterclaim, or an offset, or defend against an individual, a legal entity, or a government, including an action to:

    (A) recover property or other thing of value;
    (B) **recover damages sustained by the principal**;
    (C) eliminate or modify tax liability; or
    (D) **seek an injunction, specific performance, or other relief**..."

23.    HUNTER is mentally incompetent to maintain this action on his own accord. He sustained a severe Traumatic Brain Injury from a 6/24/2020 assault. On September 17, 2021, Dr. Jay Faber, MD, of Amen Clinic signed a report on HUNTER that documented a brain injury. [EXHIBIT 399.] [EXHIBIT 237.] [EXHIBIT 373.] [EXHIBIT 374.] [EXHIBIT 375.] On Page 4 of EXHIBIT 399, Dr. Jay Faber said "TBI (Traumatic Brain Injury) since violent assault." On Page 10 of EXHIBIT 399, Dr. Jay Faber said the scans showed "decreased tracer activity" "suggestive of a past history of brain injury." On Page 10 of EXHIBIT 399, Dr. Jay Faber also made Findings of "Brain Injury. A combination of findings suggests past brain injury. These findings include: Decreased left and right temporal lobe activity and Decreased parietal lobe activity." These findings continued on Page 11 with "Decreased left and right occipital lobe activity and Decreased activity along the longitudinal fissure." On Page 12 of EXHIBIT 399, Dr. Jay Faber expressed primary concerns of "onset of paranoia and auditory

hallucinations following a traumatic brain injury; anxiety; and difficulties with focus, memory, and other probable cognitive issues." On Page 13 of EXHIBIT 399, Dr. Jay Faber made this Diagnosis: "Psychotic disorder with delusions; Psychotic disorder with Hallucinations; Other specified mental disorders; Unspecified mood (affective) disorder; and Diffuse traumatic brain injury." Dr. Jay Faber, MD, is a Physician with Amen Clinics; he is a Child, Adolescent and Adult Psychiatrist; he is a Diplomate with the American Board of Psychiatry and Neurology. [EXHIBIT 398.]

24.    This is evidence of incompetency related to the present time. This is HUNTER's current status, though it should be noted his condition further deteriorated on 10/20/2021 due to panic and anxiety inflicted by Judge Dan L. Schaap.

25.    See *Tolbert v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 657 F.3d 262 (5th Cir. 2011); *Kappius v. Lyman-Richey Corporation*, 113018 NEWC, 0169 (Nebraska Workers' Compensation Decisions, 2018; *Flood ex rel. Oakley v. Holzwarth*, 182 S.W.3d 673 (Mo. App. 2005).

26.    Federal courts have recognized "a per se rule" that a parent satisfies dedication to a plaintiff's best interests. (See *Vargas v. Lambert*, 159 F.3d 1161, 1168 (9th Cir. 1998); *Mendonca v. I.N.S.*, 52 F.Supp.2d 155 (D. Mass. 1999).)

9

27.   Marcie Schreck ("MARCIE") has presented appropriate evidence of the appointment of a representative for the incompetent person under state law. EXHIBIT 400 is the Texas Statutory Durable Power of Attorney filed as part of the public records in Randall County Texas.

28.   Federal Rules of Civil Procedure Rule 17(c)(2) provides that "[a] minor or an incompetent person who does not have a duly appointed representative may sue by a next friend or by a guardian ad litem."

29.   This does not apply in the instant case because HUNTER has two duly appointed representatives.

## PARTIES

30.   Hunter Tyler Schreck ("PLAINTIFF" or "HUNTER" or "HUNTER TYLER SCHRECK") is a citizen of the United States and is a resident of Randall County Texas.  He has given his mother, MARCIE Schreck, his Statutory Durable Power of Attorney, referenced and incorporated herein. [EXHIBIT 25.]  HUNTER TYLER SCHRECK and MARCIE Schreck live at 6302 Oakcrest Lane, Amarillo, Texas 79109, 254-651-7078, StarSchreck7@outlook.com.  HUNTER TYLER SCHRECK has an Autism Spectrum Disorder.  It is a neurological condition with three association impairments: social communication, social interaction, and social

10

imagination/play. "Autism is a lifelong developmental disability, sometimes referred to as Autistic Spectrum Disorder (ASD) or Autistic Spectrum Condition (ASC). Its causes are not fully understood, although there is some evidence that genetic factors are involved. The term 'spectrum' is used because, while all people with autism share three main areas of difficulty, their condition affects them in different ways. Some can live relatively independently – in some cases without any additional support – while others require a lifetime of specialist care." [EXHIBIT 101.]

31.    Defendant City of Amarillo Texas ("CITY OF AMARILLO") is a political subdivision of the state of Texas and a "person" subject to suit within the meaning of 42 U.S.C. § 1983. The CITY OF AMARILLO is legally responsible for virtually all of the wrongdoing and crimes committed against HUNTER. CITY OF AMARILLO Texas, 601 S Buchanan, Amarillo, Texas 79101, 806-378-3000, bryan.mcwilliams@amarillo.gov.

32.    Amarillo Police Department ("AMARILLO POLICE DEPARTMENT") is a political subdivision of the state of Texas and a "person" subject to suit within the meaning of 42 U.S.C. § 1983. The AMARILLO POLICE DEPARTMENT is legally responsible for much of the wrongdoing and crimes committed against HUNTER. Amarillo Police Department, 200 SE 3rd Avenue,

11

Amarillo, Texas 79101, martin.birkenfeld@amarillo.gov, 806-378-3038.

33.     Chief Martin Birkenfeld ("CHIEF MARTIN BIRKENFELD") was the Chief of Police of the AMARILLO POLICE DEPARTMENT.  CHIEF MARTIN BIRKENFELD acted as Chief under authority given by the CITY OF AMARILLO and the laws of the State of Texas at the time these claims occurred. CHIEF MARTIN BIRKENFELD was in charge of the operations and actions of the personnel in his employ.  CHIEF MARTIN BIRKENFELD had final authority to make policy for the AMARILLO POLICE DEPARTMENT and has been delegated authority by CITY OF AMARILLO to create or execute a policy which governs the conduct of law enforcement officers and jail personnel as it relates to arrest, detention, determinations of probable cause, and bail.  At all times relevant, CHIEF MARTIN BIRKENFELD was acting under color of law.  He is sued in his individual capacity and his official capacity.  CHIEF MARTIN BIRKENFELD, AMARILLO POLICE DEPARTMENT, 200 SE 3rd Avenue, Amarillo, Texas 79101 or 7200 Hayes Road, Amarillo, Texas 79124, birk@arn.net, martin.birkenfeld@amarillo.gov, 806-378-3038.

34.     Defendant Randall County Texas ("RANDALL COUNTY") is a political subdivision of the state of Texas and a "person" subject to suit within the meaning of 42 U.S.C. § 1983.  RANDALL COUNTY is legally responsible for

12

much of the wrongdoing and crimes committed against HUNTER. Christy Dyer is the County Judge, RANDALL COUNTY, 501 16th Street, Suite 305, Canyon, Texas 79015, 806-468-5500, countyjudge@randallcounty.com, christy.dyer@randallcounty.com.

35. Defendant Potter County Texas ("POTTER COUNTY") is a political subdivision of the state of Texas and a "person" subject to suit within the meaning of 42 U.S.C. § 1983. POTTER COUNTY conspired with NATHAN CARRINGTON to start this Criminal Racketeering Operation. POTTER COUNTY, 500 S Fillmore, Amarillo, Texas 79101, 806-379-2246, info@co.potter.tx.us.

36. Defendant Daniel Rivera ("OFFICER DANIEL RIVERA") is a natural person and was at all times relevant to this Complaint duly appointed and sworn as a police officer for the CITY OF AMARILLO in Amarillo, Randall County Texas. At all times relevant hereto, OFFICER DANIEL RIVERA was acting under color of law, including when his actions were in violation of the laws of the State of Texas and the Constitutions and laws of the United States of America and Texas. OFFICER DANIEL RIVERA is a named Defendant in his individual capacity and his official capacity. As detailed herein, OFFICER DANIEL RIVERA committed significant wrongdoing, assaulted HUNTER

repeatedly, attempted to murder him, and committed aggravated perjury. OFFICER DANIEL RIVERA, Amarillo Police Department, 200 SE 3rd Avenue, Amarillo, Texas 79101, 806-378-3038, daniel02.rivera@hotmail.com.

37.    Defendant Samantha Fontenot ("OFFICER SAMANTHA FONTENOT") is a natural person and was at all times relevant to this Complaint duly appointed and sworn as a police officer for the CITY OF AMARILLO in Amarillo, Randall County Texas.  At all times relevant hereto, OFFICER SAMANTHA FONTENOT was acting under color of law, including when her actions were in violation of the laws of the State of Texas and the Constitutions and laws of the United States of America and Texas.  OFFICER SAMANTHA FONTENOT is a named Defendant in her individual capacity and her official capacity.  As detailed herein, OFFICER SAMANTHA FONTENOT committed significant wrongdoing, assaulted HUNTER repeatedly, attempted to murder him, and committed aggravated perjury.  OFFICER SAMANTHA FONTENOT, Amarillo Police Department, 200 SE 3rd Avenue, Amarillo, Texas 79101, 806-378-3038, samantha8331@gmail.com.

38.    Defendant Officer Allison Muncell ("OFFICER ALLISON MUNCELL") is a natural person and was at all times relevant to this Complaint duly appointed and sworn as a police officer for the City of Amarillo in Amarillo,

14

Randall County Texas. At all times relevant hereto, OFFICER ALLISON MUNCELL was acting under color of law, including when her actions were in violation of the laws of the State of Texas and the Constitutions and laws of the United States of America and Texas. OFFICER ALLISON MUNCELL is a named Defendant in her individual capacity and her official capacity. OFFICER ALLISON MUNCELL knew HUNTER is mentally disabled. OFFICER ALLISON MUNCELL, Amarillo Police Department, 200 SE 3rd Avenue, Amarillo, Texas 79101, 806-378-3038.

39. Defendant Officer Matthew Brush ("OFFICER MATTHEW BRUSH") is a natural person and was at all times relevant to this Complaint duly appointed and sworn as a police officer for the CITY OF AMARILLO in Amarillo, Randall County Texas. At all times relevant hereto, OFFICER MATTHEW BRUSH was acting under color of law, including when his actions were in violation of the laws of the State of Texas and the Constitutions and laws of the United States of America and Texas. OFFICER MATTHEW BRUSH is a named Defendant in his individual capacity and his official capacity. OFFICER MATTHEW BRUSH knew HUNTER is mentally disabled, but he said nothing. OFFICER MATTHEW BRUSH, Amarillo Police Department, 200 SE 3rd Avenue, Amarillo, Texas 79101 or 8406 San Antonio Drive, Amarillo, Texas

15

79118, 806-378-3038 or 806-354-0374.

40.    Defendant Sergeant Anthony Merryman ("SERGEANT ANTHONY MERRYMAN") is a natural person and was at all times relevant to this Complaint duly appointed and sworn as a police officer for the CITY OF AMARILLO in Amarillo, Randall County Texas.  At all times relevant hereto, SERGEANT ANTHONY MERRYMAN was acting under color of law, including when his actions were in violation of the laws of the State of Texas and the Constitutions and laws of the United States of America and Texas.  SERGEANT ANTHONY MERRYMAN is a named Defendant in his individual capacity and his official capacity.  Upon information and belief, SERGEANT ANTHONY MERRYMAN is with Internal Affairs, which allegedly said there was no excessive force or police brutality.  SERGEANT ANTHONY MERRYMAN and Internal Affairs at the AMARILLO POLICE DEPARTMENT are truly a criminal racketeering operation. SERGEANT ANTHONY MERRYMAN, Amarillo Police Department, 200 SE 3rd Avenue, Amarillo, Texas 79101, Anthony.Merryman@amarillo.gov, amerryman@gmail.com, 806-378-4200.

41.    Defendant Detective Shea Lichtie ("DETECTIVE SHEA LICHTIE") is a natural person and was at all times relevant to this Complaint duly appointed and sworn as a police officer for the CITY OF AMARILLO in Amarillo, Randall

County Texas. At all times relevant hereto, DETECTIVE SHEA LICHTIE was acting under color of law, including when his actions were in violation of the laws of the State of Texas and the Constitutions and laws of the United States of America and Texas. DETECTIVE SHEA LICHTIE is a named Defendant in his individual capacity and his official capacity. DETECTIVE SHEA LICHTIE committed AGGRAVATED PERJURY when he signed the Complaint against HUNTER. Cocky DETECTIVE SHEA LICHTIE told MARCIE Schreck that HUNTER was going to be prosecuted to the full extent of the law. HUNTER TYLER SCHRECK wishes the same for DETECTIVE SHEA LICHTIE. DETECTIVE SHEA LICHTIE, Amarillo Police Department, 200 SE 3rd Avenue, Amarillo, Texas 79101, 806-378-3038.

42.    Defendant Officer Daniel Smith ("OFFICER DANIEL SMITH") is a natural person and was at all times relevant to this Complaint duly appointed and sworn as a police officer for the CITY OF AMARILLO in Amarillo, Randall County Texas. At all times relevant hereto, OFFICER DANIEL SMITH was acting under color of law, including when his actions were in violation of the laws of the State of Texas and the Constitutions and laws of the United States of America and Texas. OFFICER DANIEL SMITH is a named Defendant in his individual capacity and his official capacity. OFFICER DANIEL SMITH was

17

especially brutal in his physical attacks on HUNTER, and the joy he expressed should make any decent human being sick at their stomach. OFFICER DANIEL SMITH appears to be dumber than a box of rocks, but that does not forgive him of his crimes. OFFICER DANIEL SMITH, Amarillo Police Department, 200 SE 3rd Avenue, Amarillo, Texas 79101, 806-378-3038.

43.   Officer Wiley D. Frazier, ("OFFICER WILEY D. FRAZIER") is a natural person and was at all times relevant to this Complaint duly appointed and sworn as a police officer for the CITY OF AMARILLO in Amarillo, Randall County Texas. At all times relevant hereto, OFFICER WILEY D. FRAZIER was acting under color of law, including when his actions were in violation of the laws of the State of Texas and the Constitutions and laws of the United States of America and Texas. OFFICER WILEY D. FRAZIER is a named Defendant in his individual capacity and his official capacity. OFFICER WILEY D. FRAZIER knew HUNTER is mentally disabled, but he said nothing. OFFICER WILEY D. FRAZIER, Amarillo Police Department, 200 SE 3rd Avenue, Amarillo, Texas 79101, 806-378-3038.

44.   Officer Jason Bailey, ("OFFICER JASON BAILEY") is a natural person and was at all times relevant to this Complaint duly appointed and sworn as a police officer for the CITY OF AMARILLO in Amarillo, Randall County Texas.

At all times relevant hereto, OFFICER JASON BAILEY was acting under color of law, including when his actions were in violation of the laws of the State of Texas and the Constitutions and laws of the United States of America and Texas. OFFICER JASON BAILEY is a named Defendant in his individual capacity and his official capacity. OFFICER JASON BAILEY, Amarillo Police Department, 200 SE 3rd Avenue, Amarillo, Texas 79101 or 5714 Brinkman Drive, Amarillo, Texas 79106, 806-378-3038 or 806-584-4487, jbay341@gmail.com, jasbailey@hotmail.com.

45.    Sergeant Jason Riddlespurger, ("SERGEANT JASON RIDDLESPURGER") is a natural person and was at all times relevant to this Complaint duly appointed and sworn as a police officer for the CITY OF AMARILLO in Amarillo, Randall County Texas. At all times relevant hereto, SERGEANT JASON RIDDLESPURGER was acting under color of law, including when his actions were in violation of the laws of the State of Texas and the Constitutions and laws of the United States of America and Texas. SERGEANT JASON RIDDLESPURGER is a named Defendant in his individual capacity and his official capacity. SERGEANT JASON RIDDLESPURGER, Amarillo Police Department, 200 SE 3rd Avenue, Amarillo, Texas 79101, 806-378-3038.

46.    Ryann Kass, ("RYANN KASS") is a natural person and was at all

19

times relevant to this Complaint duly appointed and sworn as an employee for the CITY OF AMARILLO in Amarillo, Randall County Texas. At all times relevant hereto, RYANN KASS was acting under color of law, including when her actions were in violation of the laws of the State of Texas and the Constitutions and laws of the United States of America and Texas. RYANN KASS is a named Defendant in her individual capacity and her official capacity. RYANN KASS, Amarillo Police Department, 200 SE 3rd Avenue, Amarillo, Texas 79101, 806-378-3038.

47.    Sergeant Eatley, ("SERGEANT EATLEY") is a natural person and was at all times relevant to this Complaint duly appointed and sworn as an employee for the CITY OF AMARILLO in Amarillo, Randall County Texas. At all times relevant hereto, SERGEANT EATLEY was acting under color of law, including when his actions were in violation of the laws of the State of Texas and the Constitutions and laws of the United States of America and Texas. SERGEANT EATLEY is a named Defendant in his individual capacity and his official capacity. SERGEANT EATLEY, Amarillo Police Department, 200 SE 3rd Avenue, Amarillo, Texas 79101, 806-378-3038. [AMARILLO POLICE DEPARTMENT, CHIEF MARTIN BIRKENFELD, OFFICER DANIEL RIVERA, OFFICER SAMANTHA FONTENOT, OFFICER ALLISON MUNCELL, OFFICER MATTHEW BRUSH, SERGEANT ANTHONY

MERRYMAN, DETECTIVE SHEA LICHTIE, OFFICER DANIEL SMITH, OFFICER WILEY D. FRAZIER, OFFICER JASON BAILEY, SERGEANT JASON RIDDLESPURGER, RYANN KASS, SERGEANT EATLEY, and as-yet unidentified DOE Defendants are referred to jointly as the AMARILLO POLICE DEPARTMENT DEFENDANTS.]

48.    W. Brooks Barfield ("BROOKS BARFIELD") is a named Defendant in his individual capacity.  BROOKS BARFIELD has spearheaded denial of due process rights to HUNTER, has committed malpractice in his fake representation of HUNTER, and has outrageously forced his client to have a Mental Incompetency evaluation at the RANDALL COUNTY JAIL where his client was terrorized by officers of the AMARILLO POLICE DEPARTMENT.  He has acted as a Public Pretender, paid by and working for the State while doing a pathetic job of acting as if he was representing HUNTER.  BROOKS BARFIELD has made written threats to HUNTER and MARCIE Schreck.  BROOKS BARFIELD needs to be disbarred.  BROOKS BARFIELD, Barfield Law Firm, 901 S Polk Street, Amarillo, Texas 79101 or 7514 Essex Court, Amarillo, Texas 79121, 806-468-9500, fax: 806-4568-9588, barfieldlawfirm@gmail.com, Bar Number 00783597.

49.    Samantha Wilson ("SAMANTHA WILSON") is a named Defendant in her individual capacity.  SAMANTHA WILSON has withheld evidence from

21

HUNTER and has assisted BROOKS BARFIELD in his wrongdoing.

SAMANTHA WILSON, Barfield Law Firm, 901 S Polk Street, Amarillo, Texas

79101, 806-468-9500 barfieldlawfirm@gmail.com.

50.    Jubilee Apostolic Church of Amarillo, Texas, Inc. ("JUBILEE

APOSTOLIC CHURCH") is a named Defendant in its corporate capacity and

individual capacity. Jubilee Apostolic Church of Amarillo, Texas, Inc. is a

"person" subject to suit within the meaning of 42 U.S.C. § 1983. Upon

information and belief, leaders of the JUBILEE APOSTOLIC CHURCH

masterminded the Criminal Racketeering Enterprise. JUBILEE APOSTOLIC

CHURCH, c/o Royce D. Elms, Registered Agent, 6701 Woodward, Amarillo,

Texas 79106, 806-355-1717, nathan.carrington@gmail.com. Upon information

and belief, Royce D. Elms has been deceased since 2010, but the Texas Secretary

of State has him listed as Registered Agent, so JUBILEE APOSTOLIC CHURCH

may not be a valid corporation. HUNTER seeks to have the charter revoked.

(https://www.rectorfuneralhome.com/obituary/2282928) JUBILEE APOSTOLIC

CHURCH claims to be a non-profit corporation, 501c3.

51.    Nathan Carrington ("NATHAN CARRINGTON") is a citizen of the

United States and is a resident of Potter County Texas. NATHAN

CARRINGTON, Pastor of JUBILEE APOSTOLIC CHURCH is a named

22

Defendant in his individual capacity. Upon information and belief NATHAN CARRINGTON is the "mastermind" behind the Criminal Racketeering Enterprise that developed and implemented a scheme to destroy HUNTER's life. The evidence shows that NATHAN CARRINGTON made false reports to the police, viciously defamed HUNTER, and upon information and belief, coordinated the June 24, 2020 attempted murder of HUNTER because he didn't like the idea of an Autistic young man with Asperger's and other mental issues being interested in courting his daughter. Meanwhile, NATHAN CARRINGTON conducts church services where he and his followers speak in tongues, may charm snakes, and play games where they turn out all the lights and try to find someone by feeling around on the bodies they encounter. NATHAN CARRINGTON, 19960 Clear Sky Trail, Bushland, Texas 79012, nathan.carrington@gmail.com, 806-339-3763, nathan.carrington@yahoo.com.

52.    Rolonda Carrington ("ROLONDA CARRINGTON") is a citizen of the United States and is a resident of Potter County Texas. ROLONDA CARRINGTON is a named Defendant in her individual capacity. ROLONDA CARRINGTON has participated in all the wrongdoing of her husband, NATHAN CARRINGTON. She has committed perjury, has filed false police reports, and has defamed HUNTER. ROLONDA CARRINGTON, 19960 Clear Sky Trail,

Bushland, Texas 79012, nathan.carrington@gmail.com.

53.    Nataley Carrington ("NATALEY CARRINGTON") is a citizen of the United States and is a resident of Potter County Texas.  NATALEY CARRINGTON is a named Defendant in her individual capacity.  HUNTER has never spoken with her, but he wrote on a website that he thought she was "beautiful."  That is apparently a crime with snake charmers and people who talk gibberish.  NATALEY CARRINGTON has committed perjury and has defamed HUNTER.  NATALEY CARRINGTON, 19960 Clear Sky Trail, Bushland, Texas 79012, nathan.carrington@gmail.com.

54.    Aaron Charles Gurule ("AARON GURULE") is a named Defendant in his individual capacity.  AARON GURULE is a scary man who has participated in all the wrongdoing of his leader, NATHAN CARRINGTON.  AARON GURULE, 6324 Sunlake Drive, Amarillo, Texas 79124 or Assistant Pastor, Jubilee Apostolic Church, 5804 Erik Avenue, Amarillo, Texas 79106, 806-355-1717.

55.    Dana Gurule ("DANA GURULE") is a named Defendant in her individual capacity.  DANA GURULE is a scary woman who, upon information and belief, has participated in all the wrongdoing of her leaders, NATHAN CARRINGTON and AARON GURULE.  DANA GURULE, 6324 Sunlake Drive, Amarillo, Texas 79124 or c/o Jubilee Apostolic Church, 5804 Erik Avenue,

24

Amarillo, Texas 79106, 806-355-1717, danajoye78@gmail.com.

56.    Maria Veronica Canales ("MARIA VERONICA CANALES") is a named Defendant in her individual capacity. MARIA VERONICA CANALES, 307 N Lamar, Amarillo, Texas 79106, 806-680-9976, arlene23@gmail.com, veronicamaria711@gmail.com, veronicamaria711@yahoo.com,.

57.    Victor Pimentel ("VICTOR PIMENTEL") is a named Defendant in his individual capacity. VICTOR PIMENTEL, 307 N Lamar, Amarillo, Texas 79106, 806-680-9976, Pimentelguadalupe64@gmail.com, Pimentel7782010@gmail.com, moreno.juan212@gmail.com.

58.    George Hastings ("GEORGE HASTINGS") is a named Defendant in his individual capacity. GEORGE HASTINGS, c/o Jubilee Apostolic Church, 5804 Erik Avenue, Amarillo, Texas 79106, 806-355-1717.

59.    Deborah Rauh ("DEBORAH RAUH") is a named Defendant in her individual capacity. DEBORAH RAUH, c/o Jubilee Apostolic Church, 5804 Erik Avenue, Amarillo, Texas 79106, 806-355-1717.

60.    Dr. Ron Rankin ("DR. RON RANKIN") is a named Defendant in his individual capacity. DR. RON RANKIN, Calvary Gospel Church, 601 S Cleveland Street, Amarillo, Texas 79102, 806-381-3449, calvarygospelconnect@gmail.com, ron@janwerneradultdaycare.org.

61.     Leann Rhimes ("LEANN RHIMES") is a named Defendant in her individual capacity.  LEANN RHIMES, Calvary Gospel Church, 601 S Cleveland Street, Amarillo, Texas 79102, 806-381-3449, calvarygospelconnect@gmail.com.

62.     Samona Pearson ("SAMONA PEARSON") is a named Defendant in her individual capacity.  SAMONA PEARSON, Calvary Gospel Church, 601 S Cleveland Street, Amarillo, Texas 79102, 806-381-3449, calvarygospelconnect@gmail.com.

63.     Margaret Pearson ("MARGARET PEARSON") is a named Defendant in her individual capacity.  MARGARET PEARSON, Calvary Gospel Church, 601 S Cleveland Street, Amarillo, Texas 79102, 806-381-3449, calvarygospelconnect@gmail.com.

64.     Timothy Bailey ("TIMOTHY BAILEY") is a named Defendant in his individual capacity.  TIMOTHY BAILEY, Calvary Gospel Church, 601 S Cleveland Street, Amarillo, Texas 79102, 806-381-3449, calvarygospelconnect@gmail.com.

65.     Ileta Bailey ("ILETA BAILEY") is a named Defendant in her individual capacity. ILETA BAILEY, Calvary Gospel Church, 601 S Cleveland Street, Amarillo, Texas 79102 or 12901 S FM 1258, Amarillo, Texas 79118, 806-381-3449, calvarygospelconnect@gmail.com.

66. Ashley Hinsley ("ASHLEY HINSLEY") is a named Defendant in her individual capacity. ASHLEY HINSLEY, c/o Robert Love, Randall County District Attorney's Office, 2309 Russell Long Boulevard, Suite 120, Canyon, Texas 79015, 806-382-2347, robert.love@randallcounty.com.

67. Blake Hume ("BLAKE HUME") is a named Defendant in his individual capacity. BLAKE HUME, c/o Robert Love, Randall County District Attorney's Office, 2309 Russell Long Boulevard, Suite 120, Canyon, Texas 79015, 806-382-2347, robert.love@randallcounty.com.

68. Blake Couch ("BLAKE COUCH") is a named Defendant in his individual capacity. BLAKE COUCH, c/o Robert Love, Randall County District Attorney's Office, 2309 Russell Long Boulevard, Suite 120, Canyon, Texas 79015, 806-382-2347, robert.love@randallcounty.com.

69. Maya Couch ("MAYA COUCH") is a named Defendant in her individual capacity. MAYA COUCH, c/o Robert Love, Randall County District Attorney's Office, 2309 Russell Long Boulevard, Suite 120, Canyon, Texas 79015, 806-382-2347, robert.love@randallcounty.com.

70. Amaya Couch ("AMAYA COUCH") is a named Defendant in her individual capacity. AMAYA COUCH, c/o Robert Love, Randall County District Attorney's Office, 2309 Russell Long Boulevard, Suite 120, Canyon, Texas 79015,

806-382-2347, robert.love@randallcounty.com.

71.    Maya Coutoh ("MAYA COUTOH") is a named Defendant in her individual capacity.  MAYA COUTOH, c/o Robert Love, Randall County District Attorney's Office, 2309 Russell Long Boulevard, Suite 120, Canyon, Texas 79015, 806-382-2347, robert.love@randallcounty.com.

72.    Kreston Cahoon ("KRESTON CAHOON") is a named Defendant in his individual capacity.  KRESTON CAHOON, c/o Robert Love, Randall County District Attorney's Office, 2309 Russell Long Boulevard, Suite 120, Canyon, Texas 79015, 806-382-2347, robert.love@randallcounty.com.

73.    Jim Pops Couch ("JIM POPS COUCH") is a named Defendant in his individual capacity.  JIM POPS COUCH, c/o Robert Love, Randall County District Attorney's Office, 2309 Russell Long Boulevard, Suite 120, Canyon, Texas 79015, 806-382-2347, robert.love@randallcounty.com.

74.    Stephen Dunlap ("STEPHEN DUNLAP") is a named Defendant in his individual capacity.  STEPHEN DUNLAP, c/o Robert Love, Randall County District Attorney's Office, 2309 Russell Long Boulevard, Suite 120, Canyon, Texas 79015, 806-382-2347, robert.love@randallcounty.com.

75.    [JUBILEE APOSTOLIC CHURCH, NATHAN CARRINGTON, ROLONDA CARRINGTON, NATALEY CARRINGTON, AARON GURULE,

DANA GURULE, MARIA VERONICA CANALES, VICTOR PIMENTEL, DEBORAH RAUH, DR. RON RANKIN, LEANN RHIMES, SAMONA PEARSON, MARGARET PEARSON, TIMOTHY BAILEY, ILETA BAILEY, ASHLEY HINSLEY, BLAKE HUME, BLAKE COUCH, MAYA COUCH, AMAYA COUCH, MAYA COUTOH, KRESTON CAHOON, JIM POPS COUCH, AND STEPHEN DUNLAP are referred to jointly as the PENTECOSTAL DEFENDANTS.]

76.     Adriana Cortez ("ADRIANA CORTEZ") is a named Defendant in her individual capacity.  ADRIANA CORTEZ, 7404 Albany Drive Amarillo, Texas 79118, 806-367-2941.  Friend of BRAYAN ZUBIATE.

77.     Angelica Esparza ("ANGELICA ESPARZA") is a named Defendant in her individual capacity.  Angelia Esparza is believed to be the ringleader of the VOLLEYBALL DEFENDANTS who was especially instrumental in the June 24, 2020 attack.  She was there when the attack took place.  She has committed all types of wrongdoing, including defamation, filing false police reports, aggravated perjury, harassment, and Criminal Racketeering.  She is a friend of BRAYAN ZUBIATE, one of the June 24, 2020 MOB PARTICIPANTS, and he has shown support for the PENTECOSTAL CHURCH.  ANGELICA ESPARZA c/o Dave Blount, Randall County District Attorney's Office, 2309 Russell Long Boulevard,

29

Suite 120, Canyon, Texas 79015, 806-731-9973, angelicagabrielle92@yahoo.com.

78.    Brayan Zubiate ("BRAYAN ZUBIATE") is a named Defendant in his individual capacity.  BRAYAN ZUBIATE is one of the June 24, 2020 MOB PARTICIPANTS, and he has shown support for the PENTECOSTAL CHURCH. He participated in the conspiracy and is believed to have committed a number of crimes, including assault.  BRAYAN ZUBIATE, 703 Pittsburg Street, Amarillo, Texas 79104, 806-690-2229.  Friend of ADRIANA CORTEZ and ANGELICA ESPARZA.

79.    Chris Boroughs ("CHRIS BOROUGHS") is a named Defendant in his individual capacity.  He was at the assault on June 24, 2020, and he has committed perjury and has filed false police reports.  CHRIS BOROUGHS, 7105 McClary Street, Amarillo, Texas 79108, 806-654-4473.

80.    Christian Morgan ("CHRISTIAN MORGAN") is a named Defendant in his individual capacity.  He was at the assault on June 24, 2020, and he has committed perjury and has filed false police reports.  CHRISTIAN MORGAN, 283 Overland Trail, Fritch, Texas 79036, 806-500-8685.

81.    Mariah Rose Murillo ("MARIAH ROSE MURILLO") is a named Defendant in her individual capacity.  MARIAH ROSE MURILLO, 3204 Trigg Street, Amarillo, Texas 79103 or 238 Overland, Fritch, Texas or c/o Robert Love,

Randall County District Attorney's Office, 2309 Russell Long Boulevard, Suite 120, Canyon, Texas 79015, 806-382-2347, robert.love@randallcounty.com.

82.    Nyah Gonzalez ("NYAH GONZALEZ") is a named Defendant in her individual capacity.  NYAH GONZALEZ, 917 S Highland Street, Amarillo, Texas 79103 or AOMS Pediatric and Children's Dentistry, 5051 Soncy Road, Amarillo, Texas 79119, 806-803-9452.

83.    Andres Soria ("ANDRES SORIA") is a named Defendant in his individual capacity.  ANDRES SORIA c/o NYAH GONZALEZ, 917 S Highland Street, Amarillo, Texas 79103.  [ADRIANA CORTEZ, ANGELICA ESPARZA, BRAYAN ZUBIATE, CHRIS BOROUGHS, CHRISTIAN MORGAN, MARIAH ROSE MURILLO, and NYAH GONZALEZ, and ANDRES SORIA are referred to jointly as the VOLLEYBALL DEFENDANTS.]

84.    Randall County District Attorney's Office ("RANDALL COUNTY DISTRICT ATTORNEY'S OFFICE") is a political subdivision of the State of Texas and a "person" subject to suit within the meaning of 42 U.S.C. 1983.  The RANDALL COUNTY DISTRICT ATTORNEY'S OFFICE has committed all types of wrongdoing, conspiracy, RICO violations, criminal racketeering, perjury, subornation of perjury, destruction and denial of evidence, generation of a false indictment, violation of the laws regarding indictments, and more.  Randall County

31

District Attorney's Office, 2309 Russell Long Boulevard, Suite 120, Canyon, Texas 79015, 806-468-5570.

85. Robert Love ("ROBERT LOVE") was at all times relevant the District Attorney in Randall County Texas. ROBERT LOVE was in charge of the operations and actions of the personnel under her supervision. ROBERT LOVE is sued in his individual capacity and his official capacity. ROBERT LOVE has committed all types of wrongdoing, conspiracy, RICO violations, criminal racketeering, perjury, subornation of perjury, destruction and denial of evidence, generation of a false indictment, violation of the laws regarding indictments, and more. ROBERT LOVE, Randall County District Attorney, 2309 Russell Long Boulevard, Suite 120, Canyon, Texas 79015, 806-468-5570, robert.love@randallcounty.com, dafelony@randallcounty.com.

86. Dave Blount ("DAVE BLOUNT") was at all times relevant the Assistant District Attorney in Randall County Texas. DAVE BLOUNT is sued in his individual capacity and his official capacity. DAVE BLOUNT has committed all types of wrongdoing, conspiracy, RICO violations, criminal racketeering, perjury, subornation of perjury, destruction and denial of evidence, generation of a false indictment, violation of the laws regarding indictments, and more. He has violated numerous provisions of the Texas Rules of Professional Conduct, the

32

Texas Rules of Civil Procedure, and Texas Rules of Criminal Procedure. DAVE BLOUNT, Randall County District Attorney, 2309 Russell Long Boulevard, Suite 120, Canyon, Texas 79015, 806-468-5570, dafelony47@randallcounty.com, cdblount@yahoo.com, oneblountatty@gmail.com, caelib@aol.com, chasblount@yahoo.com, cdblount_1999@yahoo.com.

87.     Warren Clark ("WARREN CLARK") was at all times relevant the District Attorney in Randall County Texas. WARREN CLARK is sued in his individual capacity and his official capacity. WARREN CLARK, Randall County District Attorney, 2309 Russell Long Boulevard, Suite 120, Canyon, Texas 79015, 806-468-5570, warren.clark@randallcounty.com.

88.     Randall County Clerk of Court's Office ("RANDALL COUNTY CLERK OF COURT'S OFFICE") is a political subdivision of the state of Texas and a "person" subject to suit within the meaning of 42 U.S.C. 1983. RANDALL COUNTY CLERK OF COURT'S OFFICE, 2309 Russell Long Boulevard, Suite 110, Canyon, Texas 79015, districtclerk@randallcounty.com, 806-468-5600.

89.     Joel Forbis ("JOEL FORBIS") was at all times relevant the Clerk of Court in Randall County Texas. He was in charge of the operations and actions of the personnel under his supervision. JOEL FORBIS is sued in his individual capacity and his official capacity. JOEL FORBIS, Randall County Clerk of

Court's Office, 2309 Russell Long Boulevard, Suite 110, Canyon, Texas 79015, 806-468-5600, districtclerk@randallcounty.com.

90.    Randall County District Courts ("RANDALL COUNTY DISTRICT COURTS") is a political subdivision of the state of Texas and a "person" subject to suit within the meaning of 42 U.S.C. 1983. RANDALL COUNTY DISTRICT COURTS, 2309 Russell Long Boulevard, Canyon, Texas 79015, 806-468-5677.

91.    Judge Dan L. Schaap ("JUDGE DAN L. SCHAAP") was at all times relevant a judge in the Randall County District Courts. He was in charge of the operations and actions of the personnel under his supervision. JUDGE DAN L. SCHAAP is sued in his individual capacity and his official capacity. JUDGE DAN L. SCHAAP acted without legal authority and failed to perform purely ministerial acts, and injunctive relief is sought. JUDGE DAN L. SCHAAP has also committed crimes, and there is no immunity for criminal acts as there is no legal authority for a judge to commit crimes. JUDGE DAN L. SCHAAP, Randall County District Courts, 2309 Russell Long Boulevard, Canyon, Texas 79015 or 140 Laurel Leaf Lane, Canyon, Texas 79015, 806-468-5677, bigchief5948@gmail.com, chromesst@aol.com.

92.    Judge Ana Estevez ("JUDGE ANA ESTEVEZ") was at all times relevant a judge in the Randall County and Potter County District Courts. She was

34

in charge of the operations and actions of the personnel under her supervision, including Judge Dan L. Schaap. JUDGE ANA ESTEVEZ acted without legal authority and failed to perform purely ministerial acts, and injunctive relief is sought. JUDGE ANA ESTEVEZ has also committed crimes, and there is no immunity for criminal acts as there is no legal authority for a judge to commit crimes. JUDGE ANA ESTEVEZ is sued in her individual capacity and her official capacity. JUDGE ANA ESTEVEZ, Randall County District Courts, 2309 Russell Long Boulevard, Canyon, Texas 79015 or PO Box 20777, Amarillo, Texas 79114, 806-468-5563, aestevez@pottercscd.org.

93.    Judge Kent Sims ("JUDGE KENT SIMS") was at all times relevant a senior judge in Texas. JUDGE KENT SIMS acted without legal authority and failed to perform purely ministerial acts, and injunctive relief is sought. JUDGE KENT SIMS has also committed crimes, and there is no immunity for criminal acts as there is no legal authority for a judge to commit crimes. JUDGE KENT SIMS is sued in his individual capacity and his official capacity. JUDGE KENT SIMS c/o JUDGE ANA ESTEVEZ, Randall County District Courts, 2309 Russell Long Boulevard, Canyon, Texas 79015, 806-468-5563.

94.    Angela Johnson ("ANGELA JOHNSON") was at all times relevant a Court Administrator for JUDGE ANA ESTEVEZ in the Randall County and Potter

35

County District Courts.  See acted on behalf of JUDGE ANA ESTEVEZ.

ANGELA JOHNSON is sued in her individual capacity and her official capacity.

ANGELA JOHNSON, Randall County District Courts, 2309 Russell Long

Boulevard, Canyon, Texas 79015, 806-468-5563, johnsona@pottercscd.org.

95.    Andrea Weigle ("ANDREA WEIGLE") was at all times relevant a

Court Administrator for JUDGE DAN L. SCHAAP in the Randall County Court.

See acted on behalf of JUDGE DAN L. SCHAAP.  ANDREA WEIGLE is sued in

her individual capacity and her official capacity.  ANDREA WEIGLE, Randall

County District Courts, 2309 Russell Long Boulevard, Canyon, Texas 79015, 806-

468-5677.

96.    Justice of the Peace (name unknown) ("JUSTICE OF THE PEACE")

was at all times relevant a justice of the peace in the Randall County District

Courts.  This Magistrate signed a Magistrate's Warning on 6/25/2020.   The Justice

of the Peace is sued in his individual capacity and his official capacity.  JUSTICE

OF THE PEACE in Hunter Tyler Schreck Case, Randall County District Courts,

2309 Russell Long Boulevard, Canyon, Texas 79015, 806-468-5677. [RANDALL

COUNTY DISTRICT ATTORNEY'S OFFICE, JUSTICE OF THE PEACE,

JUDGE DAN L. SCHAAP, JUDGE ANA ESTEVEZ, JUDGE KENT SIMS,

ANGELA JOHNSON, AMANDA WEIGLE, RANDALL COUNTY DISTRICT

36

COURTS, JOEL FORBIS, RANDALL COUNTY CLERK OF COURT'S OFFICE, DAVE BLOUNT, ROBERT LOVE, WARREN CLARK, and the RANDALL COUNTY DISTRICT ATTORNEY'S OFFICE are referred to jointly as the RANDALL COUNTY COURT DEFENDANTS.]

97.    Randall County Jail ("RANDALL COUNTY JAIL") is a political subdivision of the state of Texas and a "person" subject to suit within the meaning of 42 U.S.C. § 1983. RANDALL COUNTY JAIL, 9100 South Georgia Avenue, Amarillo, Texas 79118, sheriff@RC-sheriff.com, 806-468-5752.

98.    Dr. Thomas Martin ("DR. THOMAS MARTIN") is an Emergency Room doctor at Baptist St. Anthony Hospital. He is sued in his individual capacity and his official capacity. DR. THOMAS MARTIN, Baptist St. Anthony Hospital, 1600 Wallace Boulevard, Amarillo, Texas 79106, 806-212-2000.

99.    Baptist St. Anthony Hospital ("BAPTIST ST. ANTHONY HOSPITAL") is a "person" subject to suit within the meaning of 42 U.S.C. § 1983. BAPTIST ST. ANTHONY HOSPITAL denied medical care for HUNTER after the assault. BAPTIST ST. ANTHONY HOSPITAL, 1600 Wallace Boulevard, Amarillo, Texas 79106, 806-212-2000.

100.    Dr. Gina Matteson ("DR. GINA MATTESON") is a Psychiatrist. She is sued in her individual capacity and her official capacity. DR. GINA

MATTESON violated the rights of HUNTER TYLER SCHRECK by requiring him to attend an unlawfully ordered competency evaluation at the RANDALL COUNTY JAIL. She inflicted pain and suffering on HUNTER, and she violated HUNTER's rights by refusing to provide a copy of HUNTER's medical report but provided it secretly to JUDGE DAN L. SCHAAP. DR. GINA MATTESON, 7308 Fleming Avenue, Amarillo, Texas 79106, ginamatteson@yahoo.com, 412-605-4866.

101. Does 1-500 ("DOES") are unknown at this time. Does 1-500 are sued in their individual capacities and their official capacities.

## NATURE OF THE CASE

102. This is a civil action for attempted murder. Defendants committed Official Oppression pursuant to Texas Penal Code § 39.03, Official Misconduct, and many crimes.

103. This is a civil action under 42 U.S.C § 1983 seeking damages and injunctive relief against Defendants for committing acts, under color of law, with the intent and for the purpose of depriving HUNTER of rights secured under the Constitution and laws of the United States; and for refusing or neglecting to prevent such deprivations and denials to HUNTER.

104.  This case arises under the United States Constitution and 42 U.S.C. § 1983 and § 1988, as amended.  This Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1331 and § 1343.  The declaratory and injunctive relief sought is authorized by 28 U.S.C. § 2201 and § 2202, 42 U.S.C. § 1983, and Rule 57 of the Federal Rules of Civil Procedure ("FRCP").

105.  There are other causes of action as well, including RICO, conspiracy, fraud, perjury, subornation of perjury, aggravated assault, intentional infliction of emotional distress, attempted murder, and more.

106.  HUNTER brings this action resulting from damages incurred due to his beating and attempted murder on June 24, 2020 and the events since.

107.  This Court is an appropriate venue for this cause of action pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2).  The actions complained of took place in this judicial district.

108.  Actions were taken under color of Texas law and U.S. law, and the actions deprived HUNTER of Constitutional rights and statutory rights.

## **FACTUAL ALLEGATIONS**

109.  Exhibits to this VERIFIED COMPLAINT are contained in the Flash Drive. [EXHIBIT A.]

39

## PERSONAL BACKGROUND OF HUNTER TYLER SCHRECK

110.    HUNTER TYLER SCHRECK was born February 18, 1994.  At the age of five, he was diagnosed with Asperger's.  He has been bullied most of his life because people claim he acts different.  He was harassed in the China Springs School District as soon as he walked in the school.

111.    It's not spelled the same way, but people tend to remember HUNTER's last name.



112.    HUNTER doesn't have many friends.  He doesn't smoke or drink. He's never used drugs.  But he's almost 6'5" with size 16 feet, and he eats A LOT.

113.   HUNTER is a very religious Christian.  He loves attending church functions and fellowship with Christians.  He graduated from high school obtaining a GED after home schooling.

114.   HUNTER has always been a hard worker. [EXHIBIT 487.]  He previously worked for FedEx Freight.  He can no longer work.  His life was devastated on June 24, 2020.

115.   HUNTER's parents are MARCIE and William Schreck.  William Schreck is a road driver for FedEx Freight.  MARCIE Schreck is a stay-at-home Mom since Logan Schreck and HUNTER Schreck both have special needs and require special care.  Their sister, Whitney, lives in Waco.  Their older brother, Cody, also lives in Waco.  Logan lives with his parents at 6302 Oakcrest Lane, Amarillo, Texas 79109.  Logan has a severe obstruction of his airway, a vocal chord dysfunction, laryngomalacia, eosinophilic esophagitis, congenital absence of trachea.  He was diagnosed in 2011, and he has been fed with a G-tube since 2013. https://www.mayoclinic.org/diseases-conditions/eosinophilic-esophagitis/symptoms-causes/syc-20372197

**MEDICAL HISTORY OF HUNTER TYLER SCHRECK**

116.   HUNTER has Autism; Asperger's; a Neurocognitive Auditory Processing Disorder; Pervasive Development Disorder; Sensory Aphasia (language

impairment; sensory (touch) issues; hearing loss, and more. People don't understand these and can jump to ignorant conclusions about why he seems "different," and he has never been a threat to anyone. HUNTER SCHRECK has mental disabilities; he is not and never has been a criminal. EXHIBIT 71 is a video that helps explain HUNTER's illnesses.

117. HUNTER was diagnosed with Asperger's at age 5. Then he was diagnosed with Autism. EXHIBITS 239, 195, 224, 225, 227, 228, 240, 193, 229, 230, 245, 248, 247, 250, 244, 257, and 242 are some of his medical reports from 2008 to 2019.

118. In 1998, HUNTER was diagnosed with Speech Impairment at age 4. (See EXHIBIT 228, Page 3.)

119. On 3/20/1998, HUNTER was diagnosed with Communication Disorder at age 4. (See EXHIBIT 228, Page 3.)

120. In 1999, HUNTER was first diagnosed with AUTISM. The Schrecks have been unable to locate records from 22 years ago. (See also Paragraphs 14k, 14o, 14r, and 14s for Autism diagnoses.)

121. On 8/8/2005, HUNTER was diagnosed with Attention Deficit / Hyperactivity Disorder. (See EXHIBIT 228, Pages 2 and 3.) (See also Paragraphs 14e and 14h for diagnosis of AD/HD.)

122.    In 2005, HUNTER was re-evaluated and again diagnosed with

Attention Deficit / Hyperactivity Disorder. (See EXHIBIT 228, Page 3.)

123.    In March 2006, Dr. Robillard of the Child Study Center in Ft. Worth

conducted a Psychological Evaluation and said there were "questionable results" as

HUNTER might not have been performing to the best of his ability.  (See

EXHIBIT 228, Page 3.)

124.    On 9/15/2008, Dr. Curtis Timmons conducted a Psychological

Evaluation and said: "The overall impression during the clinical interview was a

depressed state." [EXHIBIT 224.]

"Although this concern is not adequately represented by responses from
Hunter, this diagnosis represents Hunter's presentation. He appeared
depressed, listless, and lethargic. Affect was blunted. Mental operations
were very slow which, at times, represents depression. HUNTER was not
specifically oppositional within the interaction. Nonetheless, he could not
provide many responses to the Sentence Completion Form. Hunter struggled
significantly on this task. He provided responses to approximately one-third
of the items. Again, difficulties responding could represent language
processing difficulties. Nonetheless, the language processing possibilities do
not account for the blunted affect, listless and lethargic presentation, and
overall appearance of depression.  Based on the diagnosis of Depressive
Disorder NOS, HUNTER qualifies for modifications and services at school
as a student experiencing emotional distress. The ARD committee will meet
to determine which modifications and services best meet HUNTER's needs.
The depression is significant to a degree that it impacts academic and social
development.  In accord with depressed mood, Hunter may demonstrate the
following symptoms: 1. Hunter may appear depressed or irritable much of
the time.  2. The student may demonstrate a markedly diminished interest or
pleasure in many activities.  3. Hunter may appear restless at times, and at
other times, may appear very fatigued and lethargic.  4. The student may

express some feelings of worthlessness or guilt. 5. Hunter may demonstrate a diminished ability to think or concentrate." (See also EXHIBIT 228, Page 4.)

125. On 9/25/2008, HUNTER was diagnosed with Depressive Disorder, ADHD, Defiant/Oppositional Behavior Disorder, Speech Impairment for an Expressive Language Disorder, Depressed State with Slow Mental Operations. This was done in a re-evaluation by RIO BRAZOS EDUCATION COOPERATIVE. [EXHIBIT 228, Page 4.]

126. On 10/7/2008, Dr. Margaret Dean of SCOTT & WHITE AUDIOLOGY said the report was "somewhat confusing" due to conflicting findings on the same issues. (See EXHIBIT 228, Page 5.) The summary of the report indicates a diagnosis of: "Auditory Decoding Deficit, an Integration Deficit (right ear advantage) and possible Auditory Fading Memory Deficit. Results also indicated, 'Puretone Testing showed normal hearing, bilaterally and immittance measurements revealed ... normal middle ear function.' The implications of these conditions, as stated in the report, were that he would likely have difficulty attending to auditory information he receives simultaneously, that he seems to have a right ear advantage that is unusual for a child his age, and may have difficulty understanding speech (clearly) at times."

127. Dr. Jonas Moen, a licensed physician, confined HUNTER to his home from 10/22/2008 until at least 12/1/2008 due to poor sleep, elevated anxiety, and decreased cognition. Dr. Jonas Moen knew the school was harassing him, and he took action to protect HUNTER. [EXHIBIT 225.]

128. On 11/3/2008, a Rio Brazos ARD Committee Meeting Report was issued. It found that HUNTER was diagnosed with Autism (Pervasive Developmental Disorder), Auditory Processing Impairment, Sensory Aphasia, Visual Impairment, Speech Impairment, Emotional Disturbance, Hearing Loss, and other Health Impairments. Its finding was that HUNTER was eligible and had a need for Special Education. [EXHIBIT 227.]

129. In January 2009, a Sylvan Learning Center Diagnostic Academic Assessment report indicated HUNTER was performing at the 26th Percentile. So, he was in the bottom quarter of peers of the same age. (See EXHIBIT 228, Page 5.)

130. HUNTER had suffered from difficulties with learning and attention throughout his school career. On March 15, 2015, Dr. Rachel Robillard conducted a Neuropsychological Evaluation and found that HUNTER performs better when given only auditory stimuli. Time factors are an issue for him. Significant weaknesses were identified for Communication. HUNTER scored "low average"

for reading, spelling, and writing. HUNTER's ability to generate word names spontaneously according to a phonemic rule was in the borderline impaired range. Verbal skills, particularly under time constraints, constituted a significant weakness. Dr. Rachel Robillard said HUNTER would benefit from continued speech therapy. [EXHIBIT 228.]

131.   On 2/18/2020, Dr. Jonas Moen told MARCIE Schreck to take HUNTER out of the China Springs School District. Elizabeth Burnett noted that an audiologist evaluation at Scott and White determined HUNTER has a "Central Auditory Processing Problem." [EXHIBIT 240.]

132.   On 10/25/2010, Dr. Frank Minirth, MD, conducted a mental evaluation of HUNTER. In the "Diagnosis" section on the lower left of the page, Dr. Minirth entered Diagnosis Codes 299.0 (Autistic Disorder), 300.4 (Dysthymic Disorder), and 307.42 (Persistent disorder of initiating or maintaining sleep.) Dysthymia, also known as persistent depressive disorder (PDD), is a mental and behavioral disorder, specifically a disorder primarily of mood, consisting of the same cognitive and physical problems as depression, but with longer-lasting symptoms. [EXHIBIT 258.]  [EXHIBIT 249 contains applicable medical codes.]

133.   On 11/11/2011, Dr. Stephen Martin conducted a Clinical Neuropsychological Evaluation and reported that HUNTER's IQ was 79. The

auditory attention assessment reflected low average simple and complex auditory attention skills. The testing revealed mild impairment to extremely impaired and severely impaired skills. He was diagnosed with Cognitive Disorder, Pervasive Development Disorder, and Generalized Anxiety Disorder. Pervasive Development Disorder is a group of disorders characterized by delays in the development of multiple basic functions including socialization and communication. [EXHIBIT 229.]

134. On March 4, 2014, Dr. Farooqi, an Orthopaedic Surgeon in Colorado diagnosed HUNTER with a chronic multifunctional instability with right ankle dislocation. [EXHIBIT 230.]

135. On 4/19/2016, Dr. Shoaf conducted a Mental Evaluation with HUNTER. In the "Primary Diagnosis" section on the lower left of page 2, Dr. Shoaf entered Diagnosis Codes 299.0 (Autistic Disorder), F84.0 (Pervasive Developmental Disorder), F42 (Obsessive Compulsive Disorder), F41 (Anxiety Disorder), and F40.1 (Social Phobias). Dr. Shoaf's narrative also identifies ASD (Autism Spectrum Disorder), anxiety, social anxiety, OCD, mild depression, PDD (Pervasive Developmental Disorder), Asperger's, and Autism. [EXHIBIT 245.] [EXHIBIT 249 contains applicable medical codes.]

136.  On 5/18/2016, Cedar Crest Hospital diagnosed HUNTER with Autism Spectrum Disorder. [EXHIBIT 247.]

137.  On 5/13/2016, AmeriGene Pharmacogenetic Testing indicated a number of problems.  [EXHIBIT 248.]

138.  On 5/24/2016, Hunter was evaluated at Hope Speaks for anxiety and depression. [EXHIBIT 244.] [EXHIBIT 246.]

139.  A psychiatrist prescribed an anti-psychotic, and HUNTER had a severe adverse reaction due to his heart condition. [EXHIBIT133.]  On 11/21/2017, Dr. Jose Cabrero treated HUNTER in the ER.  Dr. Cabrero questioned why such a strong drug was given to a young man.

140.  On 1/21/2019, HUNTER saw Dr. Amaro to have an MRI regarding an abnormality with his pituitary gland. [EXHIBIT 242.]

141.  Ophthalmologist Dr. Robert Gerald told the Schrecks on 11/21/2019 that it was highly unusual to diagnose cataracts at age 25 as he found with HUNTER.  HUNTER was experiencing severe headaches. There are nodules around his pituitary gland.  All of his labs had been abnormal for a while.  It was then recommended to go see Dr. Bercerio in Lubbock, Texas to check pituitary tumor as soon as possible as his right eye had an acute cataract. [EXHIBIT 231.]

142.   On 12/9/2019, Dr. Kade Carthel, MD, with Cardiology Center of Amarillo found an abnormal electrocardiogram from a Nuclear Stress Test.  He diagnosed HUNTER with "a moderate size reversible defect in the anterior myocardium."  A PET Perfusion Study was recommended for more definitive evaluation.  So, HUNTER has a heart condition. [EXHIBIT 133.]

143.   HUNTER has been hospitalized several times.  He has been diagnosed with schizophrenia.  He has experienced hallucinations.  He has heard voices.  Doctors have said HUNTER is not a threat to anyone.  Doctors said he is non-committable.

144.   In 2018, HUNTER was living independently in his own apartment in Waco, Texas.  He was attempting college in Waco.

145.   In March 2018, Dr. Joshua Warren, MD, physician at DePaul Center in Waco, said HUNTER has a history of Asperger's and psychosis unspecified.  He said HUNTER was non-committable, not threatening, and his family did not wish to have him committed.  At discharge, HUNTER was declared non-suicidal, non-homicidal, non-psychotic, and non-committable.  Dr. Joshua Warren said HUNTER was reluctant to be placed on medications because of side effects he had experienced in the past.  Dr. Joshua Warren said a lot of HUNTER's eccentricities are likely due to pervasive development disorder.

146.  "Wellness Checks" have been repeatedly conducted at the home of HUNTER.  AMARILLO POLICE DEPARTMENT OFFICER WILEY D. FRAZIER has said he knows HUNTER has mental disabilities and that police cross boundaries when claiming he is something other than disabled.  Amarillo Police SERGEANT JASON RIDDLESPURGER has acknowledged HUNTER's mental challenges, and he stated that he understood because he has family members with disabilities with mental challenges. [EXHIBIT 50.] [EXHIBIT 51.] [EXHIBIT 52.] [EXHIBIT 53.] [EXHIBIT 54.] [EXHIBIT 55.] [EXHIBIT 68.] [EXHIBIT 735.] [EXHIBIT 736.] [EXHIBIT 732.] [EXHIBIT 734.]

147.  HUNTER is extremely religious, and he has written in a Diary. [EXHIBIT 66.] [EXHIBIT 67.] [EXHIBIT 68.]

148.  People in the Schreck's neighborhood would call the police and claim HUNTER is a threat or a menace.  He's no threat.  He's not a menace.

149.  A neighbor girl, Myah Couch aka Amaya Couch, aka Myah Coutoh, has knocked on the Schreck's door many times saying "Hunter is harassing me." She laughs and runs off.  She was harassing the Schrecks.  These people defame Hunter, spreading lies claiming he's dangerous, violent, and aggressive.  These are all lies!

150.   On June 24, 2020, HUNTER was the victim of attempted murder. Medical reports are provided.

## JUBILEE APOSTOLIC CHURCH EXPERIENCE

151.   In 2019, the Schreck family decided that joining a church could help them all and provide fellowship and support, so the family joined JUBILEE APOSTOLIC CHURCH.  The family attended church and many auxiliary events and activities in that time, such as home gatherings, bible studies, and invitations from Pastor NATHAN CARRINGTON and assistant Pastor AARON GURULE for such activities and a meal in their homes with no problems.

152.   HUNTER was baptized by JUBILEE APOSTOLIC CHURCH on August 4, 2019. [EXHIBIT 104.]

153.   The Schrecks made two close friends, MARIA VERONICA CANALES whose son, VICTOR PIMENTEL is Youth Pastor and who often came over for bible studies, played games, went out to eat at restaurants, had grill outs, like real friends.  She had even stayed over at the Schreck home when a family member had passed away.  Then suddenly she typed the Schrecks a message saying something was seriously wrong and she as well as another family friend, J

R Romero, knew the church was not handling it right. Was she threatened or acting as an informant? The Schrecks had no more contact from her.

154. MARIA VERONICA CANALES took/stole HUNTER's personal journal/diary from the Schreck home without his permission.

155. The Schrecks had felt like valued church members before this, even reciprocating by making their home available for such church and social activities as well.

156. Pastor NATHAN CARRINGTON conveyed that the Schrecks were welcome at his church. About eight months later, he cryptically told the Schrecks "the enemy is infiltrating the church." Suddenly, VICTOR PIMENTEL told HUNTER that he could no longer mix with church groups as before, because he was "touching girls," which he most certainly was not. This seems to fall in line with what whistleblowers report regarding the community policing programs which favor false accusations of moral turpitude to upset and frighten gullible citizens in regard to people the alleged whistleblowers have decided to prey upon.

157. HUNTER did not go around touching girls. When he was sitting in the JUBILEE APOSTOLIC CHURCH vestibule when the 12-year-old daughter of DR. RON RANKIN, brother-in-law of Pastor NATHAN CARRINGTON,

playfully placed a key on HUNTER's head, so he placed it back on her head. That's it!

158.   On May 1, 2020, Pastor NATHAN CARRINGTON told MARCIE Schreck that HUNTER was "stalking" his daughter, NATALEY CARRINGTON. [EXHIBIT 739.]  HUNTER wasn't at all!  HUNTER had communicated two things to her over the church website, one - a request for a ride to the grocery store and the other, a compliment, "You are beautiful," which he felt was just a nice thing to say.  MARCIE and William Schreck explained to Pastor NATHAN CARRINGTON that HUNTER has Asperger's, which means he isn't good at reading emotional cues and interacting.  HUNTER has never spoken to NATALEY CARRINGTON.  NATHAN CARRINGTON claims he has photos of website postings.

159.   It became very clear that NATHAN CARRINGTON would say and do just about anything to stop HUNTER from being interested in NATALEY CARRINGTON.  He apparently defamed HUNTER to members of the church and the community.

160.   MARCIE Schreck related to AMARILLO POLICE DEPARTMENT OFFICER WILEY D. FRAZIER that some anonymous neighbor had even claimed HUNTER was running down Soncy Road without a shirt, threatening to shoot

people! Never happened! [EXHIBIT 732.]  There was no other person who could corroborate such an outlandish event.  Based on this lie, OFFICER MATTHEW BRUSH, who had asked MARCIE if the Schrecks used to live in the Ridgewood Apartments, where they were also baselessly harassed, apparently was spreading this rumor, according to OFFICER WILEY D. FRAZIER.  When MARCIE said it was not true, OFFICER MATTHEW BRUSH mocked her and said very sarcastically, "Oh yeah, HUNTER is a real good guy."  OFFICER MATTHEW BRUSH has harassed HUNTER since 2017.  He was also there in STIFF PARK on June 24, 2020 assaulting HUNTER and failing to notify any other officers about his mental disabilities.

161.    On 10/27/2019, HUNTER made an entry in his Diary that he asked NATHAN CARINGTON if he could court NATALEY CARRINGTON. [EXHIBIT 68.]  He asked NATALEY CARRINGTON in writing to be his friend.

162.    On January 23, 2020, HUNTER called 911 when he was arguing with his parents over his car keys.  EXHIBIT 50 is the 1/23/2020 Calls for Service Report.  It shows "Caller has some kind of brain damage."  Officer Lankin Landrum responded.  Officer Roberts also responded.  Call Taker was Stephany Gervasi. [EXHIBIT 736.]

163.  Officer Roberts who also came to the Schreck home for a wellness check, brought up an incident where a woman named SAMONA PEARSON, who may also be known as Morris or Rhimes, and who has claimed to have been harassed at work by other people, called police to ask for a wellness check on HUNTER (reason unknown).  OFFICER WILEY D. FRAZIER and OFFICER ALLISON MUNCELL also performed wellness checks.

164.  The Schrecks were told Pastor NATHAN CARRINGTON had taken out a restraining order on HUNTER barring him from church grounds and activities.  Neither Deputy Sheriff Dennis Green, nor the Potter County Sheriff, nor the AMARILLO POLICE DEPARTMENT had informed the Schreck family.  It turns out this was absolutely false.

165.  This lie set up HUNTER for the humiliating experience of being blocked by an officer from entering church grounds for reasons he didn't understand.  When HUNTER went to Pastor NATHAN CARRINGTON's house as usual for prayer, no one even answered the door but rather called the police on him.  MARCIE Schreck spoke to Deputy Sheriff Dennis Green who said another restraining order had been placed on HUNTER, without the family being informed. This was another lie by the Carringtons.

166.   Deputy Sheriff Dennis Green asked MARCIE about HUNTER's disabilities.  He replied that "we are being told that HUNTER is dangerous and violent."  MARCIE asked what this was based on, and there was no explanation.  He could cite no incident that this could be based upon.  Not one.  Yet, based on nothing, Pastor NATHAN CARRINGTON was convinced or coerced to claim HUNTER was stalking his daughter, with little interest in HUNTER's struggle with disabilities and fitting in.  Pastor NATHAN CARRINGTON must not have liked the idea of HUNTER having a relationship with his daughter.  HUNTER thought they were friends.

167.   On October 12, 2021, MARCIE spoke to the Court Clerk in Potter County, and there is no record of any restraining order against HUNTER.  [EXHIBIT 304.]  It was all a lie.  NATHAN CARRINGTON made several false reports to the police, which are crimes.

168.   HUNTER has attended church for supportive Christian interaction not to harm anyone.  Is everyone who attends church fundraisers, overnight camping trips to Lake Meredith, baseball games, etc. "stalkers," or do these activities define "stalking" only if applied to HUNTER?  If HUNTER had done anything considered inappropriate, why weren't he or his parents told?  Is a "restraining order" appropriate as a first notification of a "problem" and the Schrecks have to

guess what it's about?  And what exactly was HUNTER to cease and desist?  Attending church?  How's that wrong?  It was all a fabrication, a complete lie.  There was never a protective order or restraining order.  NEVER. [EXHIBIT 127.]

169.   This unwarranted oppressive action threw HUNTER into confusion and depression.  He wanted to know what he had done WRONG.  Or was this just the manifestation of people's ignorance and emotionally immature reaction to a person with disabilities that they did not understand and could not be bothered to investigate with an open mind?

170.   MARCIE explained to Deputy Sheriff Dennis Green that the family now felt that it was the Schrecks who needed to be protected from the church and townspeople fabricating accusations against them to engender visit after visit after visit by police to their home in the name of "Wellness Checks" but really as harassment.

171.   On March 11, 2020, HUNTER was harassed and threatened while sitting quietly in church.

## AMARILLO POLICE DEPARTMENT INVOLVEMENT
## WITH THE SCHRECK FAMILY

172.   On March 11, 2020, HUNTER called 911 to report mistreatment at JUBILEE APOSTOLIC CHURCH.  EXHIBIT 51 is the 3/11/2020 Calls for

Service Report.  It shows that HUNTER was harassed and threatened while sitting quietly in church.

173.  GEORGE HASTINGS asked HUNTER to leave.  AARON GURULE threatened to call the police on HUNTER.  One of them called HUNTER "creepy." Officer Vicki Lancaster was assigned.  Call Taker was 4664440.

174.  On April 23, 2020, HUNTER went to NATHAN CARRINGTON'S HOME in Potter County.  Five (5) police cars showed up with sirens blaring. EXHIBIT 270 is the Potter County Incident Report. [EXHIBIT 735.]

175.  On April 26, 2020, HUNTER called 911 to say he needed help. EXHIBIT 52 is the 4/26/2020 Calls for Service Report.  Officer Christopher Kidd responded.  Call Taker was not identified. [EXHIBIT 734.]

176.  About this time, ANGELICA ESPARZA reported HUNTER to the AMARILLO POLICE DEPARTMENT.  HUNTER needs the discovery to show the exact date and the false police report.  This shows that she was working with the PENTECOSTAL DEFENDANTS and the AMARILLO POLICE DEPARTMENT prior to the 6/24/2020 attempted murder that she seems to have orchestrated.

177.  On June 8, 2020, records claim HUNTER called 911 to say he needed help to live.  EXHIBIT 53 is the 6/8/2020 Calls for Service Report.  OFFICER

58

ALLISON MUNCELL and OFFICER WILEY D. FRAZIER responded. Call Taker was 4794020. Crisis Intervention Team ("CIT") Officers were contacted. HUNTER did not make this call. Upon information and belief, SAMONA PEARSON made the call. This was coded as a suicide call, but it wasn't HUNTER. [EXHIBIT 732.]

## HUNTER TYLER SCHRECK'S COLLEGE PLANS

178. HUNTER moved back to Amarillo in January 2019.

179. On 6/23/2020, HUNTER was preparing to begin classes at Amarillo College. [EXHIBIT 103.] His future forever changed the next day.

## VOLLEYBALL AND UNLAWFUL SEIZURE ON JUNE 24, 2020

180. After dinner on June 24, 2020 at approximately 7:30 p.m., HUNTER TYLER SCHRECK went to John Stiff Memorial Park ("STIFF PARK") at 4800 Bell in Amarillo, Randall County, which is near the Schreck's home. He intended to try to join a volleyball game, which he had done at least eight times before without problems. Since HUNTER is a quiet and shy man, he watched the game from the sidelines and threw back any balls that left the court to show he was interested and to indicate he'd welcome an invitation to play. He always sought to

join a group appropriate to his age. He was 26-years-old. HUNTER was an exceptional athlete, and anyone would be wise to choose him to be on their team.

181. HUNTER SCHRECK identified himself to a young man in his twenties, like him, who was in or near a game. HUNTER learned his name was CHRISTIAN MORGAN. Another man who appeared to be in his 40's said it was a Christian group. HUNTER asked the general ages in the group to make sure it was appropriate. CHRISTIAN MORGAN told the older man HUNTER asked about the ages of the girls, which is absolutely false. The older man, CHRIS BURROUGHS, said HUNTER was not welcome to play based on the incorrect information he was given. CHRIS BURROUGHS told HUNTER he could come back next Sunday night and play volleyball with them.

182. HUNTER thanked CHRIS BURROUGHS and left. HUNTER later learned that CHRIS BURROUGHS called the AMARILLO POLICE DEPARTMENT non-emergency number.

183. HUNTER headed to the second game and watched, threw back balls that had left the court, and hoped for an invitation to play. Two girls seemed to tease him by speaking to each other about whether he wanted to play or not, though loud enough it seemed directed at HUNTER. He didn't respond because it was not a clear invitation.

184. Upon information and belief, ANGELICA ESPARZA was one of the two girls.

## HUNTER TYLER SCHRECK IS CALLED "TRASH" AT THE VOLLEYBALL GAME

185. Suddenly a man in the 6/24/2020 volleyball game yelled, seemingly at HUNTER, "You are TRASH!" HUNTER didn't know the man. He didn't recall ever seeing him before. HUNTER ignored him because he didn't want any trouble, and he'd been bullied throughout his life because his medical condition makes him different. HUNTER has never done anything in his life that would cause anyone to call him TRASH.

186. Upon information and belief, this was the Criminal Racketeering Organization's effort to launch their plan.

187. EXHIBIT 102 is a dictation from HUNTER to MARCIE of the events of 6/24/2020. This was obtained not long after the attempted murder on 6/24/2020. Anyone who reads this will be shocked by what happened to HUNTER. It's unimaginable.

188. Since it was getting dark and HUNTER hadn't gotten an invitation to play, as he had every time before, he prepared to head home. As he started to

leave at approximately 9:30 p.m., a man HUNTER didn't know yelled for him to "Come over here!" HUNTER wasn't sure he was even addressing him. HUNTER heard many loud voices, and the man yelled again, even louder "Come over here!" HUNTER wasn't sure what was going on so he replied, "No, I will stand right here." HUNTER looked around and wondered if they were police.

189.   It seems DANIEL RIVERA had secretly appeared in the crowd on the other side of the volleyball court. There is a bodycam video.

190.   This was a sneak attack. HUNTER saw no police cars or flashing lights. He heard no sirens. HUNTER has a neurocognitive auditory processing disorder, sensory (touch) issues, hearing loss, and sensory aphasia, etc., which people do not understand and can jump to ignorant conclusions about why he seems "different" and assume he's a threat when he's not and never has been.

191.   Assumptions are made by police despite the fact HUNTER has never broken the law, had no criminal record, is a law-abiding and Christian man. Amarillo and Randall County law enforcement, out of arrogant ignorance, have unilaterally decided "different" or "unusual" is the very same as "a threat" and even embellished these assumptions and gossip they spread to the community without the benefit of any medical expertise whatsoever, to include "dangerous" and "violent" as well, which actually endangers HUNTER and people like him. In

response to police fear and hate mongering, neighbors and other citizens have taken it upon themselves to call in exaggerated or falsified reports on HUNTER to prompt visit after visit by police to his family without cause, as a means to harass and intimidate the family under the guise of "wellness checks."

192. Upon information and belief, HUNTER went to STIFF PARK at approximately 7:30 p.m. on June 24, 2020.

193. MARCIE was able to view at the office of W. BROOKS BARFIELD an AMARILLO POLICE DEPARTMENT video of some of what happened at approximately 10:00 p.m. on 6/24/2020. She had a tape recorder in her pocket. W. BROOKS BARFIELD has refused to turn over any of the evidence to the Schrecks. EXHIBIT 98 is her transcription of 32:45 of what she could understand on the recording. There were no sirens, no lights, no police cars, no police introduction.

<u>**AMARILLO POLICE OFFICER DANIEL RIVERA**</u>
<u>**APPEARS OUT OF THE DARKNESS**</u>

This is from EXHIBIT 98:

00:00 -- In regard to the false arrest incident and provocation in STIFF PARK, I feel they purposely took advantage of my being alone to set me up. When a man

later identified as Daniel Rivera began yelling at me, there was nothing lawful about it. He did not identify himself. I had no point of reference as to why he would be yelling at me or addressing *me* at all. I was not entirely sure of what he was saying or what his intentions were. I was a free man, conducting normal activity at STIFF PARK, why was I under scrutiny and being yelled at?

00:30 -- OFFICER DANIEL RIVERA went from taunting Hunter to saying, "May I speak with you!" in a loud tone.

OFFICER DANIEL RIVERA asked for my ID. I complied only to watch him mock me and pin it to his own badge for unknown reasons. He made faces at me. Though I asked for my driver's license to be returned to me, he did not.

I was never told why I was being detained. I told OFFICER DANIEL RIVERA that I would give him my license, but I was not going to be detained. I told him I had done nothing wrong. I was not being arrested. I was never charged with a crime. I was never read my Miranda rights as I knew was required.

01:28 – HUNTER TYLER SCHRECK: I did nothing wrong.

01:45 – OFFICER DANIEL RIVERA: Like I said, we got a call.

HUNTER TYLER SCHRECK: Whoever made that call, go talk to them.

OFFICER DANIEL RIVERA: Will you stop talking? Let me explain it to you. Will you let me talk? Like I said, we got a call that you are making people uncomfortable...

01:57 -- ... so that's why I'm here to talk to you.

64

HUNTER TYLER SCHRECK: Yes, sir.

02:00 – HUNTER TYLER SCHRECK: Yes, sir, and whoever said that, you should go speak to them, go to them probably

02:04 – HUNTER TYLER SCHRECK: That's them saying that – not me.

02:09 – HUNTER TYLER SCHRECK: I've not made one person feel uncomfortable this evening.

02:13 -- OFFICER DANIEL RIVERA: Obviously you made someone uncomfortable if they called on you.  That's why we are here to talk to you.

02:16 -- OFFICER DANIEL RIVERA: Do you have any weapons on you?

02:18 – HUNTER TYLER SCHRECK: No, sir.

OFFICER DANIEL RIVERA: I'm gonna pat you down.  Hold on a second…

## HUNTER TYLER SCHRECK ASKED REPEATEDLY TO BE READ HIS RIGHTS, BUT HE NEVER WAS

HUNTER TYLER SCHRECK: Wait a minute.  Read me my rights.  I want to know my rights before you touch me.

02:26 -- OFFICER DANIEL RIVERA: I'm going to pat you down, do you understand?  I'm going to be taking you to the ground.

HUNTER TYLER SCHRECK: I will not be handled like this as a man…

OFFICER DANIEL RIVERA: Do you understand?  You are being aggressive.

HUNTER TYLER SCHRECK: You may, but by law, read me my rights.

OFFICER DANIEL RIVERA: I'm gonna pat you down for weapons. DO YOU UNDERSTAND?

## HUNTER TYLER SCHRECK PLEADS FOR HIS LIFE WITH OFFICER DANIEL RIVERA

02:36 – HUNTER TYLER SCHRECK: (Yelling loudly) No, sir. No, sir. No, sir. No. No. No. That's wrong. You're wrong. You're wrong. (Shouting loudly) YOU'RE WRONG.

02:46 – HUNTER TYLER SCHRECK: Stop. Stop. Stop. You did me wrong. You did me wrong. You did me wrong.

03:06 – HUNTER TYLER SCHRECK: Don't kill me. You're trying to kill me.

03:27 – HUNTER TYLER SCHRECK: Please do not kill me.

03:39 – [Sounds like a young girl begins to cry – keeps crying.] SAMANTHA WILSON: Obviously it's very traumatizing to see this happening – a child crying/watching.

03:49 -- SAMANTHA WILSON: I'm sure it's very traumatizing to watch something so violent.

04:41 – MARCIE SCHRECK: Like Samantha Fontenot in her Affidavit states: "I just want ya'll to know, I did not have my bodycam running." So, it's clear both

RIVERA, his camera "flying off" and SAMANTHA'S not running – conveniently for police not to show their crimes.

04:53 – HUNTER TYLER SCHRECK: PLEASE (Loudly).  (Pleading Loudly) PLEASE DON'T KILL ME.  I DON'T WANT TO DIE.  DON'T KILL ME…

05:08—HUNTER TYLER SCHRECK: …PLEASE.

06:09 – [Sirens heard coming.]

06:38 – [UNIDENTIFIED MAN SHOUTING LOUDLY, PERHAPS DANIEL SMITH]: DON'T MOVE.  PUT YOUR HANDS BEHIND YOUR BACK – NOW!

06:48 – SAMANTHA FONTENOT: Do it now.

194.   HUNTER had every right to ask questions.  He was told they were there in response to a 911 call, but he was given no details as to what in the world he was reported for other than OFFICER DANIEL RIVERA saying "you are making people uncomfortable."  Later, the Schrecks found out a girl reported HUNTER.  The Schrecks have not been able to see the 911 Call Report.

195.   The Schrecks learned that CHRIS BURROUGHS called the AMARILLO POLICE DEPARTMENT and reported that HUNTER was watching at a distance.  HUNTER now believes ANGELICA ESPARZA was working with the AMARILLO POLICE DEPARTMENT, JUBILEE APOSTOLIC CHURCH,

the PENTECOSTAL DEFENDANTS, and the VOLLEYBALL DEFENDANTS to try to entrap HUNTER, but he never did anything wrong. ANGELICA ESPARZA'S Facebook page has featured Randall County mugshots, and she is friends with people who were at STIFF PARK, and she reported HUNTER to the AMARILLO POLICE DEPARTMENT for cyber terrorism for posting on the JUBILEE APOSTOLIC CHURCH website. The RANDALL COUNTY DISTRICT ATTORNEY has the posting, but the Schrecks have been denied this evidence.

### VIOLENT ASSAULT AND ATTEMPTED MURDER
### OF HUNTER TYLER SCHRECK ON JUNE 24, 2020

196.    Then OFFICER DANIEL RIVERA suddenly and very forcefully tried to pull HUNTER'S arms behind his back as if to cuff him when he had offered no resistance. HUNTER had only asked questions about what was going on. The assault was so sudden and violent that HUNTER feared for his life. He was given no options, no answers, no explanations. It was as if OFFICER DANIEL RIVERA was using a flimsy pretext to try to seriously harm or kill HUNTER "under color of law." He did not speak with HUNTER to any extent to assess the situation; he just attacked. HUNTER's body went into self-defense mode instinctively, and he put

up his hands and arms to deflect the blows.  OFFICER DANIEL RIVERA beat and Tasered HUNTER with the AXON 26 Taser.

**AMARILLO POLICE OFFICERS WHO KNEW OF HUNTER TYLER SCHRECK'S MENTAL DISABILITIES PARTICIPATED IN BEATING HIM, TASERING HIM, AND ATTEMPTING TO MURDER HIM**

197.   Multiple other officers, including OFFICER MATTHEW BRUSH, and 10 - 11 other officers were there for the ambush, and approximately three civilians were outrageously allowed to kick and hit HUNTER with full force in the back and neck, which could have been crippling or lethal.  HUNTER begged for help, begged not to be murdered for what appeared to have been a false 911 call by an unknown girl claiming normal activity like trying to join in a volleyball game was somehow criminal or threatening.  Upon information and belief, OFFICER ALLISON MUNCELL was there during HUNTER's beating at STIFF PARK,

198.   OFFICER DANIEL RIVERA then pushed HUNTER backwards, kicking him with hard boots.  He stepped away as if to shoot him, so HUNTER got on his knees and begged to not be shot.  OFFICER DANIEL RIVERA's unreasonable anger and his cursing HUNTER indicated he was out of control and very dangerous.  OFFICER DANIEL RIVERA Tasered HUNTER in the chest, which is especially dangerous since he has a heart condition. [EXHIBIT 133.]

199. It was when HUNTER was begging for his life that other police showed up and joined in Tasering and beating him as he was rolling around on the ground in excruciating pain. There was no de-escalation. They claimed HUNTER was resisting arrest.

200. HUNTER was Tasered so much he can't tell you exactly how many times. Maybe 30 plus times. EXHIBITS 108 to 125 are photos taken after he was released from the RANDALL COUNTY JAIL.

201. HUNTER later learned he was going to be charged with assault on a police officer, not for the lesser "resisting arrest" charge. By trying to not be murdered in a full-on mob assault for no discernible reason, HUNTER was not "resisting lawful arrest." There was nothing lawful about it. Proper protocol was not followed. HUNTER begged help from bystanders who could tell you, what they were watching was police out of control. The Schrecks believe a girl, perhaps the daughter of CHRIS BOROUGHS, was seen sobbing on police video, so HUNTER needs to speak with her.

202. Apparently in his police report, OFFICER DANIEL RIVERA stated that HUNTER had tried to force his hands behind his back. That's a blatant lie.

203. In yet another example of improper police conduct, OFFICER DANIEL RIVERA drive / dry stunned HUNTER in the neck multiple times, which

70

was not only excruciatingly painful, but potentially lethal. OFFICER DANIEL RIVERA said two male civilians grabbed HUNTER and held him down. HUNTER was repeatedly Tasered in the back and neck, with the Tasers being held as long as possible.

204. This was done despite a court ruling in Texas on July 6, 2016 that Tasers are to be considered lethal weapons and not used for anything less than self-defense by officers and certainly not for a "resisting arrest" charge. [EXHIBIT 748.] (*Torres v. State*, No. 08-13-00027-CR, COURT OF APPEALS EIGHTH DISTRICT OF TEXAS EL PASO, TEXAS (Tex. App. 2016).)

205. The March 2017 United Nations Mental Health and Human Rights Report that persons with psychosocial disabilities with accompanying mental health conditions, are to be accorded their rights to freedom without interference, without torture, without nonconsensual medical treatment, and with access to a healthcare system that provides them with a quality of opportunity to attain and maintain the highest quality of health possible. https://www.ohchr.org/EN/Issues/ESCR/Pages/MentalHealthReport.aspx

206. HUNTER was denied those rights. He has a right to "personal integrity," a concept that should provide him and other victims legal redress and remedies.

207.   In complete opposition to this, HUNTER has been forcefully institutionalized, abused, tortured, and subjected to violence.  HUNTER's right to due process has been abrogated by being forcefully institutionalized and deprived of his liberty.  Even human rights organizations have come out against the use of Tasers on people with disabilities as abhorrent and cruel.

208.   Families in an "enlightened society" naturally support these objections.

209.   NBC News has reported that "For people with heart problems or serious medical conditions, as many as 50,000 volts in a single shot from a Taser could turn fatal." [EXHIBIT 46.] [EXHIBIT 126.]  HUNTER was Tasered approximately 30 times – 1,500,000 volts.  It's a miracle he's alive.  Thank you, Lord.

210.   The use of Tasers on a person with significant psychological distress is believed to cause "Systemic trauma."  This is not at all in line with mental health directives affording someone in a mental health crisis, "compassionate crisis response."  HUNTER repeatedly asked for medical, mental, and emotional support from Amarillo Exceptional Emergency and BSA in accordance with Texas law.

211.   It would *seem* the police view HUNTER as a problem, not a person with developmental problems to whom to offer proper understanding and social

programs to help him cope, but rather as a pest they just want to be rid of by repeatedly painting him in a false light and driving his family out of the community any way they can by killing him or fraudulently incarcerating HUNTER with the use of vigilantes encouraged to bear false witness against him.

212. After the AMARILLO POLICE DEPARTMENT finished Tasering HUNTER and failed in their murder attempt, they again resumed beating him, shoving his face into the sand, suffocating him, as well as choking him. He could have died. It's a miracle he's not dead.

## CIVILIAN VOLLEYBALL PLAYERS PARTICIPATED IN BEATING AND TASERING HUNTER TYLER SCHRECK

213. Third parties, not even law enforcement, were allowed to beat and kick HUNTER in the neck and spine which could have crippled if not killed him. Multiple civilians who assaulted HUNTER will be shown on bodycams and dashcams that the Schrecks have been unable to obtain.

214. The Tasering itself done to HUNTER TYLER SCHRECK at STIFF PARK on June, 24, 2020 was done in a grossly negligent manner, subjecting him to 50,000 volts of electricity on each Tase. Then after that, an officer callously jerked out many, but not all, of the Taser leads, and hooks were still in HUNTER's

body causing him substantially more pain.  When the ambulance arrived, they went about hooking HUNTER to another machine without explaining to him at all what it was or why they were doing so, which furthered HUNTER's anxiety and trauma that he would be killed.  The Schrecks later learned that no medical was given. HUNTER asked to be taken to the hospital, but the ambulance refused him.  They reported later that HUNTER refused to go to the hospital, which is absolutely false.

215.   After being taken to jail, the Police seemed to purposely leave one Taser point in HUNTER's back and left the handcuffs on him for hours even when he asked for them to remedy both situations.  The handcuffs were especially tight, and this exacerbated the pain in HUNTER's shoulder that was dislocated in the unwarranted beat-down.  The pain was so intense it caused HUNTER to moan. Police officers at the jail only mocked HUNTER, mimicked his moans, and told him he deserved it.

216.   HUNTER remembers as he sat in the police car, he looked at the screen and saw what appeared to be a "Suspicious Activity Report" (SARS).  From other accounts by victims, this apparently is a carte blanche to set-up and persecute certain people claiming them to be "suspicious persons" and then using color of law to trample their rights and purposely put them in the worst light possible to justify their persecution and abuse.

217.    As HUNTER felt he was passing out, he was yanked off the ground by police officers; there were at least four around him all the time.  Within the week, MARCIE begged SERGEANT ANTHONY MERRYMAN to not allow the AMARILLO POLICE DEPARTMENT to murder HUNTER.  He said he had reviewed bodycam footage, though not OFFICER DANIEL RIVERA's, claiming his bodycam had fallen off.  Yet, OFFICER DANIEL RIVERA's dashcam had good footage, but police edited out the cursing, so what else did they edit out?

218.    SERGEANT ANTHONY MERRYMAN said all bodycams of police involved were running but the Schreck family has no right to it since there is an on-going investigation, though an attorney could demand access.  HUNTER is pro se and has demanded the videos, but he has been denied everything.

219.    Apparently, the AMARILLO POLICE DEPARTMENT Internal Affairs investigation cleared police involved of brutality.  RIDICULOUS!  The Schrecks want full footage, no edits.  HUNTER's mother spoke to Detective Shea LITCHIE who told her, "You will see HUNTER fought to the very end."  He did not then mention anything about OFFICER DANIEL RIVERA's bodycam falling off, but four months later, after footage supposedly was reviewed by internal affairs, they ruled "no excessive force was used and there was no police brutality." It was then that SERGEANT ANTHONY MERRYMAN declared that OFFICER

DANIEL RIVERA's bodycam (showing how the violence commenced) had fallen off (and was, conveniently for the police, unavailable). The Schrecks seek an independent review of this from non-biased, third parties.

220. The AMARILLO POLICE DEPARTMENT Internal Affairs officers are all to be identified as DOE Defendants.

221. "No excessive force was used and there was no police brutality." HUNTER wants those words ringing in the jury's ear as they decide how to send the proper message to these heathens.

## MOTHER MARCIE SCHRECK GOES SEARCHING FOR HER SON, HUNTER TYLER SCHRECK

222. HUNTER's mother had been alarmed that he had not returned from STIFF PARK within a reasonable period, so she was afraid something had happened. She went to STIFF PARK at approximately 10:00 p.m. where she found about 10-11 police, one of whom, possibly OFFICER DANIEL SMITH, told her HUNTER had been "stalking girls," "assaulted police," and had been taken to jail and issued a $150,000 bond. OFFICER DANIEL SMITH was obligated to know that HUNTER could not have committed the crime of Stalking. [EXHIBIT 705.] And HUNTER did not assault police.

223.  OFFICER DANIEL SMITH taunted HUNTER's mother by repeatedly asking her "at what age" HUNTER functioned, then said he noticed HUNTER talked slowly and wondered why.  He seemed to get nervous when she told him that the family has well-documented heart and health issues.  OFFICER DANIEL SMITH made false statements to MARCIE.  He is a despicable excuse for a human being.

224.  OFFICER DANIEL SMITH, an Amarillo Police officer, asked the following questions of MARCIE at STIFF PARK on June 24, 2020:

- What is wrong with HUNTER?

- Why does he talk slowly? We notice he speaks slowly and pauses a lot.

- At what age level does he function?

- Has he been declared legally insane by a doctor? (Then both officers laughed derisively.) [EXHIBIT 733.]

225.  MARCIE responded that it has been documented that he needs to ask a lot of questions and that patience is needed to communicate with him because he needs time to cognitively process auditory input.  It goes much better when MARCIE is around to help in the process.  OFFICER ALLISON MUNCELL was the officer who *very* arrogantly mocked HUNTER in the Schreck's living room, cruelly saying, "You are not of a sound mind." [EXHIBIT 732.] Then OFFICER

WILEY D. FRAZIER said that since HUNTER has a documented disability that he was surprised that regular police were being dispatched for such calls since they fell under mental health crises not criminal issues. He emphasized that while they are only doing what they are told, they have to be careful to not breach mental health protocols because they will be in violation. MARCIE told him the entire family felt endangered by the hostile, deceitful, and criminal behavior of certain complicit authorities and townspeople. [EXHIBIT 732.]

226. This entire nightmare seems to be predicated in part upon the general, inexcusable, willful ignorance of authorities as to how to legally accommodate (mandated by law) and deal with cognitive disabilities of gentle people. Rather than do their due diligence, it is they who have reacted unreasonably and even violently. This has understandably traumatized and intimidated HUNTER causing mental distress and PTSD, which has led to HUNTER's utter distrust of police.

227. HUNTER is neither violent nor dangerous. He now fears for his life and safety because he has come under police "scrutiny" for reasons indiscernible to HUNTER.

228. Prior to June 24, 2020, HUNTER had never been charged with a crime.

229. On June 24, 2020, HUNTER was arrested and charged with two second-degree felonies for assaulting a police officer. These charges are false; no crime had been committed. [EXHIBIT 59.]

230. HUNTER's family wants to clear up the false allegations spurred by an obvious set-up, mishandling of a 911 call, failure to secure basic information from both parties, failure to correctly assess extenuating circumstances such as HUNTER's disabilities, failure to read HUNTER his rights or inform him of what was happening, much less beaten and Tasered an inch from his life by a mob of out-of-control police and civilians looking for a reason to beat someone down. This set-up and these false allegations can ruin HUNTER's life and deprive him of Social Security benefits he needs due to his many documented disabilities while throwing up yet more barriers to employment, housing, as well as State and Federal benefits intended for the disabled. This is vital to HUNTER.

231. All officers, authorities, and civilians involved must be held accountable for their excessive, unreasonable, and unlawful use of force in dealing with a documented, disabled young man even knowingly setting him up to be falsely accused and arrested as a means to ham-fistedly deal with a "different" type of person in the community, rather than learn about him and what experts suggest or even mandate procedures be when dealing with a disabled person.

232. They preferred to facilitate horrific physical, mental, and emotional abuse as a means to intimidate rather than do their due diligence in following guidelines for properly dealing with disabled people. HUNTER was inexplicably assumed to be violent when he had no history of such, and treated as if he had shown such a side to the officer who had ostensibly stopped him to question him, but did not. OFFICER DANIEL RIVERA just launched into a vicious attack out of the blue, which confused, startled, and made HUNTER fear for his life since it was completely unjustified.

233. HUNTER cannot help but feel the information on the SAR was not only false but was completely overblown to the point it misled the police so badly that they almost murdered him. His body's intuitive reaction to a near lethal assault by what turned into a mob, was to throw up his limbs in self-defense, as anyone would in an ambush situation. Yet, HUNTER was arrested and charged with assaulting a police officer for not allowing himself to be seriously injured or murdered and resisting them.

234. HUNTER received two felony charges. [EXHIBIT 9.]

235. This incident was a criminal set-up. The police insisted on saying HUNTER was "stalking girls" when to the contrary, he was trying to be

appropriate and respectful of which volleyball groups he sought to join! This was all just a scheme by criminals. A criminal racketeering enterprise.

236. HUNTER was forcefully injected with an unknown substance by medical personnel at the RANDALL COUNTY JAIL, after he said he did not consent. When HUNTER was finally released on bail, as he walked out, yet another officer taunted him by gratuitously saying, "Are you going to commit a heinous crime?" which of course HUNTER never had or ever would. Yet, that ideation and obvious preconceived prejudice was obviously rampant in authorities dealing with HUNTER, likely by a SAR filled with fabricated assessments and "facts." This likely engendered community and authority hysteria which fed on itself and created an incident out of nothing.

237. Authorities have an obligation to do their due diligence, and they chose not to, instead going on hearsay, not anything real professionals would do. They ignored State and Federal mandated guidelines on how to treat people with disabilities. Their approach was based on willful ignorance, malice, prejudice, laziness, with no care regarding proper investigation, evidence, probable cause, vetting witnesses, etc. They did not consult or follow any accepted practices in compassionately and properly dealing with people with psychoneurological issues, consulted no experts on their proper course of action, had none available, neither to

help assess nor to counsel or accommodate him, much less available to consult with his family, who are very familiar with his disabilities and could have been a wealth of knowledge and experience in how to approach and react to HUNTER without resorting to Neanderthal violence as a first and only option.

## ABUSE CONTINUES AT RANDALL COUNTY JAIL

238.   On June 25, 2020 at 4:43 a.m., MARCIE called 911 to ask about HUNTER.  EXHIBIT 54 is the 6/25/2020 Calls for Service Report.  She was told SERGEANT EATLEY would contact her.  Call Taker was 4680880.

239.   On June 25, 2020 after 4:43 a.m., HUNTER's mother called 911 again to ask to speak to SERGEANT EATLEY.  EXHIBIT 55 is the 6/25/2020 Calls for Service Report.  She was told SERGEANT EATLEY would contact her when he could.  Call Taker was 4680880.  Marcie Schreck is still waiting for SERGEANT EATLEY's call.  Hey Eatley, the number is 254-651-7078.

240.   On June 25, 2020, a MAGISTRATE'S WARNING was docketed in Case No. 30487A in Randall County Court. [EXHIBIT 3.]  [EXHIBIT 1.]  There was no affidavit of probable cause, and there was no explanation of charges against HUNTER.  There was no arrest documentation.

241.   On June 25, 2020, the REGISTER OF ACTIONS in Case No. 30487A claims another MAGISTRATE'S WARNING was issued. [EXHIBIT 4.] There was no affidavit of probable cause, and there was no explanation of charges against him.   There was no arrest documentation.

242.   On June 25, 2020, the REGISTER OF ACTIONS in Case No. 30487A claims an EXPLANATION OF RIGHT TO AN ATTORNEY was issued. [EXHIBIT 729.]

243.   On June 25, 2020, two $7,500 bonds were issued in Case No. 30487A. [EXHIBIT 5.] [EXHIBIT 6.]

## MEDICAL TREATMENT DENIED AFTER MYSTERIOUS PHONE CALL

244.   MARCIE took HUNTER to Exceptional Emergency Center, 5800 S Coulter Street, Amarillo, Texas 79119, 806-414-4768.   After being assured they would be well taken care of, the Emergency Room doctor, Dr. Thomas Mercado, demanded $1,000 up front before he would treat HUNTER.   HUNTER has been unlawfully denied Social Security benefits for which he does qualify, and he does not have health insurance

245.   MARCIE is a witness that BAPTIST ST. ANTHONY HOSPITAL ("BSA") withheld access to a proper assessment of HUNTER at their Emergency

83

Room, including denying HUNTER any kind of medication despite his heart condition, and even acted nervous to be doing so, then demanding to know if the Schrecks were recording them.  DR. THOMAS MARTIN denied proper care.

246.    BAPTIST ST. ANTHONY HOSPITAL failed to allow HUNTER access to proper assessment and treatment with such *tests* as a CT-Scan or MRI in regard to his extreme shoulder pain (dislocated from police brutality), serious *pre-existing heart condition,* headaches, heart palpitations with ventricular arrhythmia, and sleep deprivation with seizure activity.  They denied HUNTER a counselor to help him deal with trauma.

247.    Upon information and belief, doctors involved suddenly terminated any activity in HUNTER Schreck's regard after a call was received; clearly this call told them to withhold appropriate care and assessment of HUNTER's injuries to minimize evidence against the police.  MARCIE was even seemingly blackballed from getting an attorney.  She would consult an attorney who would express interest in helping but then by a second call or visit the attorney would suddenly have lost interest as if he had been called like the Schrecks believe the doctors had been told to butt out or else.

248.    This falls under the Federal law 18 U.S.C. § 241 (civilian) and § 242 (law enforcement) prohibits conspiracy to deprive anyone of their Constitutional

84

Rights, and HUNTER's certainly have been trampled, as a law-abiding, tax-paying citizen.

## HUNTER DIAGNOSED WITH A SEVERE TRAUMATIC BRAIN INJURY FOLLOWING THE ASSAULT AT THE STIFF PARK VOLLEYBALL COURTS

249. EXHIBIT 234 is a report for the ambulance called at 10:44 p.m. on 6/24/2020 after the attempted murder of HUNTER. It falsely states that HUNTER did not want EMS. On a police video, HUNTER begged EMS for help. [EXHIBIT 98.] [EXHIBIT 298.]

250. EXHIBIT 233 is a 6/27/2020 report by Dr. Thomas Mercado. Dr. Thomas Mercado reported pain in the head, neck, chest, back, pelvis, right shoulder, right wrist, right leg, left shoulder, left leg, left ankle. He reported that HUNTER said he was in fear for his life. Dr. Thomas Mercado said HUNTER lives with mom who answers all questions. Patient does not understand questions or tests that need to be done due to cognitive impairment.

251. On 7/26/2021, Dr. Jay Gattis of Amen Clinics conducted Quantitative Electroencephalography (QEEG) on Hunter's brain. [EXHIBIT 236.] Electroencephalography (EEG) is an electrophysiological monitoring method to record electrical activity on the scalp that has been shown to represent the

85

macroscopic activity of the surface layer of the brain underneath.  This identified obsessiveness, insomnia, sensory sensitivity, rumination, anxiety, poor deep sleep, and difficulty interpreting social clues.

252.  EXHIBIT 237 is a Traumatic Brain Injury diagnosis by Dr. Jay Gattis. Page 6 of EXHIBIT 237 shows that HUNTER's Traumatic Brain Injury is in the SEVERE range of severity.  EXHIBIT 238 contains 7/27/2021 images of HUNTER's brain made at Amen Clinic.

253.  On August 21, 2021, Amen Clinic issued a report on HUNTER that documented a brain injury. [EXHIBIT 399.] [EXHIBIT 237.] [EXHIBIT 373.] [EXHIBIT 374.] [EXHIBIT 375.]

254.  On September 17, 2021, Dr. Jay Faber, MD, of Amen Clinic signed a report on HUNTER TYLER SCHRECK that documented a brain injury. [EXHIBIT 399.] [EXHIBIT 237.] [EXHIBIT 373.] [EXHIBIT 374.] [EXHIBIT 375.]  On Page 4 of EXHIBIT 399, Dr. Jay Faber said "TBI (Traumatic Brain Injury) since violent assault."  On Page 10 of EXHIBIT 399, Dr. Jay Faber said the scans showed "decreased tracer activity" "suggestive of a past history of brain injury."  On Page 10 of EXHIBIT 399, Dr. Jay Faber also made Findings of "Brain Injury.  A combination of findings suggests past brain injury.  These findings include: Decreased left and right temporal lobe activity and Decreased parietal lobe

activity." These findings continued on Page 11 with "Decreased left and right occipital lobe activity and Decreased activity along the longitudinal fissure." On Page 12 of EXHIBIT 399, Dr. Jay Faber expressed primary concerns of "onset of paranoia and auditory hallucinations following a traumatic brain injury; Anxiety; and Difficulties with focus, memory, and other probable cognitive issues." On Page 13 of EXHIBIT 399, Dr. Jay Faber made this Diagnosis: "Psychotic disorder with delusions; Psychotic disorder with Hallucinations; Other specified mental disorders; Unspecified mood (affective) disorder; and Diffuse traumatic brain injury." Dr. Jay Faber, MD, is a Physician with Amen Clinics; he is a Child, Adolescent and Adult Psychiatrist; he is a Diplomate with the American Board of Psychiatry and Neurology. [EXHIBIT 398.]

## JUBILEE APOSTOLIC CHURCH CONCEIVED AND DEVELOPED THE CRIMINAL RACKETEERING ENTERPRISE INVOLVING ALL OF THE DEFENDANTS

255. The JUBILEE APOSTOLIC CHURCH in Amarillo made false accusations against HUNTER and claimed to have restraining orders against him in POTTER COUNTY. POTTER COUNTY has told MARCIE it has no records of any such thing. [EXHIBIT 216.] The Schrecks were never served or notified of any alleged protective order. [EXHIBIT 127.]

256.   This is a case that *needs* to be fought not only for HUNTER's rights but to stop authorities who feel that the Constitution can be ignored at whim or whimsically applied or denied at their discretion.

257.   On June 29, 2020, ANGELICA ESPARZA sent a video that she took on 6/24/2020 saying "the man Hunter got out of hand and resisted arrest.  I have video on my phone."  RYANN KASS, City of AMARILLO POLICE DEPARTMENT Forensic Digital Media Technician reported that she received the email from angelicagabrielle92@yahoo.com, and she reported that she later watched OFFICER DANIEL RIVERA's bodycam, which the Schrecks have been told was not available.  This evidence has not been provided to HUNTER.

258.   On July 2, 2020, the REGISTER OF ACTIONS in Case No. 30487A shows a "COMPLAINT" was filed.  EXHIBIT 7 is the document MARCIE Schreck was given that merely shows HUNTER's name at the top, $15,000 bond, and no other restrictions or conditions.  There was no arrest documentation.  There was no affidavit of probable cause. But EXHIBIT 8 is titled "COMPLAINT."  The "Complainant" is "Shea Litchie."  MARCIE has learned that DETECTIVE SHEA LITCHIE is an Amarillo Police Officer, and there is no indication that he has any personal knowledge of what took place on June 24, 2020.  His affidavit is a fraud.

## FRAUDULENT INDICTMENTS ISSUED AGAINST HUNTER TYLER SCHRECK: CHARGED WITH ASSAULT ON TWO POLICE OFFICERS WHEN HIS FACE HIT THEIR FISTS.

259. On July 22, 2020, the REGISTER OF ACTIONS in Case No. 30487A shows an "INDICTMENT" was filed. [EXHIBIT 9.] The Purported INDICTMENT does not comply with Texas law. No witnesses are identified. The charges are an attempt to cover up the attempted murder of HUNTER TYLER SCHRECK and his aggravated assault by law enforcement and civilians.

260. On July 22, 2020, an ORDER TRANSFERRING INDICTMENTS was docketed. [EXHIBIT 10.] The 47th District Court and Cause No. 30487A ended up with the case. None of this make any sense unless JUDGE DAN L. SCHAAP was designated by the Criminal Racketeering Enterprise to do the dirty work.

261. On October 2, 2020, an Incident/Investigation Report was produced by the AMARILLO POLICE DEPARTMENT. [EXHIBIT 59.] It claimed "apparent minor injury" to OFFICER DANIEL RIVERA and OFFICER SAMANTHA FONTENOT (Bowman). Excessive Tasering Disease no doubt.

262. On January 12, 2021, the REGISTER OF ACTIONS in Case No. 30487A claims a FINANCIAL INFORMATION STATEMENT was docketed, but

MARCIE reports nothing was in the file of the Court Clerk when she asked for copies of everything on 10/12/2021. [EXHIBIT 749.]

## JUDGE DAN L. SCHAAP APPOINTS W. BROOKS BARFIELD TO BE PUBLIC PRETENDER

263.    JUDGE DAN L. SCHAAP appointed W. BROOKS BARFIELD to be HUNTER's Public Defender (aka Public Pretender).  W. BROOKS BARFIELD, paid by RANDALL COUNTY, did absolutely nothing from the 1/12/2021 Order appointing him until MARCIE insisted on a meeting in September 2021.  On January 12, 2021, the REGISTER OF ACTIONS in Case No. 30487A shows an "ORDER APPOINTING COUNSEL" was filed. [EXHIBIT 11.]

264.    JUDGE DAN L. SCHAAP told W. BROOKS BARFIELD to stand down.  W. BROOKS BARFIELD told MARCIE that she would have to prepare the entire case because he didn't know how.

265.    EXHIBIT 134 is a Transcript of the Zoom call during which JUDGE DAN L. SCHAAP told HUNTER and MARCIE that they could terminate BROOKS BARFIELD at any time.  EXHIBIT 297 is the audio recording of the Zoom call that MARCIE made.

266. Those who lie in court in this case will likely be greeted with the amazing collection of tape recordings by one-heck-of-a protective mother, MARCIE Lynn Schreck. She will have proof of perjury out the wazoo.

267. On January 13, 2021, the REGISTER OF ACTIONS in Case No. 30487A shows "NOTICE OF COMPLIANCE WITH C.C.P. ART. 3914" was filed. [EXHIBIT 12.] The Schrecks have not received these items.

268. On January 14, 2021, the REGISTER OF ACTIONS in Case No. 30487A shows "STATE'S REQUEST FOR NOTICE OF DEFENDANT'S EXPERTS" was filed. [EXHIBIT 13.] Court-appointed attorney, W. BROOKS BARFIELD, has never contacted HUNTER or MARCIE about this.

269. BROOKS BARFIELD had no contact whatsoever with HUNTER or MARCIE from January 2021 to September 8, 2021. [EXHIBIT 341.] [EXHIBIT 342.]

270. MARCIE Schreck insisted on a meeting with W. BROOKS BARFIELD in September 2021. W. BROOKS BARFIELD asked that MARCIE bring HUNTER in to his office on 9/8/2021, so he could "lay eyes on him."

271. On 9/8/2021, HUNTER and MARCIE BOTH went to his office. W. BROOKS BARFIELD never spoke to HUNTER, never addressed him, and never tried to engage him. This was very upsetting to HUNTER, and he told his mother

that W. BROOKS BARFIELD wasn't working in his best interest and that he didn't want him. HUNTER and MARCIE were not even invited into the private office of W. BROOKS BARFIELD; they "spoke" in the lobby. On a tape recording that MARCIE secretly made, W. BROOKS BARFIELD can be heard saying the last thing in the world he wanted was for the Schrecks to be in his office. [EXHIBIT 299.] EXHIBIT 142 is a Transcription of the meeting made by MARCIE.

272.   On 9/8/2021, MARCIE asked W. BROOKS BARFIELD if he considered HUNTER incompetent. W. BROOKS BARFIELD said, "NO." He said with a diagnosis of Severe Traumatic Brain Injury ("TBI"), HUNTER wasn't even a candidate for Mental Health Court.

### AS ONE OF HIS CONTRIBUTIONS TO THE CRIMINAL RACKEETING ENTERPRISE, PUBLIC PRETENDER ATTORNEY W BROOKS BARFIELD AND HIS ASSISTANT, SAMANTHA WILSON, TRY TO GET HUNTER TYLER SCHRECK COMMITTED TO AN INSANE ASYLUM

273.   W. BROOKS BARFIELD did nothing in this case until 9/20/2021 when he filed a Motion Suggesting Incompetency. [EXHIBIT 14.] This was filed without discussion with HUNTER or MARCIE, who has his Statutory Durable

Power of Attorney.  This was filed against the expressed notice to W. BROOKS

BARFIELD that no such attempts were to be made.  This was filed 12 days after

W. BROOKS BARFIELD told MARCIE, that he did not consider HUNTER

incompetent.  This was filed when W. BROOKS BARFIELD has never even heard

HUNTER's voice.  HUNTER cannot trust W. BROOKS BARFIELD.  He refuses

to work with W. BROOKS BARFIELD. [EXHIBIT 156, EXHIBIT 157, EXHIBIT

392.]

274.  On September 29, 2021, the REGISTER OF ACTIONS in Case No.

30487A shows a MOTION SUGGESTING INCOMPETENCY was docketed.

Neither HUNTER nor MARCIE knew anything about this.  This is an outrage by

W. BROOKS BARFIELD, and HUNTER has filed a Bar Complaint against him.

[EXHIBIT 388.]  MARCIE was able to obtain a copy of the MOTION from the

Court Clerk when she asked for copies of everything on 10/12/2021. [EXHIBIT

14.]

275.  On September 29, 2021, Brooks Barfield secretly filed a Motion

Suggesting Incompetency. [EXHIBIT 14.]  This was not disclosed to HUNTER

TYLER SCHRECK or Marcie Schreck.  The filing is a fraud; it claims HUNTER

made the filing.

94

276.   On September 30, 2021, the REGISTER OF ACTIONS in Case No. 30487A claims "UNSIGNED ORDER (RETURNED BY JUDGE)" was docketed. [EXHIBIT 749.]

277.   On October 12, 2021, William M. Windsor noticed the Motion Suggesting Incompetency on the Docket and notified MARCIE Schreck. HUNTER TYLER SCHRECK then terminated Brooks Barfield. [EXHIBIT 2.] [EXHIBIT 10.] [EXHIBIT 16.] [EXHIBIT 136.]

278.   On October 12, 2021, HUNTER's mother, MARCIE, went to see W. BROOKS BARFIELD to deliver a Notice of Termination to him as well as a Notice of Withdrawal of the Motion Suggesting Incompetency and Notice of Termination and Withdrawal as Counsel. [EXHIBIT 2.] The office staff was totally uncooperative and quite rude.

279.   On October 12, 2021, MARCIE called and texted W. BROOKS BARFIELD to notify him of his termination. [EXHIBIT 201.] [EXHIBIT 303.] But W. BROOKS BARFIELD refuses to go away. He's like COVID-19.

280.   On October 12, 2021, MARCIE went to see W. BROOKS BARFIELD. [EXHIBIT 303 is the Audio Recording.] [EXHIBIT 201 is a Transcription of the Audio Recording.]

281.  On October 12, 2021, MARCIE drove to the Office of the Clerk of the 47th District Court and filed a Notice of Termination of W. BROOKS BARFIELD in Case No. 30487A [EXHIBIT 16 and EXHIBIT 303] and a Notice of Withdrawal of the Motion Suggesting Incompetency filed 9/29/2021. [EXHIBIT 17.]  These both appear on the Register of Actions. [EXHIBIT 70.]

282.  On October 13, 2021, MARCIE emailed W BROOKS BARFIELD requesting the case file in Case No. 30487A as HUNTER is representing himself. [EXHIBIT 65.]

## EVERY GOOD CRIMINAL RACKEETING ENTERPRISE NEEDS A CORRUPT JUDGE, AND JUDGE DAN L. SCHAAP HAS EXCELLED IN HIS CORRUPT PRACTICES.

283.  On October 14, 2021, an Order for Psychological Examination appeared on the Register of Actions in Case No. 30487A. [EXHIBIT 23.] [EXHIBIT 70.]  JUDGE DAN L. SCHAAP ordered HUNTER to appear at the RANDALL COUNTY JAIL on October 20, 2021 to be examined for "incompetency" by Dr. Gina L. Matteson. [EXHIBIT 706.]

284.  On 10/14/2021, Judge Dan L. Schaap issued an ORDER granting the Motion Suggesting Incompetency Evaluation despite HUNTER's termination of

95

W. BROOKS BARFIELD and his filing on 10/12/2021 of a Notice of Withdrawal of the Motion Suggesting Incompetency. [EXHIBIT 23.]

285. On October 15, 2021, a Notice of Unavailability was filed by HUNTER and appeared on the Register of Actions in Case No. 30487A. [EXHIBIT 22.] [EXHIBIT 70.] This was ignored.

286. On October 15, 2021, a Notice of Withdrawal of Motion was filed and appeared on the Register of Actions in Case No. 30487A. [EXHIBIT 21.] [EXHIBIT 70.] This was ignored.

287. On October 15, 2021, a Motion for Sanctions Against W. BROOKS BARFIELD was filed and appeared on the Register of Actions. in Case No. 30487A [EXHIBIT 18.] [EXHIBIT 70.] This was ignored.

288. On October 15, 2021, a Notice of Withdrawal of Motion Suggesting Incompetency was filed and appeared on the Register of Actions in Case No. 30487A. [EXHIBIT 40.] [EXHIBIT 70.] JUDGE DAN L. SCHAAP has not acted on the emergency motion. JUDGE DAN L. SCHAAP's staff has treated MARCIE very poorly.

## PRO SE LEGAL WORK IGNORED, AND STATUTORY DURABLE POWER OF ATTORNEY IGNORED

289. The Register of Actions in Case No. 30487A shows that docketed motions have been ignored. [EXHIBIT 749.] [EXHIBIT 31.] [EXHIBIT 32.] [EXHIBIT 33.] [EXHIBIT 34.] [EXHIBIT 35.] [EXHIBIT 36.] [EXHIBIT 37.] [EXHIBIT 38.] [EXHIBIT 39.] [EXHIBIT 22.] This was not docketed. [EXHIBIT 49.]

290. On October 16, 2021, a Statutory Durable Power of Attorney was executed by HUNTER. [EXHIBIT 25.]

291. On October 16, 2021, the Statutory Durable Power of Attorney was filed by HUNTER TYLER SCHRECK. [EXHIBIT 26.] It was received by the Clerk and then unlawfully omitted from the Docket. [EXHIBIT 376.]

292. On October 16, 2021, HUNTER and his family drove to Arkansas for a vacation.

293. On October 17, 2021, MARCIE registered to be able to efile for him in Case Number 30487A. She did not realize she could do this before something was spotted online. [EXHIBIT 566.]

294. On October 17, 2021, a Notice of Filing Statutory Durable Power of Attorney was submitted in Case No. 30487A. [EXHIBIT 376.]

295. On October 17, 2021, an Emergency Motion for Reconsideration of order dated October 14, 2021 was filed and appeared on the Register of Actions in

Case No. 30487A. [EXHIBIT 24.] [EXHIBIT 70.] This was HUNTER's first efiling. This was ignored as were all subsequent filings. [EXHIBIT 567.] [EXHIBIT 74.] [EXHIBIT 75.] [EXHIBIT 26.] [EXHIBIT 29.] [EXHIBIT 76.] [EXHIBIT 77.] [EXHIBIT 78.] [EXHIBIT 181.] [EXHIBIT 79.] [EXHIBIT 80.] [EXHIBIT 82.] [EXHIBIT 83.] [EXHIBIT 85.]

296.   On 10/18/2021, MARCIE Schreck called JUDGE DAN L. SCHAAP's assistant, AMANDA WEIGLE, asking if JUDGE DAN L. SCHAAP had granted the Emergency Request for Hearing on the Motion for Reconsideration. She said the judge denied it. Nothing appears on the Docket. [APPENDIX 10.] MARCIE Schreck explained that the family was out-of-state, but she and HUNTER would be available for a conversation with DR. GINA MATTESON on October 20, 2021 at 1:00 p.m. by telephone at 254-651-7078. MARCIE Schreck informed AMANDA WEIGLE that HUNTER was filing a Motion to Disqualify JUDGE DAN L. SCHAAP.

297.   On October 18, 2021, MARCIE showed HUNTER the Order from JUDGE DAN L. SCHAAP that ordered HUNTER to appear at the RANDALL COUNTY JAIL on October 20, 2021 at 1:00 pm. HUNTER had a panic attack.

298.   On October 18, 2021, a Register of Actions was printed. [EXHIBIT 49.]

299.  On October 18, 2021, 10 Notices of Filings Returned were received by MARCIE. [EXHIBIT 574.]  Nothing was docketed.

300.  On October 19, 2021, a Notice of Compliance with C.C.P. Article 39.14 was filed and appeared on the Register of Actions. [EXHIBIT 86.] [EXHIBIT 70.]  This evidence has been withheld from HUNTER.

301.  Some filings appeared on the Register of Actions, but were ignored. [EXHIBIT 88.] [EXHIBIT 70.] [EXHIBIT 89.] [EXHIBIT 90.] [EXHIBIT 91.] [EXHIBIT 92.] [EXHIBIT 93.]

302.  On October 19, 2021, MARCIE called DR. GINA MATTESON and said she had no problem altering the arrangements, so she would send a note to JUDGE DAN L. SCHAAP. [EXHIBIT 440.]  MARCIE had an email sent to DR. GINA MATTESON as she was unable to send an email in Arkansas.  A link to two articles about HUNTER's story was sent. [EXHIBIT 61.] [EXHIBIT 62.] [EXHIBIT 63.]

303.  On October 19, 2021, JUDGE DAN L. SCHAAP sent HUNTER a letter. [EXHIBIT 56.]  The Schrecks did not receive it until October 21, 2021.  On 10/21/2021, MARCIE responded for HUNTER. [EXHIBIT 57 with EXHIBITS 19, 20, and 58.]

99

304.   On October 19, 2021, MARCIE called JUDGE ANA ESTEVEZ and spoke with ANGELA JOHNSON. [EXHIBIT 443.]

305.   On October 19, 2021, MARCIE called JUDGE DAN L. SCHAAP and spoke with Teri. [EXHIBIT 430.]

306.   On October 19, 2021, MARCIE called JUDGE DAN L. SCHAAP's staff seeking to have an email read that she couldn't access in Arkansas. [EXHIBIT 431.]

307.   On October 19, 2021, MARCIE called SAMANTHA WILSON at the office of BROOKS BARFIELD telling her she needed him to withdraw. [EXHIBIT 426.]

308.   On October 19, 2021, filings ceased to be docketed. [EXHIBIT 419.] [EXHIBIT 420.] [EXHIBIT 186.] [EXHIBIT 185.] [EXHIBIT 176.] [EXHIBIT 184.] [EXHIBIT 183.]

309.   On October 19, 2021, the State filed and had docketed a Supplemental Notice of Compliance.  HUNTER never received anything. [EXHIBIT 276.]

310.   On October 19, 2021, MARCIE told HUNTER that JUDGE DAN L. SCHAAP had not entered an order reconsidering his order threatening HUNTER if he did not appear at the RANDALL COUNTY JAIL at 1:00 p.m. on October 20,

2021. HUNTER had a panic attack and suffered anxiety all night as MARCIE and HUNTER Schreck drove 700 miles from Arkansas to Amarillo.

311. On October 19, 2021, 13 Notices of Filings Returned were received by MARCIE. [EXHIBIT 596.] Nothing was docketed.

312. On October 19, 2021, 8 Notices of Filings Returned were received by MARCIE. [EXHIBIT 592.] Nothing was docketed.

313. On October 19, 2021, 29 Notices of Filings Returned were received by MARCIE at "Judge's Request." [EXHIBIT 597.] Nothing was docketed.

314. Between October 17, 2021 to October 19, 2021, 45 efilings were received and then rejected by the RANDALL COUNTY DISTRICT COURT CLERK'S OFFICE. The reasons for the rejections kept changing as it appeared they were doing everything they could think of to try to block the filings. 25 efilings snuck by and were docketed. [EXHIBIT 70.] [EXHIBIT 564.] These rejections were fraudulent and were communicated by electronic mail from Texas to Arkansas.

315. On October 19, 2021, MARCIE checked out of the Stonegate Lodge in Arkansas to drive 700 miles to Amarillo, Texas. [EXHIBIT 205.]

316. On October 20, 2021 at 12:29 p.m., HUNTER and MARCIE went to the RANDALL COUNTY CLERK OF COURT and HUNTER filed a notarized

Motion to Recuse JUDGE DAN L. SCHAAP. [EXHIBIT 58.]  JOEL FORBIS intervened and claimed the filing was not going to be accepted.  It was file stamped.  MARCIE recorded. [EXHIBIT 125.] [EXHIBIT 159.] Here is what happened:

> [Security Check-in] 00:00 – HUNTER TYLER SCHRECK: Filing to recuse Judge Schaap.
>
> MARCIE SCHRECK: It's your filing papers – just put it up here while you're here at Security checking in.
>
> 00:23 – Seeing person at office of JOEL FORBIS.
>
> 00:27 - MARCIE SCHRECK: Hunter is here to file some papers.  We need your stamp on these three, please.
>
> 00:30 – TARA: Are they all the same or different?
>
> 00:36 – MARCIE SCHRECK: Same, but I need three.  I have to go down and serve DA.  TARA: So, same.  MARCIE SCHRECK: Yes, one for you, one to DA, and myself.  Will this get to the judge?  TARA: Will send it.  I'll give it to the criminal people, and they will file it into the case.  MARCIE SCHRECK: Immediately?  Who is the criminal people, is that Tracy, and will it get filed immediately?  TARA: Tracy and Melinda, yes immediately.  MARCIE SCHRECK: Thank you,

Tara. [Hunter sat down in chairs behind me.] MARCIE SCHRECK: I believe I'm supposed to go to DA and serve. I'm having to learn all this. TARA: They may be at lunch.

01:40 – MARCIE SCHRECK: I have to be somewhere at 1:00 p.m. Have him there at 1:00 p.m. [JOEL FORBIS walks up.]

01:45 – FORBIS: Ms. Schreck, we are not allowed to take your filings anymore per according Judge Schaap. MARCIE SCHRECK: Well, this is Hunter, and by 18a, it says a party, he's pro se, he' "a party."

02:00 – FORBIS: He is not "pro se" until Barfield, Mr. Brooks, withdraws. He is not pro se.

02:02 – MARCIE SCHRECK: Are you saying "you're not going to accept this?" So, you're saying you're not going to accept?

02:04 – FORBIS: We're not allowed to accept this. I'm just following orders. We are no longer able to accept your filings.

02:22 – MARCIE SCHRECK: This is Hunter, well this is Hunter.

02:31 – MARCIE SCHRECK: This is Hunter. We just had this notarized, and Hunter is here filing. 18a -- the law says he does not have to have an attorney. Hunter can be pro se. Hunter is a party to this! So, JOEL FORBIS is saying, "it's not going to be filed." Right?

02;47 – TARA: he'll be right back; he's making a copy to give to you.  Joel will be right back.  MARCIE SCHRECK: I want to be sure Hunter's will be filed, because the law says "he is a party to this.  He is pro se, and this is the law.

03:02 – MARCIE SCHRECK: The law states this.  And he can file.

03:04 – JOEL FORBIS: Well, here's your copy. [He hands me the wrong document, a copy of financial statements for Randall County.]

03:09 -- JOEL FORBIS: Well, right now… on record, his attorney' Mr. Barfield, and until Mr. Barfield is no longer on the record as hi attorney, we can't accept this.

03:16 – MARCIE SCHRECK: We terminated Mr. Barfield on October 12th. Barfield is terminated.  We did terminate him on the 12th.  He is terminated.  He's off the case.  He is to do NOTHING.

03:21 -- JOEL FORBIS: He's not off the case yet – well he's not off the case.

03:24 – MARCIE SCHRECK: He's to do nothing but turn over the complete case file, but I have, make a note.

03:28 -- JOEL FORBIS: We are not going to file this.  MARCIE SCHRECK: So you telling me you're not going to file this, I'm telling

you I'm leaving this anyway. And that you're not going to file this.  I want you to know this, I'm leaving this with you, Hunter I leaving this here for you…

03:36 -- MARCIE SCHRECK: …to file immediately.  Okay, I know what 18a says. [Hunter and Marcie Schreck walk out and leave the District Court Clerk's Office.

04:14 – [Hunter and Marcie walk to the DA's Office – Out to lunch.  MARCIE SCHRECK: They're wrong [speaking to Hunter, but we leave it anyway.]  MARCIE SCHRECK: Give me your phone. I left mine at home.  I'm making a call to you-know-who.

317.    MARCIE's transcription of this is EXHIBIT 125.  JOEL FORBIS, JUDGE DAN L. SCHAAP, and the RANDALL COUNTY CLERK OF COURT' OFFICE all committed violations of HUNTER's Constitutional rights.  They violated due process.  They violated the Rules of Civil Procedure.  They have never shown this filing on the Register of Actions.  The case has not been stayed, and HUNTER was left with no option but to go to the jail for an unlawful evaluation.

## CORRUPT JUDGE DAN L. SCHAAP ORDERS HUNTER TYLER SCHRECK TO RANDALL COUNTY JAIL FOR MENTAL INCOMPETENCY EXAM

318.   On October 20, 2021, HUNTER and MARCIE went to the RANDALL COUNTY JAIL for a court-ordered "Competency Evaluation." HUNTER had a tape recorder in his shirt pocket.  He was frisked twice, but the policeman, Sergeant Wright, did not find it or object to it.  Wrong again, Wright? EXHIBIT 143 is a Transcription of the Audio Recording at the Jail.

319.   On October 20, 2021, an Order Sealing Records was filed and appeared on the Register of Actions. [EXHIBIT 94.] [EXHIBIT 70.]

320.   On October 20, 2021, a Competency Evaluation Report was filed and appeared on the Register of Actions. [EXHIBIT 95.] [EXHIBIT 70.]

321.   On October 21, 2021, a Supplemental Notice of Compliance with C.C.P. Article 39.14 was filed by the State and appeared on the Register of Actions. [EXHIBIT 177.] [EXHIBIT 70.]  This evidence has been withheld from HUNTER.

## JUDGE DAN L. SCHAAP PRETENDS
## HE DOESN'T KNOW THE LAW,
## BUT STAY-AT-HOME MOM MARCIE SCHRECK
## GIVES HIM A QUICK LEGAL EDUCATION.

106

322. On October 21, 2021, HUNTER and MARCIE sent a letter to JUDGE DAN L. SCHAAP in Case 30487A. [EXHIBIT 72 with EXHIBITS 19, 20, and 58.] It identifies what they believe is false information in a letter HUNTER received from JUDGE DAN L. SCHAAP.

## PRESIDING JUDGE ANA ESTEVEZ'S ASSISTANT, ANGELA JOHNSON, APPARENTLY DOESN'T KNOW THE LAW, BUT EIGHTH GRADE DROPOUT MOM MARCIE SCHRECK GIVES HER A QUICK LEGAL EDUCATION.

323. On October 21, 2021, HUNTER and MARCIE sent a letter to JUDGE ANA ESTEVEZ regarding JUDGE DAN L. SCHAAP and Case 30487A. [EXHIBIT 73.]

324. JUDGE ANA ESTEVEZ is corrupt. Her Court Administrator, ANGELA JOHNSON, was about as rude as anyone could be to someone involved in a serious legal matter.

325. On October 24, 2021, the Register of Actions for Case 30487A was printed. [EXHIBIT 268.] There is no Arrest Report on the Docket. There is no CR-4345. There is no Warrant or Affidavit of Probable Cause.

326. HUNTER wrote the following in his Diary. He doesn't understand why this was done to him. Please read his words:

A PoliceMan Can Not Arrest A Man
when Hes Not Done No Breaking of Law.
1. I was Located at John Stiff Park Memorial
park No crime No Breaking of Law.
2. Standing And Watching People Hit the
volleyball And Participate in volleyball. No crime.
And Thinking only about Possibly Seeing
if I could Join in to Participate in
A Game of Volleyball is No Breaking of
Law Neither is it illegal.
3. Talking To others about Joining in And
Meeting and greeting other People is Not
A crime neither is it illegal.
4. Taking the 55 cents Paid I is And Being given
it as a gift meaning Willingly is No crime
And is illegal Not is Not illegal.
5. Returning And asking 2nd volleyball group
to Join in until after dark with the lights
all on Is Not A crime either Neither

6. The Thoughts I had were Right When I told
Him To go to the people Who called because
I knew I Had done Nothing wRong, A Man
should Have the Right to UnderstanD What is
HaPPening To Why The Police officers were
called And Man Should feel safe with A



Police Man. A Man should be able to go
to his car when he comes asks for it
to take place for the Man to feel safe.
A Man should be able to call for Help when
I don't feel safe Just like people that call
in somebody when The Man has done nothing
wrong And The People sit back and all smile
Just like the Man who has done Nothing wrong.

327. On October 25, 2021, MARCIE called Melinda at the office of JOEL FORBIS for an okay to print copies. The call was recorded. [EXHIBIT 432.]

328. On October 25, 2021 at 12:48 p.m., a Register of Actions was printed. [EXHIBIT 272.]

329. On October 26, 2021, an Audio Recording was made of a Call to JOEL FORBIS by MARCIE Schreck regarding Dr Matteson Report. [EXHIBIT 441.]

330. On October 26, 2021, an Audio Recording was made of a call to Mashawn at the Office of ROBERT LOVE from MARCIE Schreck needing evidence. [EXHIBIT 451.]

331. On October 28, 2021 at 11:38 a.m., MARCIE sent an email to BROOKS BARFIELD charging him with malpractice and demanding the case file. BROOKS BARFIELD has never turned over anything to HUNTER or MARCIE. [EXHIBIT 208.]

332. On October 28, 2021 at 4:41 p.m., BROOKS BARFIELD sent an email to MARCIE claiming there was a Show Cause Hearing on 11/2/2021 that HUNTER must attend. [EXHIBIT 141.] There was no such hearing.

333. On October 28, 2021 at 8:24 p.m., MARCIE sent an email to BROOKS BARFIELD issuing a CEASE-AND-DESIST. [EXHIBIT 207.] Earlier

messages had made it clear that he was to cease all contact. BROOKS BARFIELD did not cease or desist.

334. On October 28, 2021 at 8:24 p.m., MARCIE sent an email to Chief of Police MARTIN BIRKENFELD requesting email addresses for 10 Amarillo Police Department employees who were being sued by HUNTER. [EXHIBIT 288.] MARTIN BIRKENFELD never responded.

335. On October 28, 2021 at 9:16 p.m., MARCIE efiled a Notice of Unavailability. [EXHIBIT 180.] [EXHIBIT 180.] It was not docketed and was ignored by JUDGE DAN L. SCHAAP.

336. On October 29, 2021, HUNTER TYLER SCHRECK filed a Verified Complaint in the United States District Court for the Northern District of Texas against City of Amarillo, a Texas municipality; Randall County, a Texas municipality; Potter County, a Texas Municipality; Randall County District Attorney's Office; Robert Love, Dave Blount; Randall County Clerk of Court's Office; Joel Forbis; Randall County District Courts; Judge Dan L. Schaap; Judge Ana Estevez; Angela Johnson; Justice of the Peace; Randall County Jail; Amarillo Police Department; Chief Martin Birkenfeld; Officer Daniel Rivera; Officer Samantha Fontenot; Officer Allison Muncell; Officer Matthew Brush; Sergeant Anthony Merryman; Detective Shea Lichtie; Officer Daniel Smith; Officer Wiley

111

D. Frazier; Jason Bailey; Sergeant Jason Riddlespurger; Ryann Kass; W. Brooks Barfield; Samantha Wilson; Jubilee Apostolic Church; Nathan Carrington; Rolonda Carrington; Nataley Carrington; Aaron Gurule; Dana Gurule; Maria Veronica Canales; Victor Pimentel; George Hastings; Deborah Rauh; Dr. Ron Rankin; Leann Rhimes; Samona Pearson; Margaret Pearson; Timothy Bailey; Ileta Bailey; Adriana Cortez; Angelica Esparza; Brayan Zubiate; Chris Boroughs; Christian Morgan; Mariah Rose Murillo; Nyah Gonzalez; Andres Soria; Baptist St. Anthony Hospital; Dr. Gina Matteson, and John Does 1-100.  It was assigned Case Number 2-21-CV-220-Z-BR. [EXHIBIT 162.] [EXHIBIT 167.] [EXHIBIT 168.] [EXHIBIT 169.] [EXHIBIT 164.] [EXHIBIT 173.]

337.   On October 28, 2021, a letter was sent to JUDGE DAN L. SCHAAP from MARCIE Schreck. [EXHIBIT 561.]

338.   On October 29, 2021at 12:59 p.m. CST, a Verified Complaint was filed in U.S. District Court for the Northern District of Texas. [EXHIBIT 197.]

339.   On 10/31/2021, HUNTER filed a Motion to Quash Purported Indictment and Motion to Dismiss in Case #30487A. [EXHIBIT 160.] [EXHIBIT 161.]  [APPENDIX 24 and APPENDIX 25.]  APPENDIX 26 shows the Motion was efiled and received by the Clerk, which means it was filed.

340.   On 11/1/2021, the Affidavit of MARCIE Schreck was filed. [EXHIBIT 353.]

341.   On 11/1/2021, Audio Recording of Call to JOEL FORBIS from MARCIE Schreck in which Tracy said JOEL FORBIS was not in. [EXHIBIT 442.]

342.   On 11/1/2021, Email to Brooks Barfield from MARCIE Schreck requesting filing 30 exhibits and instructing Barfield to go see judge to argue Motion to Disqualify Judge Dan L Schaap. [EXHIBIT 334.]

343.   On 11/1/2021, Email to BROOKS BARFIELD from MARCIE Schreck requesting filing Motion to Quash Indictment and Motion to Dismiss. [EXHIBIT 335.]

344.   On 11/1/2021, Email to BROOKS BARFIELD from MARCIE Schreck requesting Show Cause Response. [EXHIBIT 340.]

345.   On 11/1/2021, the Second Motion to Recuse JUDGE DAN L. SCHAAP was filed. [EXHIBIT 178.]  It doesn't appear on the Docket.

346.   On 11/1/2021, the Second Motion to Recuse JUDGE DAN L. SCHAAP was filed. [EXHIBIT 362.]

347.   On 11/1/2021, Notice of Filing Mandamus to Court of Criminal Appeals was filed. [EXHIBIT 189.]

348. On 11/1/2021, a notarized Response to Purported Show Cause Order was filed. [EXHIBIT 196.]

349. On 11/1/2021, HUNTER filed a Second Verified Motion to Recuse and for Disqualification of JUDGE DAN L. SCHAAP ("SECOND MOTION TO DISQUALIFY"). [EXHIBIT 178.]

350. On 11/1/2021, a notarized Response to Purported Show Cause Order was filed. [EXHIBIT 196.]

351. On 11/2/2021, a Motion for Continuance was filed. [EXHIBIT 351.]

352. On 11/2/2021, a Proposed Order on a Motion for Withdrawal as Counsel BROOKS BARFIELD was filed. [EXHIBIT 350.]

353. On 11/2/2021, a Proposed Order on a Termination of W BROOKS BARFIELD was filed. [EXHIBIT 352.]

354. On 11/2/2021, an Audio Recording of BILLY MAPLES was made. [EXHIBIT 300.]

355. On 11/2/2021, an Audio Recording of BILLY MAPLES threatening HUNTER with jail for not appearing at Status Hearing was made. [EXHIBIT 306.]

356. On 11/2/2021, an Audio Recording of BROOKS BARFIELD calling MARCIE Schreck was made. [EXHIBIT 307.]

114

357. On 11/2/2021, Audio Recordings of Calls to BILLY MAPLES from MARCIE Schreck were made. [EXHIBIT 459.] [EXHIBIT 460.] [EXHIBIT 461.] [EXHIBIT 462.] [EXHIBIT 463.] [EXHIBIT 464.] [EXHIBIT 465.] [EXHIBIT 433.]

358. On 11/2/2021, Audio Recordings of Calls to BROOKS BARFIELD from MARCIE Schreck were made. [EXHIBIT 428.] [EXHIBIT 429.] [EXHIBIT 422.] [EXHIBIT 423.]

359. On 11/2/2021, Emails were sent to BROOKS BARFIELD. [EXHIBIT 136.]

360. On 11/2/2021, an Email was sent to BROOKS BARFIELD from MARCIE Schreck requesting discovery. [EXHIBIT 337.]

361. On 11/2/2021, an Email was sent to BROOKS BARFIELD from MARCIE Schreck requesting discovery. [EXHIBIT 338.]

362. On 11/2/2021, an Email was sent to BROOKS BARFIELD from MARCIE Schreck requesting setting of depositions. [EXHIBIT 339.]

363. On 11/2/2021, an Email was sent to BROOKS BARFIELD from MARCIE Schreck requesting subpoenas and more. [EXHIBIT 210.]

364. On 11/2/2021, a Transcription of Audio Recording of BROOKS BARFIELD calling MARCIE Schreck was made. [EXHIBIT 307.] [EXHIBIT 254.]

365. On 11/2/2021, an Email to BROOKS BARFIELD was sent from the Schrecks with a CEASE-AND-DESIST. [EXHIBIT 140.]

366. On 11/2/2021, a letter to MARCIE was hand-delivered from JUDGE DAN L SCHAAP at a purported status hearing. [EXHIBIT 446.]

367. On 11/2/2021, a Motion for Continuance was filed by MARCIE. [EXHIBIT 187.]

368. On 11/2/2021, a Motion for Withdrawal of Counsel BROOKS BARFIELD was filed. [EXHIBIT 310.]

369. On 11/2/2021, a PROPOSED ORDER on the Motion to Withdraw BROOKS BARFIELD was filed. [EXHIBIT 311.]

370. On 11/2/2021, a Presentation for the Purported Show Cause Hearing was prepared. [EXHIBIT 137.]

371. On 11/2/2021, a Presentation for the Purported Status Conference Hearing Presentation was prepared. [EXHIBIT 138.]

372. On 11/2/2021, a PROPOSED ORDER on the Termination of W BROOKS BARFIELD was filed. [EXHIBIT 188.]

373.   On 11/2/2021, a Transcription of an Audio Recording Billy Maples was made. [EXHIBIT 198.]

374.   On 11/2/2021, a Transcription was made of Audio Recording of BILLY MAPLES threatening HUNTER with JAIL for not appearing at Status Hearing. [EXHIBIT 206.]

375.   On 11/2/2021, a Transcription of call to BILLY MAPLES AFTER STATUS HEARING was made. [EXHIBIT 533.]

376.   On 11/2/2021, a Transcription of call to BILLY MAPLES before Status Hearing was made. [EXHIBIT 534.]

377.   On 11/2/2021, a VIDEO was made of HUNTER Schreck answering questions, but the audio didn't record. [EXHIBIT 370.]

378.   On 11/2/2021, a Hearing Transcript was made. [EXHIBIT 787.]

379.   On 11/3/2021, an Audio Recording was made of Mashawn at The D.A. ROBERT LOVE's Office was made. [EXHIBIT 302.]

380.   On 11/3/2021, an Audio Recording was made of HUNTER Schreck about his Bed of Languishing. [EXHIBIT 301.]

381.   On 11/3/2021, an Audio Recording was made of a Call from Mashawn to MARCIE saying The D.A. ROBERT LOVE will not meet. [EXHIBIT 439.]

117

382. On 11/3/2021, an Audio Recording was made of a Call to MARCIE from BROOKS BARFIELD regarding status hearing. [EXHIBIT 450.]

383. On 11/3/2021, an Audio Recording was made of a Call to Mashawn at The D.A. ROBERT LOVE's Office requesting an appointment with The D.A. ROBERT LOVE. [EXHIBIT 452.]

384. On 11/3/2021, Brooks BARField sent a Certified Letter to Hunter Tyler Schreck. [EXHIBIT 163.]

385. On 11/3/2021, BROOKS BARFIELD returned MARCIE's call saying he will convey to JUDGE DAN L. SCHAAP that HUNTER is incapacitated. He did no such thing. [EXHIBIT 397.]

386. On 11/3/2021, A Notice of Deficiency was issued in Schreck v City of Amarillo in 2-21-CV-220-Z. [EXHIBIT 171.]

387. On 11/3/2021, a Transcription of Audio Recording to Mashawn was made. [EXHIBIT 302.] [EXHIBIT 200.]

388. On 11/3/2021, a Transcription of Audio Recording was made of HUNTER Schreck Bed of Languishing [EXHIBIT 301.] [EXHIBIT 199.]

389. On 11/4/2021, a Notice of Filing a Petition for Writ of Mandamus was filed in WR 93,265 01. [EXHIBIT 223.]

390.   On November 16, 2021 at 6:34 a.m., a Notification of Service was issued on a Request for Standby Counsel. [EXHIBIT 314.]

391.   On 11/6/2021, the Affidavit of MARCIE Schreck regarding Hunter Video was filed. [EXHIBIT 156.]

392.   On 11/6/2021, the Affidavit of WILLIAM Schreck regarding Hunter Video was filed. [EXHIBIT 157.]

393.   The Federal Express Delivery Receipt for 11/6/2021 Letter to JUDGE DAN L. SCHAAP is EXHIBIT 289.

394.   On 11/6/2021, MARCIE sent a letter to JUDGE ANA ESTEVEZ. [EXHIBIT 562.]  EXHIBIT 204 is Proof of Mailing.

395.   On 11/6/2021, MARCIE sent a letter to JUDGE DAN L. SCHAAP. [EXHIBIT 204.]  EXHIBIT 204 is Proof of Mailing.  [EXHIBIT 221.]

396.   On 11/6/2021, Proof of Mailing by FedEx to JUDGE DAN L. SCHAAP and JUDGE ANA ESTEVEZ. [EXHIBIT 204.]

397.   On 11/8/2021, a PROTECTIVE ORDER against BROOKS BARFIELD was filed in 110,695 2 CV. [EXHIBIT 308.] [EXHIBIT 309.]

398.   On 11/8/2021, a Filing Accepted was given for EMERGENCY Motion for Stay in WR 93,265 01. [EXHIBIT 262.]

119

399. On 11/8/2021 at 7:07 a.m., a Notice of Filing Petition for Writ of Mandamus was filed. [EXHIBIT 217.]

400. On 11/8/2021, a Notice of Filing Petition for Writ of Mandamus Emergency Motion for Stay was filed in WR 93,265 01. [EXHIBIT 222.]

401. On 11/10/2021, an ORDER of Referral of Judge Schaap for Recusal or Disqualification was docketed. [EXHIBIT 292.]

402. On 11/10/2021, a Filing Submitted was received on Request for Hearing on Motion to Quash and Motion to Dismiss. [EXHIBIT 261.]

403. On 11/10/2021, a Notification of Service on Request for Hearing on Motion to Quash and Motion to Dismiss was received. [EXHIBIT 259.]

404. On 11/10/2021, an Order of Referral was docketed. [EXHIBIT 280.]

405. On 11/10/2021, a Request for Hearing on Motion to Quash and Motion to Dismiss was filed. [EXHIBIT 260.]

406. On 11/11/2021, a Demand for Speedy Trial was filed. [EXHIBIT 278.]

407. On 11/10/2021, a TEXAS CRIMES VICTIMS COMPENSATION PROGRAM APPLICATION was submitted. [EXHIBIT 531.]

408. On 11/12/2021, Demand for Speedy Trial was submitted on efileTexas. [EXHIBIT 526.]

120

409. On 11/12/2021, a Motion for Discharge due to Failure to Provide a Speedy Trial was efiled. [EXHIBIT 527.]

410. On 11/12/2021, a Motion for Discharge due to Failure to Provide a Speedy Trial was efiled. [EXHIBIT 528.]

411. On 11/12/2021, a Letter from JUDGE DAN L. SCHAAP was sent to MARCIE Schreck. [EXHIBIT 539.]

412. On 11/12/2021, a Letter to ROBERT LOVE from MARCIE Schreck is evidenced by a Certified Mail Return Receipt. [EXHIBIT 284.]

413. On 11/12/2021, a Letter to ROBERT LOVE from MARCIE Schreck is evidenced by a Certified Mail Return Receipt. [EXHIBIT 363.]

414. On 11/12/2021, a Motion for Discharge was filed. [EXHIBIT 279.]

415. On 11/12/2021, a Proof of Filing Screenshot was made of an eFiling. [EXHIBIT 490.]

416. On 11/13/2021, HUNTER efiled a Motion to Motion to Disqualify JUDGE ANA ESTEVEZ in Case #30487A. [EXHIBIT 281.]  [EXHIBIT 326.] [EXHIBIT 282.]

417. On 11/13/2021, HUNTER efiled a Motion to Disqualify JUDGE ANA ESTEVEZ. [EXHIBIT 361.] [EXHIBIT 282.]

418. On 11/13/2021, a Request for Subpoenas was filed. [EXHIBIT 283.]

121

419.   On 11/13/2021, a Request for Subpoenas was filed. [EXHIBIT 360.]

420.   On 11/13/2021, a PROPOSED ORDER on Request for Subpoenas was filed. [EXHIBIT 313.]

421.   On 11/13/2021, a Request for Subpoenas for Hearing on Motion to Disqualify was filed. [EXHIBIT 312.]

422.   On 11/13/2021, Federal Express Receipts were received. [EXHIBIT 530.]

423.   On 11/14/2021, requests to Chief MARTIN BIRKENFELD were made to investigate and file criminal charges against BRUSH. [EXHIBIT 543.] FONTENOT. [EXHIBIT 545.] LICHTIE. [EXHIBIT 546.] KASSE. [EXHIBIT 544.] MERRYMAN Certified. [EXHIBIT 535.] MUNCELL. [EXHIBIT 536.]

424.   On November 14, 2021, MARCIE sent a letter by Federal Express to Amarillo Chief of Police MARTIN BIRKENFELD WITH 12 criminal complaints. [EXHIBIT 537.] [EXHIBIT 532.]  Complaints were made against Smith [EXHIBIT 538]; Bailey [EXHIBIT 553]; Brush [EXHIBIT 555]; Fontenot [EXHIBIT 557]; Frazier [EXHIBIT 559]; Kass [EXHIBIT 556]; Lichtie [EXHIBIT 558]; Riddlespurger [EXHIBIT 554]; Rivera [EXHIBIT 552]; and Unidentified Others [EXHIBIT 560].

425. The charges to be investigated were Attempted Murder -- Texas Penal Code Sec. 19.02; Unlawful Restraint -- Texas Penal Code Sec. 20.02; Kidnapping -- Texas Penal Code Sec. 20.03; Aggravated Kidnapping -- Texas Penal Code Sec. 20.04; Criminal Conspiracy -- Texas Penal Code Sec. 15.02; False Report to Peace Officer, Law Enforcement Employee, or Jailer -- Texas Penal Code Sec. 37.08; Deadly Force -- Texas Penal Code, Chapter 9, Subchapter D; Deadly Conduct -- Texas Penal Code Section 22.05; Terroristic Threat -- Texas Penal Code Section 22.05; Unlawful Seizure -- Violation of Texas Constitution, Article 1, Section 9; Tampering with or Fabricating Physical Evidence -- Texas Penal Code Sec. 37.09; Destruction of Evidence -- Texas Penal Code Sec. 37.09; Official Oppression -- Texas Penal Code Sec. 39.03; Obstruction of Justice; Official Misconduct -- Texas Code of Criminal Procedure Art. 3.04; False Arrest; False Sworn Affidavits; Perjury -- Texas Penal Code Section Art. 21.14; Aggravated Perjury -- Texas Penal Code Section Art. 21.14; RICO; Serious bodily injury; serious mental deficiency, impairment, or injury to a disabled individual -- Section 22.04 of the Texas Penal Code.   There has been no response and no investigation.

426. On 11/16/2021 at 7:43 a.m., Filing Returned on Request for Standby Counsel. [EXHIBIT 315.]

427.   On 11/16/2021, a Motion for Rescheduling Hearing due to Lack of Jurisdiction was filed. [EXHIBIT 348.]

428.   On 11/16/2021,a Motion for Rescheduling Hearing due to Lack of Jurisdiction FILING RECEIPT was obtained. [EXHIBIT 349.]

429.   On 11/16/2021, a Notice of Filing Audio Transcriptions was filed. [EXHIBIT 347.]

430.   On 11/16/2021, a Motion for Rescheduling Hearing due to Lack of Jurisdiction was filed. [EXHIBIT 322.]

431.   On 11/16/2021, a Motion for Rescheduling Hearing due to Lack of Jurisdiction FILING RECEIPT was generated. [EXHIBIT 323.]

432.   On 11/16/2021, an ORDER of Assignment of JUDGE KENT SIMS by Presiding Judge Ana Estevez was docketed. [EXHIBIT 317.]

433.   On 11/16/2021, a Proof of Filing Screenshot from eFiling for Texas was generated. [EXHIBIT 491.] [EXHIBIT 492.] [EXHIBIT 493.] [EXHIBIT 494.]

434.   On 11/16/2021, a Request for Standby Counsel was filed. [EXHIBIT 318.]

435.   On 11/17/2021, an Affidavit of MARCIE Schreck was filed. [EXHIBIT 356.] [EXHIBIT 357.] [EXHIBIT 358.]

436. On 11/17/2021, a Notice of Filing Exhibits for Hearing November 18 2021 was filed. [EXHIBIT 355.] [EXHIBIT 354.]

437. On 11/17/2021, a Request for Judicial Notice and Video for Hearing was filed. [EXHIBIT 359.]

438. On 11/17/2021, Proof of Filing Screenshots were made. [EXHIBIT 495.] [EXHIBIT 496.] [EXHIBIT 497.] [EXHIBIT 498.] [EXHIBIT 499.] [EXHIBIT 500.] [EXHIBIT 501.]

439. On 11/18/2021, an ORDER ON STATE'S OBJECTION TO VOID MOTION TO RECUSE AND HEARING was docketed. [EXHIBIT 331.]

440. On 11/18/2021, a Motion for Protective Order was filed. [EXHIBIT 345.]

441. On 11/18/2021 at 15:21 p.m., a Motion to Strike Purported Hearing of 11/18/2021 due to Lack of Jurisdiction was filed. [EXHIBIT 346.]

442. On 11/17/2021, an Email was sent to DA ROBERT LOVE from MARCIE Schreck. [EXHIBIT 325.]

443. On 11/18/2021, a PROPOSED ORDER was filed. [EXHIBIT 320.]

444. On 11/18/2021, a Motion to Strike Purported Hearing of November 18, 2021 was filed. [EXHIBIT 105.]

445.    On 11/18/2021, a Notice of Filing of Motion to Strike Purported Hearing of November 18, 2021 was filed. [EXHIBIT 106.]

446.    On 11/18/2021, a Notice of Filing 30487A Motion for Protective Order was filed. [EXHIBIT 365.]

447.    On 11/18/2021, a Notice of Hearing 30487A was docketed. [EXHIBIT 541.]

448.    On 11/18/2021, an Order Denying Motion to Disqualify was docketed. [EXHIBIT 332.]

449.    On 11/18/2021, an Order on State's Objection to Void Motion to Recuse and Hearing was docketed. [EXHIBIT 107.]

450.    On 11/18/2021, a Proof of Filing Screenshots eFiling for Texas Envelope Receipt was printed. [EXHIBIT 502.] [EXHIBIT 503.]

451.    On 11/18/2021, a Request for Standby Counsel PROPOSED ORDER was filed. [EXHIBIT 319.]

452.    On 11/18/2021, the STATE'S OBJECTION TO VOID MOTION TO RECUSE AND HEARING. [EXHIBIT 368.]

453.    Email with Formal Complaint against D.A. ROBERT LOVE for Criminal Acts was sent. [EXHIBIT 344.]

454.   On 11/19/2021, an Email was sent to JUDGE KENT SIMS with a Request for Findings of Fact Conclusions of Law. [EXHIBIT 97.]

455.   On 11/19/2021, an Email with Formal Complaint against DA ROBERT LOVE and JUDGE KENT SIMS was sent. [EXHIBIT 333.]

456.   On 11/19/2021, a Notice of Filing Request for Findings of Fact Conclusions of Law 2021 was generated. [EXHIBIT 364.]

457.   On 11/19/2021, a Proof of Filing Screenshot eFiling for Texas Envelope Receipt was printed. [EXHIBIT 504.]

458.   Request for Findings of Fact and Conclusions of Law was filed. [EXHIBIT 343.]

459.   An Email was sent to The D.A. ROBERT LOVE charging him and JUDGE KENT SIMS with crimes. [EXHIBIT 96.]

460.   On 11/22/2021, an Affidavit of MARCIE Schreck was filed. [EXHIBIT 371.]

461.   On 11/22/2021 at 17:40 PM, a Notice of Filing Submitted New Statutory Durable Power of Attorney was printed. [EXHIBIT 378.]

462.   On 11/22/2021, a Proof of Filing Screenshot eFiling for Texas Envelope Receipt was printed. [EXHIBIT 505.]

463.    On 11/22/2021 at 6:53 p.m., a video was filmed of HUNTER TYLER SCHRECK answering questions about BROOKS BARFIELD was sent to JUDGE DAN L. SCHAAP, JUDGE ANA ESTÉVEZ, AND JUDGE KENT SIMS. [EXHIBIT 377.]  The Flash Drive of the video was sent to each judge by Certified Mail. [EXHIBIT 372.] [EXHIBIT 392.]

464.    On 11/22/2021, a Letter was sent to JUDGE DAN L. SCHAAP from MARCIE Schreck. [EXHIBIT 540.]

465.    On 11/23/2021, an Email was sent to JOEL FORBIS about Filing Interference. [EXHIBIT 379.]

466.    On 11/23/2021, Filing Returned was sent on Statutory Durable Power of Attorney. [EXHIBIT 386.]

467.    On 11/23/2021, at 2:52 p.m., HUNTER TYLER SCHRECK's Statutory Durable Power of Attorney was filed with the Randall County Clerk. [EXHIBIT 400.]  It makes MARCIE Schreck and William M. Windsor his attorneys-in-fact for all legal matters.

468.    A so-called "Bench Memorandum" was docketed. [EXHIBIT 390.]

469.    On 11/23/2021, JUDGE DAN L SCHAAP signed an Order Setting Hearing by Submission.  It asked for objections to BROOKS BARFIELD's Withdrawal. [EXHIBIT 389 is a Certified Copy.]  It is an outrageous, unlawful

order because the State in a criminal case has no right to object to the Defendant's decision on legal representation. It was docketed November 24, 2021. As of 12/13/2021, JUDGE DAN L. SCHAAP has manipulated Case 30487A so that HUNTER never had legal representation for the 561 days the case has been pending. JUDGE DAN L. SCHAAP has tried to stop all pro se filings.

470. On 11/24/2021, a Letter-to JOEL FORBIS from with Objection to Motion to Disqualify was filed. [EXHIBIT 393.]

471. On 11/24/2021, Proof of Filing Screenshots were printed. [EXHIBIT 506.] [EXHIBIT 507.] [EXHIBIT 508.] [EXHIBIT 509.] [EXHIBIT 510.] [EXHIBIT 511.] [EXHIBIT 512.] [EXHIBIT 513.]

472. On 11/24/2021, MARCIE filed a State Bar of Texas Grievance against BROOKS BARFIELD. [EXHIBIT 388.]

473. On 11/25/2021, MARCIE filed a State Bar of Texas Grievance against The D.A. ROBERT LOVE. [EXHIBIT 391.]

474. On 11/26/2021 at 9:09 p.m., Notice of Filing Motion-to-Strike-Filing-of-States-Objection-to-Void-Motion and EXHIBITS were filed. [EXHIBIT 394.] [EXHIBIT 395.] Proof of Filing Screenshot from eFiling is EXHIBIT 514.

475. On 11/26/2021, Proof of Filing Screenshot of eFiling was printed. [EXHIBIT 515.]

476.    On 11/25/2021, HUNTER filed a Bar Grievance against The D.A. ROBERT LOVE. [EXHIBIT 396.] [ EXHIBIT 391.] [EXHIBIT 542.] [EXHIBIT 667.]

477.    On 11/27/2021, HUNTER filed Another Motion for Discharge for Delay and failure to provide a speedy trial. [EXHIBIT 367.]

478.    On 11/27/2021 at 1:29 a.m., an email was sent to judges and many others with the State Bar of Texas Grievance against ROBERT LOVE. [EXHIBIT 542.]

479.    On 11/27/2021, HUNTER filed Applications for Depositions and Proposed Orders for AMAYAH COUCH [EXHIBIT 401] [EXHIBIT 402]; JUDGE ANA ESTEVEZ [EXHIBIT 411] [EXHIBIT 412]; JUDGE DAN L SCHAAP [EXHIBIT 413] [EXHIBIT 414]; DAVE BLOUNT [EXHIBIT 417] [EXHIBIT 418]; KRESTON CAHOON [EXHIBIT 407] [EXHIBIT 408]; MYAH COUCH [EXHIBIT 405] [EXHIBIT 406]; MYAH COUTOH [EXHIBIT 403] [EXHIBIT 404]; RANDALL COUNTY DA'S OFFICE [EXHIBIT 409] [EXHIBIT 410]; ROBERT LOVE [EXHIBIT 415] [EXHIBIT 416].  Screenshots show proof of filing.  [EXHIBIT 516.] [EXHIBIT 517.] [EXHIBIT 518.] [EXHIBIT 519.] [EXHIBIT 520.] [EXHIBIT 521.] [EXHIBIT 522.] [EXHIBIT 523.] [EXHIBIT 524.] [EXHIBIT 525.]

480.    On 11/29/2021, 18 of HUNTER's filings were returned in 30487A. The Returned Reason was "Judge's Request." The Returned Comments were "The Randall County District Clerk's Office has been ordered not to accept any further communications, oral or written, concerning this criminal matter from any person other than the attorney of record." The rules and case law provide that everything is filed upon receipt by the Clerk of Court, so JUDGE DAN L. SCHAAP has violated the rules and HUNTER's rights. Denied filings were: 11/24/2021 Notice of Filing State Bar of Texas Grievance Against W BROOKS BARFIELD; NOTICE OF FILING BAR GRIEVANCE AGAINST ROBERT LOVE; Notice; MOTION TO STRIKE ORDER SETTING HEARING BY SUBMISSION; Motion to Strike Filing of States Objection to Void Motion; Motion to Strike Filing of States Objection to Void Motion – EXHIBITS; ANOTHER MOTION FOR DISCHARGE FOR DELAY; APPLICATION FOR DEPOSITION OF ROBERT LOVE AND AFFIDAVIT IN SUPPORT; APPLICATION FOR DEPOSITION OF DAVE BLOUNT AND AFFIDAVIT IN SUPPORT; APPLICATION FOR DEPOSITION OF DAN L. SCHAAP AND AFFIDAVIT IN SUPPORT; APPLICATION FOR DEPOSITION OF ANA ESTEVEZ AND AFFIDAVIT IN SUPPORT; APPLICATION FOR DEPOSITION OF RANDALL COUNTY DISTRICT ATTORNEY'S OFFICE AND AFFIDAVIT IN SUPPORT;

131

APPLICATION FOR DEPOSITION OF KRESTON CAHOON AND

AFFIDAVIT IN SUPPORT; APPLICATION FOR DEPOSITION OF AMAYAH

COUCH AND AFFIDAVIT IN SUPPORT; APPLICATION FOR DEPOSITION

OF MYAH COUTOH AND AFFIDAVIT IN SUPPORT; APPLICATION FOR

DEPOSITION OF MYAH COUCH AND AFFIDAVIT IN SUPPORT;

APPLICATION FOR DEPOSITION OF JIM POPS COUCH AND AFFIDAVIT

IN SUPPORT; Motion.

481.    On 12/4/2021, HUNTER filed a Judicial Misconduct Complaint against

JUDGE DAN L. SCHAAP.

482.    On 12/6/2021, HUNTER filed a Motion Requesting Hearings.

[APPENDIX 154.]  A Proof of Filing Submitted was sent by the Clerk. [APPENDIX

155.]  Proof of Notification of Service was received from the Clerk. [APPENDIX

156.]  Later that day, a Filing Returned Notice was sent by the Clerk.  "Returned

Reason: Judge's Request.  Returned Comments: The Randall County District

Clerk's Office has been ordered not to accept any further communications, oral or

written, concerning this criminal matter from any person other than the attorney of

record." [APPENDIX 157.]  It doesn't appear on the Docket. [APPENDIX 26.]

483.    On 12/6/2021, HUNTER filed a Motion Requesting Removal of

BROOKS BARFIELD from the Clerk's Records. [APPENDIX 158.]  A Proof of

132

Filing Submitted was sent by the Clerk. [APPENDIX 159.] Proof of Notification of Service was received from the Clerk. [APPENDIX 160.] Later that day, a Filing Returned Notice was sent by the Clerk. "Returned Reason: Judge's Request. Returned Comments: The Randall County District Clerk's Office has been ordered not to accept any further communications, oral or written, concerning this criminal matter from any person other than the attorney of record." [APPENDIX 161.] It doesn't appear on the Docket. [APPENDIX 26.]

484. On 12/6/2021, HUNTER filed a Motion Demanding Contact Information. [APPENDIX 162.] A Proof of Filing Submitted was sent by the Clerk. [APPENDIX 163.] Proof of Notification of Service was received from the Clerk. [APPENDIX 164.] Later that day, a Filing Returned Notice was sent by the Clerk. "Returned Reason: Judge's Request. Returned Comments: The Randall County District Clerk's Office has been ordered not to accept any further communications, oral or written, concerning this criminal matter from any person other than the attorney of record." [APPENDIX 165.] It doesn't appear on the Docket. [APPENDIX 26.]

485. On 12/6/2021, three Filing Returned Notices were sent by the Clerk. "Returned Reason: Judge's Request. Returned Comments: The Randall County District Clerk's Office has been ordered not to accept any further communications,

oral or written, concerning this criminal matter from any person other than the attorney of record." [APPENDIX 166.]  It doesn't appear on the Docket. [APPENDIX 26.]

486.  On 12/7/2021, an Order Granting Attorney Withdrawal was docketed.

487.  On 12/7/2021, an Order for Transcript was filed.

488.  On 12/8/2021, HUNTER filed a Petition for Writ of Mandamus regarding the refusal to honor the Statutory Durable Power of Attorney.

489.  On 12/9/2021, HUNTER filed a Petition for Writ of Mandamus regarding the refusal to docket his filings.

490.  On 12/9/2021, JUDGE DAN L. SCHAAP issued an Order Setting Hearing.

491.  On 12/9/2021, JUDGE DAN L. SCHAAP sent a letter to MARCIE Schreck.

492.  On 12/10/2021, a Notice of Filing Statutory Durable Power of Attorney was docketed.

493.  On 12/10/2021, HUNTER filed a Motion for Judicial Notice for his Petition for Writ of Mandamus regarding the refusal to honor the Statutory Durable Power of Attorney.

494.   On 12/11/2021, HUNTER filed a Third Motion for Discharge due to Delay.

495.   On 12/11/2021, HUNTER filed an Amended Motion to Quash Purported Indictment. [EXHIBIT 774.]

496.   On 12/11/2021, HUNTER filed a Second Notice of Filing Statement of Inability to Pay Court Costs. [EXHIBIT 779.]

497.   On 12/12/2021, HUNTER filed a Second Request for Standby Counsel and Notice Pursuant to COVID-19 Operating Plan. [EXHIBIT 765.]

498.   On 12/13/2021, HUNTER filed a Second Motion for Protective Order. [EXHIBIT 771.]

499.   On 12/13/2021, HUNTER filed a Second Application for Deposition of Dan L. Schaap.

500.   On 12/13/2021, HUNTER filed a Second Motion to Suppress. [EXHIBIT 776.]

501.   On 12/13/2021, HUNTER filed Second Motion for Findings of Fact and Conclusions of Law. [EXHIBIT 768.]

502.   On 12/13/2021, HUNTER filed Another Request for Hearing on the Motion to Quash purported Indictment and Motion to Dismiss with Prejudice. [EXHIBIT 772.]

503. On 12/14/2021, HUNTER filed Defendant's Second Amended Motion for Disclosure. [EXHIBIT 770.]

504. On 12/14/2021, HUNTER filed Defendant's Second Amended Request for Discovery.

505. On 12/14/2021, HUNTER filed his Second Petition for Disclosure of Grand Jury Material and Request for Hearing. [EXHIBIT 775.]

506. On 12/14/2021, HUNTER filed Defendant's Second Amended Motion for Notice of Extraneous Wrongs. [EXHIBIT 773.]

507. On 12/14/2021, HUNTER filed his Second Notice of Filing Bar Grievance Against Robert Love. [EXHIBIT 777.]

508. On 12/14/2021, HUNTER filed Defendant's Second Amended Motion for Disclosure. [EXHIBIT 770.]

509. On 12/14/2021, HUNTER filed his Second Motion for Sanctions and to Compel Brooks Barfield to Deliver Evidence and Case File. [EXHIBIT 789.]

510. On 12/14/2021, HUNTER filed his Second Motion Requesting participation in Hearings by Zoom. [EXHIBIT 779.]

511. On 12/15/2021, HUNTER filed an Emergency Motion for Hearings. [EXHIBIT 769.]

512. On 12/15/2021, HUNTER filed a Proposed Order on Emergency Motion for Hearings. [EXHIBIT 788.]

513. On 12/16/2021, HUNTER filed a Second Motion for Sanctions and to Compel Brooks Barfield to Deliver Evidence and Case File. [EXHIBIT 766.]

514. On 12/16/2021, HUNTER filed a Proposed Order on Second Motion for Sanctions and to Compel Brooks Barfield to Deliver Evidence and Case File. [EXHIBIT 767.]

515. On 12/16/2021, HUNTER filed a Third Request for Subpoenas on Motions to Disqualify. [EXHIBIT 780.]

516. On 12/16/2021, HUNTER filed a Proposed Order on Second Motion for Sanctions and to Compel Brooks Barfield to Deliver Evidence and Case File.

517. On 12/31/2021, a Request for Hearing on First, Second, and Third Petitions for Disclosure of Grand Jury Material was docketed.

518. On 12/31/2021, a Third Petition for Disclosure of Grand Jury Material and Request for Hearing was docketed.

519. On 1/12/2022, a Notice of Filing Motion for Rehearing and Motion for Reconsideration En Banc on Petition for Writ of Mandamus to Seventh District Court of Appeals was docketed.

137

520.   On 1/12/2022, a Motion for Rehearing and Motion for Reconsideration En Banc on Petition for Writ of Mandamus was docketed.

## CAUSES OF ACTION

521.   HUNTER alleges that the Defendants, under color of Texas statutes, ordinances, regulations, customs, or usage, subjected, or caused to be subjected, HUNTER TYLER SCHRECK, a citizen of the United States, to the deprivation of rights, privileges, and immunities secured by the Constitution and laws, and are liable to HUNTER in this action.

522.   HUNTER was deprived of rights secured by the United States Constitution, denied liberty by state officials acting pursuant to established procedures.  The procedural safeguards built into the process were Constitutionally inadequate.

523.   The DEFENDANTS are all persons subject to liability under 42 U.S.C. § 1983.

524.   DEFENDANTS have exercised power possessed by virtue of state law and made possible only because DEFENDANTS were clothed with the authority of state law.

525.   Some DEFENDANTS were used by other DEFENDANTS who

138

exercised power possessed by virtue of state law and made possible only because those DEFENDANTS were clothed with the authority of state law.

## CLAIM FOR RELIEF 1
### Constitutional and Civil Rights Pursuant to 42 U.S.C. § 1983, 1988
### Violation of Fourth Amendment – Unlawful Seizure
(Against CITY OF AMARILLO, AMARILLO POLICE DEPARTMENT, OFFICER DANIEL RIVERA, OFFICER SAMANTHA FONTENOT, DETECTIVE SHEA LICHTIE, OFFICER MATTHEW BRUSH, OFFICER ALLISON MUNCELL, AND UNIDENTIFIED DOES)

526.   HUNTER hereby incorporates all other paragraphs of this COMPLAINT as if fully set forth herein.

527.   HUNTER possessed a Constitutionally-protected right to not be subjected to unreasonable seizure guaranteed by the Fourth Amendment to the United States Constitution; to freedom from deprivation of liberty and property without due process of law; and freedom from arbitrary governmental activity that shocks the conscience of a civilized society.

528.   On June 24, 2020, HUNTER was unlawfully detained and seized by AMARILLO POLICE DEPARTMENT, OFFICER DANIEL RIVERA and OFFICER SAMANTHA FONTENOT as he peacefully stood beside the volleyball court at STIFF PARK.  He had not committed a crime, and he was not charged

with a crime. His driver's license was seized and never returned. He was assaulted by OFFICER DANIEL RIVERA, OFFICER SAMANTHA FONTENOT, OFFICER DANIEL SMITH, OFFICER MATTHEW BRUSH, and others.

529. Harm to HUNTER is the result of action on the part of the government entities that implemented or executed policy statements, ordinances, regulations, or decisions officially adopted and promulgated by the officers of the entities, or the result of the entities' customs.

530. The CITY OF AMARILLO and the AMARILLO POLICE DEPARTMENT have unconstitutional policies and have failed to train their employees. The failure to train amounts to deliberate indifference to an obvious need for such training, and the failure to train has resulted in employees making wrong decisions.

531. By their conduct, as described herein, enforcing the arbitrary and fundamentally unfair procedures, Defendants acting under color of state law, deprived HUNTER of his rights to his Constitutional right to liberty without due process of law acting pursuant to established policies and procedures. The procedural safeguards built into the process were Constitutionally inadequate procedures and will continue to deprive other citizens of the same right.

532. Those DEFENDANTS who were not acting under color of law based upon their employment, were acting as if they were employed by the CITY OF AMARILLO or RANDALL COUNTY, including when their actions were in violation of the laws of the State of Texas and the Constitutions and laws of the United States of America and Texas.

533. As a direct result of the actions, statements and/or policies of the Defendants, HUNTER suffered an unconstitutional deprivation of his rights under the Fourth Amendment to the U.S. Constitution.

534. Defendants CITY OF AMARILLO, AMARILLO POLICE DEPARTMENT, OFFICER DANIEL RIVERA, OFFICER SAMANTHA FONTENOT, OFFICER DANIEL SMITH, DETECTIVE SHEA LICHTIE, OFFICER MATTHEW BRUSH, OFFICER ALLISON MUNCELL, and others acted intentionally and with callous disregard for HUNTER's known statutory and Constitutional rights.

535. As a direct and proximate result of DEFENDANTS' unlawful actions, HUNTER has suffered, and will continue to suffer severe and substantial damages. These damages include medical expenses, denial of insurance and government benefits, lost income, lost career and business opportunities, litigation expenses including attorney fees, loss of reputation, humiliation, embarrassment,

inconvenience, mental and emotional anguish and distress.

## CLAIM FOR RELIEF 2
### Constitutional and Civil Rights Pursuant to 42 U.S.C. § 1983, 1988
### Violation of Fourth, Fifth, and Fourteenth Amendment Rights
(Against All Defendants and DOES 1 – 500)

536.   HUNTER hereby incorporates all other paragraphs of this COMPLAINT as if fully set forth herein.

537.   HUNTER was detained and seized without probable cause, was arrested on false charges, set up by JUBILEE APOSTOLIC CHURCH DEFENDANTS, was almost murdered by OFFICER DANIEL RIVERA and other DEFENDANTS, was incarcerated in the RANDALL COUNTY JAIL without probable cause, was denied medical treatment, was arraigned without proof of probable cause, was purportedly indicted with an unlawful indictment, was made subject of a perjured Complaint, was subjected to unlawful prosecution by the RANDALL COUNTY DISTRICT ATTORNEY'S OFFICE, was denied access to evidence, was forced to have an incompetent public defender in W. BROOKS BARFIELD, was denied due process by many DEFENDANTS, especially JUDGE DAN L. SCHAAP, was denied rights granted under Texas law, was denied all

protections guaranteed by the Americans with Disabilities Act, and was victimized by a criminal racketeering enterprise.

538.   HUNTER possessed a Constitutionally-protected right to freedom from deprivation of liberty and property without due process of law; and freedom from arbitrary governmental activity that shocks the conscience of a civilized society.

539.   At his arraignment, the JUSTICE OF THE PEACE claimed there was a finding of probable cause, but there was no affidavit of probable cause, no arrest record, no witness, and no testimony.  The finding of probable cause is invalid.

540.   The harm to HUNTER is the result of action on the part of the government entities that implemented or executed policy statements, ordinances, regulations, or decisions officially adopted and promulgated by the officers of the entities, or the result of the entities' customs.

541.   The AMARILLO POLICE DEPARTMENT, CITY OF AMARILLO, the RANDALL COUNTY DISTRICT ATTORNEY'S OFFICE, and the RANDALL COUNTY JAIL have unconstitutional policies and have failed to train their employees.  The failure to train amounts to deliberate indifference to an obvious need for such training, and the failure to train have resulted in employees making wrong decisions.

542. By their conduct, as described herein, enforcing the arbitrary and fundamentally unfair procedures, DEFENDANTS acting under color of state law, deprived HUNTER of his rights to his Constitutional right to liberty without due process of law acting pursuant to established. The procedural safeguards built into the process were Constitutionally inadequate procedures and will continue to deprive other citizens of the same right.

543. Those DEFENDANTS who were not acting under color of law based upon their employment, were acting as if they were employed by the CITY OF AMARILLO or RANDALL COUNTY, including when their actions were in violation of the laws of the State of Texas and the Constitutions and laws of the United States of America and Texas.

544. As a direct result of the actions, statements and/or policies of the Defendants, HUNTER suffered an unconstitutional deprivation of his rights under the Fourth, Fifth, and Fourteenth Amendments to the U.S. Constitution.

545. DEFENDANTS acted intentionally and with callous disregard for HUNTER's known statutory and Constitutional rights.

546. As a direct and proximate result of Defendants' unlawful actions, HUNTER has suffered, and will continue to suffer severe and substantial damages. These damages include medical expenses, denial of insurance and government

benefits, lost income, lost career and business opportunities, litigation expenses including attorney fees, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish and distress.

## CLAIM FOR RELIEF 3
### Constitutional and Civil Rights Violations Pursuant to 42 U.S.C. § 1983, 1988
### Fourth Amendment Rights – Excessive Force
(Against CITY OF AMARILLO, AMARILLO POLICE DEPARTMENT, OFFICER DANIEL RIVERA, OFFICER SAMANTHA FONTENOT, OFFICER DANIEL SMITH, DETECTIVE SHEA LICHTIE, OFFICER MATTHEW BRUSH, OFFICER ALLISON MUNCELL, DOES, AND OTHERS YET TO BE IDENTIFIED)

547.   HUNTER hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

548.   HUNTER was denied due process under the Fifth and Fourteenth Amendments, and his Fourth Amendment rights were violated by excessive force.

549.   This is an unconstitutional policy or decision formally adopted and promulgated by the CITY OF AMARILLO.

550.   When fat, Hispanic OFFICER DANIEL RIVERA suddenly and without warning physically attacked HUNTER by grabbing and twisting his arm with hard force, slamming him to the ground, shooting him with Tasers, burying

145

his face in the sand, kicking him, cussing him viciously, and more, this was an assault upon HUNTER, employing excessive force, in violation of the Fourth Amendment.

551. No officer (besides those employed at the AMARILLO POLICE DEPARTMENT) would consider OFFICER DANIEL RIVERA's sudden and unannounced deployment of painful force and excessive aggression upon HUNTER to have been reasonable or justified under the circumstances.

552. The AMARILLO POLICE DEPARTMENT has a written policy that states something such as this regarding use of force: [1]

> "A sworn employee will never use unnecessary force or violence and will use only such force in the discharge of duty as is reasonable and appropriate in each circumstance. Force should be used only when negotiation and persuasion have been found to be inappropriate or ineffective. While the use of force is occasionally unavoidable, every law enforcement employee will refrain from applying the unnecessary infliction of pain or suffering and will never engage in cruel, degrading, or inhuman treatment of any person."

553. OFFICER DANIEL RIVERA attempted neither negotiation nor persuasion in the 95 seconds of contact he had with HUNTER before committing aggravated assault on him and violently Tasing him. In those seconds, HUNTER told OFFICER DANIEL RIVERA seven (7) times that what he was doing was

---

[1] This is the Loveland Colorado Policy as cited in a case similar to this. HUNTER has not yet obtained this policy through discovery.

146

wrong. In the next 30 seconds, HUNTER begged for his life three times. [EXHIBIT 98.]

554. Shooting him 34 times with 1,500,000 volts of electricity is endorsed and trained by no self-respecting law enforcement agency anywhere due to its obvious likelihood of causing death or serious pain and physical injury. It was used on HUNTER solely for the purpose of injuring him and showing him that Defendants OFFICER DANIEL RIVERA, OFFICER SAMANTHA FONTENOT, and OFFICER DANIEL SMITH were "in charge."

555. Defendants OFFICER MATTHEW BRUSH, OFFICER ALLISON MUNCELL, and as many as 10 other officers with the AMARILLO POLICE DEPARTMENT had both the duty and ample opportunity to intervene to stop OFFICER DANIEL RIVERA, OFFICER SAMANTHA FONTENOT, and OFFICER DANIEL SMITH's ongoing violence upon HUNTER but chose instead to do nothing, or materially assist in its continuation and cover-up.

556. OFFICER MATTHEW BRUSH and OFFICER ALLISON MUNCELL were fully aware of HUNTER's mental disabilities. Both officers had been called to HUNTER'S homes in the past. OFFICER MATTHEW BRUSH had known HUNTER and his problem since 2017. OFFICER ALLISON

147

MUNCELL had been dispatched to HUNTER's home just 16 days before. [EXHIBIT 732.]

557.  Defendant OFFICER SAMANTHA FONTENOT personally continued the excessive force violations begun by Defendant OFFICER DANIEL RIVERA.

558.  OFFICER DANIEL SMITH laughed repeatedly about how many times HUNTER was tased.  He said "23 or more." [EXHIBIT 98, Page numbered 8.]  This was after OFFICER DANIEL SMITH questioned girls at the volleyball game who said HUNTER did not speak to them, never touched any of them, and never did anything improper. [EXHIBIT 98, Page 6.]

559.  Defendants OFFICER DANIEL RIVERA, OFFICER SAMANTHA FONTENOT, and OFFICER DANIEL SMITH used excessive force in seizing HUNTER, handcuffing him unduly aggressively, and then forcing him to remain handcuffed and restrained for an excessively lengthy period of time.  HUNTER suffered a Severe Traumatic Brain Injury from the beating. [EXHIBIT 399.]

560.  The Bodycam and Dashcam videos provide overwhelming evidence of many crimes committed by the Amarillo police, and HUNTER begging for his rights, for mercy, and that he not be killed.  If the jury is allowed to give a death

penalty in a civil case, the Defendants should be headed for death row at the Polunsky Unit in West Livingston, Texas.

561.   The Fourth Amendment forbids unreasonable seizures, which includes seizures carried out with excessive force, like this one.

562.   In Texas, to stop and detain you, police must have reasonable suspicion that you have been involved in a criminal act.  OFFICER DANIEL RIVERA told HUNTER 15 seconds after he accosted him at the STIFF PARK volleyball courts that "You made people feel uncomfortable."  HUNTER vehemently denied this. [EXHIBIT 98, Unnumbered page before Page numbered 1.]  19 seconds later, OFFICER DANIEL RIVERA told HUNTER he was being detained.  In the next 60 seconds, HUNTER told OFFICER DANIEL RIVERA that this was "wrong."  HUNTER repeatedly asked to be read his rights.  He never was.  90 seconds into their exchange, OFFICER DANIEL RIVERA said he was going to pat HUNTER down. After 150 seconds, the assault began and HUNTER begged for his life.

563.   In Texas, the police are allowed to hold you for a reasonable amount of time, and they can question you as part of their investigation.  The police knew HUNTER had done nothing wrong.

149

564.    If you are detained, you do not have to give identifying information, such as your name and date of birth.  But OFFICER DANIEL RIVERA forced HUNTER to give him his license, which contained his name and date of birth, and forced him to answer questions.

565.    HUNTER told the police he did not have a weapon, and there was no reasonable suspicion that he was in possession of a dangerous weapon, so they were no grounds for a "pat down."  All the police needed to do was check HUNTER's name to find he had a record of mental illness and officers were at his home just 16 days prior. [EXHIBIT 98, Page 1.]

566.    During detention, a person in Texas has the right to remain silent, and the right to ask for an attorney, but though he asked to be read his rights repeatedly, he was never had any of his rights explained.  HUNTER asked to be read his rights four times before he was assaulted and began begging for his life. [EXHIBIT 98.]

567.    The Defendants unreasonably and unconstitutionally seized HUNTER and used excessive force in light of the totality of the circumstances, including but not limited to:

    a.    HUNTER had not engaged in any criminal activity;
    b.    HUNTER had never committed a crime;
    c.    HUNTER posed no physical threat to anyone, anywhere;
    d.    HUNTER was visibly a person with mental disability;

e. HUNTER's mental disabilities were well-documented by the AMARILLO POLICE DEPARTMENT and its Crisis Intervention Team ("CIT");

f. HUNTER was not attempting to flee or escape anyone but instead was attending a volleyball game in a public park;

g. The communicative problems immediately observed with HUNTER upon initial contact suggested likely mental disability;

h. The failure of OFFICER DANIEL RIVERA to appropriately approach and handle HUNTER with his disabilities; and

i. OFFICER DANIEL RIVERA's aggressive, violent, and threatening actions that prompted HUNTER to panic, fear for his life, and beg that he not be murdered.

568. HUNTER's right to be free from unreasonable seizure and excessive force as described herein was clearly established at the time the Defendant officers attacked him, Tased him repeatedly, handcuffed him, denied him water, and then kept him in isolation away from medical care in pain and handcuffs for hours.

569. The AMARILLO POLICE DEPARTMENT and their officers often interact with people who have disabilities, like HUNTER, and thus the circumstances constituted a usual and recurring situation.

570. Defendants OFFICER DANIEL RIVERA, OFFICER SAMANTHA FONTENOT, OFFICER DANIEL SMITH, OFFICER MATTHEW BRUSH, and other as yet unidentified DOE DEFENDANTS effected their assaults and injuries to HUNTER, and AMARILLO POLICE DEPARTMENT SUPERVISORS (DOES) both approved of, personally participated in, and directed the continuation

of those assaults and injuries, with deliberate indifference to HUNTER's rights under the Fourth Amendment to the U.S. Constitution.

571.    Defendants' sudden seizure and violent extended assault upon HUNTER caused him to experience great physical pain, injury, and terror. The experience of this event caused and continues to cause HUNTER trauma and emotional distress, along with lasting physical injuries.

572.    AMARILLO POLICE DEPARTMENT supervisors directly participated in the infraction, after learning of it, failed to remedy wrong, created a policy or custom under which unconstitutional practices occurred or allowed such policy or custom to continue.

573.    After learning of this, CHIEF MARTIN BIRKENFELD failed to remedy the wrong and failed to create a policy or custom under which unconstitutional practices would not be allowed to continue.

574.    As a direct result of the actions, statements and/or policies of the Defendants, HUNTER suffered an unconstitutional deprivation of his rights under the Fourth, Fifth, and Fourteenth Amendments to the U.S. Constitution.

575.    Defendants acted intentionally and with callous disregard for HUNTER's known statutory and Constitutional rights.

576.    As a direct and proximate result of Defendants' unlawful actions,

HUNTER has suffered, and will continue to suffer severe and substantial damages. These damages include medical expenses, denial of insurance and government benefits, lost income, lost career and business opportunities, litigation expenses including attorney fees, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish and distress.

## CLAIM FOR RELIEF 4

### *42 U.S.C. § 1983 – Fourth Amendment*

### *Deliberate Indifference to Medical Need/Excessive Force/ Failure to Provide Medical Care*

(against Defendants CITY OF AMARILLO, RANDALL COUNTY, AMARILLO POLICE DEPARTMENT, RANDALL COUNTY JAIL, OFFICER DANIEL RIVERA, OFFICER SAMANTHA FONTENOT, OFFICER DANIEL SMITH, and DOES 1 - 500)

577.   HUNTER hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

578.   HUNTER needed medical care following the injuries inflicted upon him by the defendant officers.  His need for medical treatment was visibly apparent and objectively obvious.

579.   The defendant officers were subjectively aware of HUNTER's injuries requiring medical treatment, as evidenced in the videos.  What these people said and did to HUNTER TYLER SCHRECK is unthinkable, illogical,

153

unbelievable, unreasonable, unimaginable, and preposterous. The problem is it actually happened and is even worse than these words convey. It is thinkable because it happened. It is imaginable because it happened.

580. Keeping HUNTER in handcuffs, in isolation, without water, and without access to critical medical treatment exacerbated both HUNTER's physical injuries and emotional trauma.

581. The decision made by DEFENDANTS and executed by DEFENDANTS to not inform the RANDALL COUNTY JAIL of HUNTER's serious injuries quite foreseeably ensured (particularly given his mental disabilities and inability to communicate or advocate for himself) that he would continue to be deprived of medical treatment once transported to the jail and left in a cell.

582. The RANDALL COUNTY JAIL relies on other agencies following written policies that require them to notify the jail of any possible injuries for transported arrestees. The jail naturally and foreseeably assumes that if an arrestee has been involved in a use of force incident with possible injuries, the AMARILLO POLICE DEPARTMENT will include that information in the booking information that accompanies the transferred arrestee, so that proper medical notice, attention and care can be provided.

583. Defendant officers violated this policy, keeping the jail deliberately ignorant of HUNTER's injuries, which needlessly caused HUNTER more injury, more trauma, and more pain and suffering. Defendant officers knowingly and deliberately ignored HUNTER's serious medical conditions, and HUNTER also repeatedly alerted them to the fact that he was in severe pain, which they also ignored.

584. As a proximate result of the Defendant officers' deliberate indifference to his serious medical needs, HUNTER experienced hours of needless additional pain and suffering. He experienced heightened and more severe physical pain and trauma along with worsened physical injury, by the Defendants keeping him painfully restrained in handcuffs after they had beaten and Tased him.

585. Defendants OFFICER MATTHEW BRUSH, OFFICER SAMANTHA FONTENOT, AND OFFICER ALLISON MUNCELL knew about HUNTER's situation, directed that he be denied medical care in violation of AMARILLO POLICE DEPARTMENT policy, and directed that he be transported to the jail without medical care or treatment. Defendants OFFICER DANIEL RIVERA and OFFICER SAMANTHA FONTENOT knew of HUNTER's obvious medical needs and elected to ignore them out of deliberate indifference and likely

pursuant to a supervisor's direction. OTHER DEFENDANTS knew about HUNTER's situation.

586. No officer would consider the Defendants' keeping the bleeding and disabled HUNTER in isolation, without access to medical treatment or mental health assistance, while complaining of multiple physical injuries, to have been reasonable or justified under the circumstances. There is absolutely no justification for the Defendants' decision to deprive HUNTER of even momentary access to medical care. He never received medical care.

587. OFFICER MATTHEW BRUSH was present at STIFF PARK, and he had a duty to intervene to provide aid to HUNTER. Having previously been in the homes of HUNTER on "Wellness Checks," as early as 2017, OFFICER MATTHEW BRUSH had direct personal knowledge that HUNTER had a mental disability, was vulnerable, injured, and the ongoing victim of excessive force. He had ample opportunity to intervene to stop the ongoing atrocity against HUNTER. He did nothing but laugh about it, approve of it, participate in the mugging, and help cover it up.

588. If OFFICER ALLISON MUNCELL was present at STIFF PARK, she had a duty to intervene to provide aid to HUNTER. Having previously been in the home of HUNTER on a "Wellness Check," she had direct personal knowledge that

HUNTER had a mental disability, was vulnerable, injured, and the ongoing victim of excessive force. She would have had ample opportunity to intervene to stop the ongoing atrocity against HUNTER.

589. Defendants deprived HUNTER of medical treatment with deliberate indifference to his rights under the Fourth Amendment to the U.S. Constitution, and caused his needless additional trauma, pain, exacerbated injury, anguish, and suffering.

## **CLAIM FOR RELIEF 5**
### *42 U.S.C. § 12101-12213*
### *Violations of Title II of Americans With Disabilities Act*
(against Defendants CITY OF AMARILLO, AMARILLO POLICE DEPARTMENT, RANDALL COUNTY JAIL, OFFICER DANIEL RIVERA, OFFICER SAMANTHA FONTENOT, OFFICER ALLISON MUNCELL, JUDGE DAN L. SCHAAP, OFFICER MATTHEW BRUSH, BROOKS BARFIELD, UNIDENTIFIED DOES)

590. All preceding paragraphs of this Complaint are incorporated here for purposes of this Claim.

591. Title II of the ADA prohibits public entities from discrimination on the basis of a disability.

592.    42 U.S.C. § 121311(1)(B)). Title II of the ADA requires reasonable accommodation during arrest for people with mental disabilities. Specifically, it requires "reasonable modifications in policies, practices or procedures." 28 C.F.R. § 35.130(b)(7).

593.    An ADA violation occurred when police wrongfully arrested HUNTER, an individual with a disability, and the effects of the disability were allegedly misperceived as criminal activity.

594.    The police failed to reasonably accommodate HUNTER's disability during the course of investigation and arrest.

595.    HUNTER was suffering from disorientation and sensory aphasia at the time of this incident.  He was, and is, mentally disabled.  There were NO accommodations.

596.    HUNTER is a qualified individual with a disability under the ADA. He has Autism Spectrum Disorder, sensory aphasia which substantially limits his major life activities by causing him to suffer from serious memory loss and impairment along with extraordinary challenges in his ability to communicate with others.

597.    Title II of the ADA applies to the arrest context. *Gohier v. Enright*, 186 F.3d 1216 (10th Cir. 1999).

158

598.   OFFICER DANIEL RIVERA and OFFICER SAMANTHA FONTENOT chose to treat the common, foreseeable and lawful consequences of HUNTER's disabilities, being confused and frantic when assaulted) as illegal activity (assault on a police officer).  This was discrimination in violation of Title II of the ADA. *See Gohier*, 186 F.3d at 1220.

599.   HUNTER, by virtue of his mental disabilities, could not speak effectively for himself or understand OFFICER DANIEL RIVERA's intentions. [EXHIBIT 98.]

600.   The effects of HUNTER's disabilities were lawful in fact and treated as criminal by the defendant officers, in violation of the ADA.

*601.*   The defendants also violated HUNTER's rights under the ADA because they failed to reasonably accommodate his disability in the course of investigation and arrest, causing him to suffer greater injury, trauma, and indignity in that process than other arrestees. *See id.*

602.   The defendant officers failed to provide modifications or reasonable accommodations to HUNTER in light of his disabilities and the CITY OF AMARILLO failed to adopt policies and procedures, or adequately train its police officers to safely interact with people who suffer such common disabilities.

603. Some reasonable accommodations for a person with Autism Spectrum Disorder include employing nonthreatening communications, speaking slowly and allowing the person with Autism to respond at their pace, using less confrontational tactics, checking the police department's history with the Autistic person, allowing the passage of time to defuse the situation or waiting for backup. OFFICER DANIEL RIVERA did none of these things because he was not trained to do any of these things and because it was the custom and practice at AMARILLO POLICE DEPARTMENT to *never* do any of these things.

604. Unlawful discrimination, pursuant to DOJ regulation, includes a failure to make "reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability." 28 C.F.R. 35.130(b)(7). HUNTER's reported suspicious behavior was that he is Autistic.

605. Defendants OFFICER DANIEL SMITH, OFFICER DANIEL RIVERA, and DOES joked about how HUNTER was suffering.

606. Through the defendant officers, CITY OF AMARILLO denied HUNTER reasonable accommodations.

160

607. The defendant officers knew that accommodations were necessary under AMARILLO POLICE DEPARTMENT written policies but were indifferent to an obvious risk of not providing the accommodations.

608. The CITY OF AMARILLO denied HUNTER the benefit of properly trained officers who would be trained to appropriately interact with people suffering from foreseeable, common place disabilities or mental disabilities, and reasonably accommodate those individuals.

609. Upon information and belief, the CITY OF AMARILLO was on notice of the need for more or different training but was deliberately indifferent to that need. They were using Tasers that had been taken off the market years before due to their danger.

610. Further, once Defendant Officers had assaulted and Tased HUNTER, he then had yet another disability – a severe Traumatic Brain Injury – which the Defendants *again* failed to provide any reasonable accommodation for, leaving HUNTER painfully in handcuffs and denying him medical care for hours, in violation of not just the Constitution, but yet again the ADA.

611. Now that he has a Traumatic Brain Injury, it is unlikely that he will ever be able to work again. HUNTER is only 27.

612.   As a proximate result of Defendant CITY OF AMARILLO and actions of other Defendants, HUNTER was injured, suffered physically and emotionally, and continues to experience fear, trauma, and anxiety anywhere outside of his room.

613.   What little sense of freedom and happiness that was left in HUNTER's experience of his life suffering from damaged mental health was completely destroyed by the AMARILLO POLICE DEPARTMENT.

614.   As a result of the CITY OF AMARILLO's and its officers' violations of Title II of the ADA, HUNTER is entitled to compensatory damages and reasonable attorneys' fees and costs.

615.   Defendant JUDGE DAN L. SCHAAP ignored all of the disabilities of HUNTER and had the audacity to order him to go to the jail for an Incompetency Evaluation.  JUDGE DAN L. SCHAAP is either stupid, heartless, or both.

## CLAIM FOR RELIEF 6
### *Violations of the Rehabilitation Act – 29 U.S.C. § 794*
(against Defendants CITY OF AMARILLO, AMARILLO POLICE DEPARTMENT, RANDALL COUNTY JAIL)

616.   HUNTER hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

162

617.  Section 504 of the *Rehabilitation Act* forbids programs that receive federal financial assistance to discriminate against individuals with a disability solely because of their disability. 29 U.S.C. § 794(a).

618.  The AMARILLO POLICE DEPARTMENT receives federal financial assistance.

619.  HUNTER is a qualified individual with a disability under the Rehabilitation Act.

620.  Through the actions of the Defendant officers and through its own failures to train and unlawful customs and practices, Defendants denied HUNTER reasonable accommodations for his disabilities.

621.  Because CITY OF AMARILLO, the AMARILLO POLICE DEPARTMENT, and its officers denied HUNTER reasonable accommodations, Defendant CITY OF AMARILLO caused HUNTER to suffer greater injury and indignity in those processes than other arrestees.

622.  The Defendant officers discriminated against HUNTER solely as a result of his disability.

623.  As a proximate result of the Defendant CITY OF AMARILLO's actions and inactions, HUNTER suffered physically and emotionally and continues to experience fear, trauma, and anxiety anywhere outside of his room.

624.    As a result of the CITY OF AMARILLO, AMARILLO POLICE DEPARTMENT, and RANDALL COUNTY JAIL's violations of Section 504 of the Rehabilitation Act, HUNTER is entitled to compensatory damages and reasonable attorneys' fees and costs.

## CLAIM FOR RELIEF 7
## 18 U.S.C. § 1962(c)
## Violation of Federal Civil RICO Act
(against all Defendants)

625.    The allegations in paragraphs above are incorporated herein by reference as if set forth in full.

626.    The conduct of Defendants violates the Federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c) ("Federal RICO").

627.    Defendants, individually and in conspiracy with one another, are all RICO persons who violated RICO by engaging in (1) "racketeering activity," (2) conducted through a "pattern," (3) affecting an "enterprise," (4) impacting interstate commerce.  Defendants also violated 18 USC §1962(d) by conspiring as alleged herein to violate 18 USC §1962(c). All of Defendants' predicate acts have a similar purpose - to damage HUNTER - all have similar victims, HUNTER, all

164

have had similar results, and the methods of commission have been virtually identical.

628. Racketeering Activity included violations of section 1341 (relating to mail fraud), section 1343 (relating to wire fraud), section 1503 (relating to obstruction of justice), and section 1512 (relating to tampering with a witness, victim, or an informant).

629. A massive number of crimes were committed by DEFENDANTS in Texas. Interstate crimes of wire fraud, obstruction of justice, and criminal conspiracy were committed between Texas and another state, including Arkansas.

630. DEFENDANTS knowingly devised or participated in a scheme to defraud HUNTER and did so willingly with an intent to defraud. The activity engaged in consists of two or more predicate acts of racketeering activity, the most recent of which occurred within hours after the commission of a prior act.

631. The DEFENDANTS committed violations of Federal RICO and RICO Conspiracy – 18 U.S.C. § 1961 et seq. *Respondeat superior* (principal is liable for agents' misconduct: knowledge of, participation in, and benefit from a RICO enterprise). In addition to the substantive offenses listed in 18 U.S.C. § 1961, a criminal conspiracy to commit these offenses is a RICO predicate act.

## **CLAIM FOR RELIEF 8**

## **18 USC § 1962(d)**

## **Violation of Federal RICO Conspiracy Offense**

(against all Defendants)

632.   The allegations in paragraphs above are incorporated herein by reference as if set forth in full.

633.   The DEFENDANTS, in some way or manner, came to mutual understandings to try to accomplish a common and unlawful plan as described herein.  The mutual understanding was to break the law.  The DEFENDANTS willfully became members of such conspiracy.

634.   During the existence of the conspiracy, various DEFENDANTS knowingly violated the Federal RICO Act.  These violations were knowingly committed in an effort to carry out or accomplish some object of the conspiracy.

635.   The conspiracy was designed to deprive HUNTER of Constitutional rights and legal rights and to deceive the courts to obtain an illegal objective.  Each of the DEFENDANTS is responsible as a joint tortfeasor for all damages ensuing from the wrongs.  *Respondeat superior* (principal is liable for agents' misconduct: knowledge of, participation in, and benefit from a RICO enterprise).  The predicate acts are identified herein, and those paragraphs are incorporated herein by reference as if set forth in full.

## CLAIM FOR RELIEF 9

### False Reports to Police – Violation of Texas Penal Code 37.08

(against PENTECOSTAL DEFENDANTS, VOLLEYBALL DEFENDANTS, AMARILLO POLICE DEPARTMENT, AND UNIDENTIFIED DOES)

636. The allegations in paragraphs above are incorporated herein by reference as if set forth in full.

637. Defendants, INCLUDING PENTECOSTAL DEFENDANTS, VOLLEYBALL DEFENDANTS, AMARILLO POLICE DEPARTMENT, AND UNIDENTIFIED DOES had the intention to make statements to the State that they knew to be false. PENTECOSTAL DEFENDANTS, VOLLEYBALL DEFENDANTS, AMARILLO POLICE DEPARTMENT, AND UNIDENTIFIED DOES knowingly and willfully falsified, concealed, or covered up by trick, scheme, and/or device material facts in a matter within the jurisdiction of the State of Texas. PENTECOSTAL DEFENDANTS, VOLLEYBALL DEFENDANTS, AMARILLO POLICE DEPARTMENT, AND UNIDENTIFIED DOES made or used false writings or documents, knowing the same to contain false, fictitious, and/or fraudulent statements or entries. They knowingly and willfully falsified, concealed, and covered up material facts by a scheme. HUNTER was damaged as a result of PENTECOSTAL DEFENDANTS, VOLLEYBALL DEFENDANTS,

167

AMARILLO POLICE DEPARTMENT, AND UNIDENTIFIED DOES' false statements and the preparation and filing of the Indictment.

## **CLAIM FOR RELIEF 10**
### **Tampering with Evidence -- Texas Penal Code 37.09**

(against PENTECOSTAL DEFENDANTS, VOLLEYBALL DEFENDANTS, AMARILLO POLICE DEPARTMENT, JUDGE DAN L. SCHAAP, BROOKS BARFIELD, SAMANTHA WILSON, RANDALL COUNTY COURT DEFENDANTS, AND UNIDENTIFIED DOES)

638.   The allegations in paragraphs above are incorporated herein by reference as if set forth in full.

639.   The DEFENDANTS (PENTECOSTAL DEFENDANTS, VOLLEYBALL DEFENDANTS, AMARILLO POLICE DEPARTMENT, JUDGE DAN L. SCHAAP, BROOKS BARFIELD, SAMANTHA WILSON, RANDALL COUNTY COURT DEFENDANTS, AND UNIDENTIFIED DOES) knowingly destroyed, altered, concealed, disguised, and/or removed physical evidence and made, devised, prepared, and/or planted false physical evidence. The Defendants did so with the intent to impair the verity or availability of the physical evidence to the proceeding and intended to obstruct the defense of HUNTER. PENTECOSTAL DEFENDANTS, VOLLEYBALL DEFENDANTS,

168

AMARILLO POLICE DEPARTMENT, JUDGE DAN L. SCHAAP, BROOKS BARFIELD, SAMANTHA WILSON, RANDALL COUNTY COURT DEFENDANTS, AND UNIDENTIFIED DOES, and unknown others tampered with evidence believing that an official proceeding or investigation was pending or about to be instituted and knowingly or intentionally altered, destroyed, concealed, or removed things and/or items with the purpose of impairing the veracity or availability of the things and/or items in the proceeding or investigation; made, presented, and/or used things and/or items which Defendants knew to be false with the purpose of deceiving a public servant who was or may be engaged in the proceeding or investigation; and obstructed the prosecution of HUNTER by knowingly destroying, altering, concealing, or disguising material physical evidence. PENTECOSTAL DEFENDANTS, VOLLEYBALL DEFENDANTS, AMARILLO POLICE DEPARTMENT, JUDGE DAN L. SCHAAP, BROOKS BARFIELD, SAMANTHA WILSON, RANDALL COUNTY COURT DEFENDANTS, AND UNIDENTIFIED DOES, and unknown others tampered with evidence in violation of Texas Penal Code 37.09. HUNTER was damaged as a result.

640. JUDGE DAN L. SCHAAP concealed documents from HUNTER. JUDGE DAN L. SCHAAP knowingly concealed material physical evidence. He

intended to obstruct the defense of HUNTER. This physical evidence was material. JUDGE DAN L. SCHAAP tampered with evidence in violation of Texas Penal Code 37.09. HUNTER was damaged as a result.

### CLAIM FOR RELIEF 11
### Violation of Due Process and Deprivation of Rights – 42 U.S.C. § 1985(2)
(against CITY OF AMARILLO, AMARILLO POLICE DEPARTMENT, JUDGE DAN L. SCHAAP, BROOKS BARFIELD, SAMANTHA WILSON, RANDALL COUNTY COURT DEFENDANTS, AND UNIDENTIFIED DOES)

641. The allegations in paragraphs above are incorporated herein by reference as if set forth in full.

642. CITY OF AMARILLO, AMARILLO POLICE DEPARTMENT, JUDGE DAN L. SCHAAP, BROOKS BARFIELD, SAMANTHA WILSON, RANDALL COUNTY COURT DEFENDANTS, AND UNIDENTIFIED DOES conspired for the purpose of impeding, hindering, obstructing, and/or defeating, in any manner, the due course of justice with intent to deny HUNTER due process and to injure him while attempting to enforce his right to self-representation, and this violated the equal protection of the laws. JUDGE DAN L. SCHAAP'S actions are non-judicial, and there is no immunity. CITY OF AMARILLO, AMARILLO POLICE DEPARTMENT, JUDGE DAN L. SCHAAP, BROOKS BARFIELD,

170

SAMANTHA WILSON, RANDALL COUNTY COURT DEFENDANTS, AND

UNIDENTIFIED DOES have violated 42 U.S.C. § 1985(2). HUNTER was

damaged as a result.

## **CLAIM FOR RELIEF 12**

### **Violation of Constitutional Rights**

(against CITY OF AMARILLO, AMARILLO POLICE DEPARTMENT, JUDGE
DAN L. SCHAAP, BROOKS BARFIELD, SAMANTHA WILSON, RANDALL
COUNTY COURT DEFENDANTS, AND UNIDENTIFIED DOES)

643. The allegations in paragraphs above are incorporated herein by
reference as if set forth in full.

644. JUDGE DAN L. SCHAAP, RANDALL COUNTY COURT
DEFENDANTS, and the CITY OF AMARILLO had a Constitutional duty to
HUNTER. JUDGE DAN L. SCHAAP breached his Constitutional duties to
HUNTER through action and inaction. This caused damage to HUNTER.
HUNTER filed motions to recuse, and JUDGE DAN L. SCHAAP refused to
recuse himself. He wouldn't even allow the Clerk of Court to file the Motion, in
direct violation of the Rules and Case Law. The statutes and Courts have
expressed that JUDGE DAN L. SCHAAP should have proceeded no further.

645. JUDGE DAN L. SCHAAP was not the proper person to decide if

171

HUNTER asserted valid factual and legal grounds to recuse him. An objective observer, lay observer, and/or disinterested observer must entertain significant doubt of the impartiality of JUDGE DAN L. SCHAAP. JUDGE DAN L. SCHAAP was supposed to disqualify himself because his impartiality might reasonably be questioned.

646. HUNTER brings this action against JUDGE DAN L. SCHAAP, pursuant in part to 28 U.S. C. § 1331, in claims arising from violations of federal constitutional rights guaranteed in the First, Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments to the U.S. Constitution and redressable pursuant to *Bivens v. Six Unknown Narcotics Agents* 403 U.S. 388 (1971). JUDGE DAN L. SCHAAP subjected HUNTER to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.

647. JUDGE DAN L. SCHAAP'S actions are non-judicial, and there is no immunity. HUNTER has been damaged. HUNTER prays for monetary damages against JUDGE DAN L. SCHAAP based upon violations of federal Constitutional rights pursuant to *Bivens*.

## CLAIM FOR RELIEF 13
### Professional Misconduct

172

(against JUDGE DAN L. SCHAAP, BROOKS BARFIELD, RANDALL COUNTY COURT DEFENDANTS, AND UNIDENTIFIED DOES)

648.    The allegations in paragraphs above are incorporated herein by reference as if set forth in full.

649.    W. BROOKS BARFIELD violated the rules of professional conduct; engaged in conduct involving dishonesty, fraud, deceit, and misrepresentation; engaged in conduct prejudicial to the administration of justice; and more. HUNTER submits that Rules should provide the legal basis for HUNTER to present a cause of action for Breach of Legal Duty due to Professional Misconduct. HUNTER had a right to expect W BROOKS BARFIELD to abide by Texas law, Texas rules, Texas Rules of Professional Conduct ("TRPC"), and the Constitutions.

650.    HUNTER had a right to expect W BROOKS BARFIELD and JUDGE DAN L. SCHAAP to refrain from doing acts that injured HUNTER.  BROOKS BARFIELD and JUDGE DAN L. SCHAAP have committed professional misconduct and have violated state and federal statutes, Rules, Texas Rules of Professional Conduct ("TRPC"), and the Constitutions.  W BROOKS BARFIELD and JUDGE DAN L. SCHAAP committed acts that injured HUNTER.

# CLAIM FOR RELIEF 14

## Judicial Misconduct

(against JUDGE DAN L. SCHAAP, JUSTICE OF THE PEACE)

651.   The allegations in paragraphs above are incorporated herein by reference as if set forth in full.

652.   JUDGE DAN L. SCHAAP violated the Code of Judicial Conduct; engaged in conduct involving dishonesty and misrepresentation; engaged in conduct prejudicial to the administration of justice; allowed Attorneys and court personnel to abuse HUNTER; and more.  There does not appear to be a statute that specifically authorizes a civil action for professional or judicial misconduct. HUNTER will file a judicial misconduct complaint.  HUNTER submits that the Court has discriminated against him, in part, because he is disabled and pro se. HUNTER believes that judges in Texas ROUTINELY violate the law and twist the facts and the law to accomplish their own improper purposes.  HUNTER objects to the treatment of pro se parties in Texas.  HUNTER, Pro Se, has been repeatedly denied rights and abused.  HUNTER submits that this mistreatment should provide the legal basis for HUNTER to present a cause of action for Breach of Legal Duty due to Judicial Misconduct.  HUNTER had a right to expect JUDGE DAN L. SCHAAP to abide by the Code of Judicial Conduct, the Texas Rules of

174

Professional Conduct, the Texas Rules of Civil Procedure, state laws, and case law and to refrain from doing acts that wrongfully injured HUNTER. JUDGE DAN L. SCHAAP committed judicial misconduct and violated the Code of Judicial Conduct, the Texas Rules of Professional Conduct, the Texas Rules of Civil Procedure, state laws, and case law, and the Local Rules. JUDGE DAN L. SCHAAP committed acts that injured HUNTER.

## CLAIM FOR RELIEF 15
### Fraud
(against ALL DEFENDANTS)

653. The allegations in paragraphs above are incorporated herein by reference as if set forth in full.

654. DEFENDANTS intentionally misstated material facts, omitted material facts, and made false representations to the Randall County Grand Jury. Defendants knew they made false statements or omitted material facts, or they had a reckless disregard for the truth. HUNTER and the courts relied upon the intentional misstatements and/or omission of material facts. DEFENDANTS committed fraud. HUNTER was damaged as a result. *Respondeat superior* (principal is liable for agents' misconduct).

## CLAIM FOR RELIEF 16

### Common Law Fraud

(against ALL DEFENDANTS)

655.   The allegations in paragraphs above are incorporated herein by reference as if set forth in full.

656.   DEFENDANTS, including DETECTIVE SHEA LICHTIE, DISTRICT ATTORNEY DAVE BLOUNT, JOEL FORBIS, JUDGE DAN L. SCHAAP, RANDALL COUNTY DISTRICT ATTORNEY'S OFFICE, SERGEANT ANTHONY MERRYMAN, RANDALL COUNTY CLERK OF COURT'S OFFICE, AMARILLO POLICE DEPARTMENT, and DOES misrepresented material facts.  These DEFENDANTS had knowledge of the falsity.  Their intent was that the representations would be acted upon by people ignorant of the falsity, relied on the truth of the representations, and had a right to rely upon it.  *Respondeat superior* (principal is liable for agents' misconduct). HUNTER was damaged as a result.

## CLAIM FOR RELIEF 17

### Conspiracy

(against ALL DEFENDANTS)

657. The allegations in paragraphs above are incorporated herein by reference as if set forth in full.

658. The DEFENDANTS, in some way or manner, came to a mutual understanding to try to accomplish a common and unlawful plan. The mutual understanding was to break the law at some time in the future and/or to achieve a lawful aim by unlawful means. The DEFENDANTS willfully became members of such conspiracy. During the existence of the conspiracy, various Defendants knowingly committed at least one overt act in an effort to carry out or accomplish some object of the conspiracy. The conspiracy was designed to deprive HUNTER of legal rights and deceive the courts to obtain an illegal objective. Each of the DEFENDANTS is responsible as a joint tortfeasor for all damages ensuing from the wrongs. Defendants reached agreement to commit these overt acts – defame HUNTER, file false police reports against HUNTER, set up HUNTER to be ambushed in STIFF PARK, injure or kill him, deny him medical treatment, deny his Constitutional rights, force his family into bankruptcy, and run his family out of town on a rail. They committed to support their efforts with a series of lies, to conceal documents, to falsify documents, to lie, and to undertake a variety of actions designed to damage HUNTER. At least one of the Defendants knowingly committed at least two of the overt acts. *Respondeat superior* (principal is liable

for agents' misconduct).  HUNTER was damaged as a result.

## CLAIM FOR RELIEF 18

### Abuse Of Process

(against ALL DEFENDANTS)

659.   The allegations in paragraphs above are incorporated herein by reference as if set forth in full.

660.   Common law abuse of process is the use of the legal system for the improper and ulterior motive of damaging HUNTER's life.  The legal and judicial systems have been grossly abused to damage HUNTER and shield JUDGE DAN L. SCHAAP from conviction and disbarment.

661.   Defendants unlawfully seized HUNTER without a warrant, misused regular processes for a purpose not lawfully warranted by that particular process.

662.   DEFENDANTS had an ulterior motive or purpose for misusing the process.

663.   DEFENDANTS denied a host of Constitutional rights.

664.   HUNTER sustained damage from the irregularity.

## CLAIM FOR RELIEF 19

### Intentional Infliction of Emotional Distress

(against ALL DEFENDANTS)

665.  The allegations in paragraphs above are incorporated herein by reference as if set forth in full.

666.  The DEFENDANTS have shown extreme and outrageous conduct. HUNTER has been under extreme emotional distress for 15 months.  Defendants intentionally inflicted emotional distress on HUNTER through defamation, fraud, conspiracy, and violation of civil and Constitutional rights.

667.  DEFENDANTS inflicted emotional distress on HUNTER. DEFENDANTS acted intentionally or recklessly.

668.  Some of the damaging words about HUNTER and actions against HUNTER are not defamatory, and it is these words and actions for which HUNTER seeks recovery for intentional infliction of emotional distress.

669.  Conduct of DEFENDANTS was extreme and outrageous.  These outrageously false and/or criminal claims and the wide variety of things that Defendants have done would prompt an average member of the community to exclaim "outrageous!"

670.  The activities of DEFENDANTS has been so extreme that it has gone well beyond all possible bounds of decency, and it must be regarded as atrocious and utterly intolerable in a civilized society.  All of the acts of DEFENDANTS

taken together amount to the type of extreme conduct that qualifies as intentional infliction of emotional distress.

671. The conduct of DEFENDANTS caused the distress.

672. The distress caused was severe emotional distress to HUNTER. The outrageous harassment, lies, libel, slander, and defamation are bad alone, but the effect on HUNTER's mental health has been severe.

673. There are no alternative causes of action that would provide a remedy for the severe emotional distress caused by DEFENDANTS' conduct that does not meet whatever standard the Court decides is appropriate for defamation.

## CLAIM FOR RELIEF 20
### Negligent Infliction of direct physical harm
### and assault and battery on HUNTER
(against ALL DEFENDANTS)

674. The allegations in paragraphs above are incorporated herein by reference as if set forth in full.

675. HUNTER was assaulted. DEFENDANTS inflicted this harm on HUNTER, and all DEFENDANTS are liable.

676. As a result of the above, HUNTER suffered direct physical harm. DEFENDANTS have negligently inflicted emotional distress on HUNTER.

## CLAIM FOR RELIEF 21

## Violation of Pro Se Rights

(against JUDGE DAN L. SCHAAP, JUSTICE OF THE PEACE, W. BROOKS BARFIELD, RANDALL COUNTY COURT DEFENDANTS)

677.   The allegations in paragraphs above are incorporated herein by reference as if set forth in full.

678.   Pro se parties are a minority class of people.  HUNTER objects to the treatment of pro se parties in Texas.  HUNTER, Pro Se, has been repeatedly denied rights and abused.  JUDGE DAN L. SCHAAP has violated the Constitutional rights of HUNTER and other pro se parties.

## CLAIM FOR RELIEF 22

## NEW LAW

(against JUDGE DAN L. SCHAAP, JUSTICE OF THE PEACE)

679.   HUNTER argues for extending, modifying, or reversing existing law or for establishing new law.  The whole idea of justice requires a fair trial with an impartial judge.  When the judge is so obviously biased that the judge ignores the facts and the law, it really shouldn't matter where the bias comes from.  In a case

such as this, it was absolutely impossible for HUNTER to have a fair trial. Judges

should not have immunity for egregious acts and should be subject to damages.

## CLAIM FOR RELIEF 23
### Constitutional and Civil Rights Pursuant to 42 U.S.C. § 1983, 1988
### Violation of Fourth, Fifth, and Fourteenth Amendment Rights
(Against RANDALL COUNTY JAIL, AMARILLO POLICE DEPARTMENT, and DOES 1 – 500)

680.  HUNTER incorporates all other paragraphs of this Complaint for purposes of this claim.

681.  HUNTER was denied due process and his rights were violated when his personal property was seized and searched and release was denied.

682.  By their conduct, as described herein, and acting under the color of state law to deprive HUNTER of his rights to be free from unreasonable searches and seizures and arrest without reasonable suspicion or probable cause as required by the Fourth and Fourteenth Amendments, DEFENDANTS are liable for violation of 42 U.S.C. § 1983 which prohibits the deprivation under color of state law of rights secured under the United States Constitution.

683. As a direct result of the actions, statements and/or policies of the DEFENDANTS, HUNTER suffered an unconstitutional deprivation of his rights under the Fourth, Fifth, and Fourteenth Amendments to the U.S. Constitution.

684. DEFENDANTS acted intentionally and with callous disregard for HUNTER's known statutory and Constitutional rights.

685. As a direct and proximate result of DEFENDANTS' unlawful actions, HUNTER has suffered, and will continue to suffer severe and substantial damages. These damages include lost income, lost career and business opportunities, litigation expenses including attorney fees, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish and distress.

## CLAIM FOR RELIEF 24
### Constitutional and Civil Rights Pursuant to 42 U.S.C. § 1983, 1988
### Violation of First, Fifth, and Fourteenth Amendment Rights
(Against JOEL FORBIS, JUDGE DAN L. SCHAAP, BROOKS BARFIELD, RANDALL COUNTY CLERK OF COURT'S OFFICE, and DOES 1 – 500)

686. HUNTER incorporates all other paragraphs of this Complaint for purposes of this claim.

687. HUNTER was denied due process and his rights were violated when filings were not filed or considered.

688.  HUNTER was denied access to a court to seek redress of grievances.

689.  DEFENDANTS directly participated in the infraction, after learning of it, failed to remedy the wrong, and created a policy or custom under which unconstitutional practices occurred or allowed such policy or custom to continue.

690.  As a direct result of the actions, statements and/or policies of the DEFENDANTS, HUNTER suffered an unconstitutional deprivation of his rights under the First, Fifth, and Fourteenth Amendments to the U.S. Constitution.

691.  DEFENDANTS acted intentionally and with callous disregard for HUNTER's known statutory and Constitutional rights.

692.  As a direct and proximate result of DEFENDANTS' unlawful actions, HUNTER has suffered, and will continue to suffer severe and substantial damages. These damages include lost income, lost career and business opportunities, litigation expenses including attorney fees, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish and distress.

## CLAIM FOR RELIEF 25
### *42 U.S.C. § 1983*
*Violation of Fourth Amendment Failure to Train and Supervise*
(against Defendant CITY OF AMARILLO, RANDALL COUNTY, POTTER COUNTY, AMARILLO POLICE DEPARTMENT, RANDALL COUNTY JAIL,

RANDALL COUNTY CLERK OF COURT'S OFFICE, JOEL FORBIS, CHIEF MARTIN BIRKENFELD)

693.    HUNTER incorporates all other paragraphs of this Complaint for purposes of this claim.

694.    The DEFENDANTS immediate supervisors, had a duty to train and supervise them to ensure they were not engaging in conduct that violated the civil rights of citizens like HUNTER.

695.    Instead of carrying out this duty, DEFENDANTS chose to encourage the misconduct of needless escalation, aggression and excessive force witnessed by the DEFENDANTS against HUNTER in this case, as well as the denial of medical care.

696.    Defendant OFFICER DANIEL RIVERA and OFFICER SAMANTHA FONTENOT's use of excessive force and their illegal seizure and assault upon HUNTER was the direct result of their supervisor's deliberate indifference to the civil rights of citizens and of disabled citizens in particular, and his repeated failure and refusal to intervene to supervise, train, or otherwise put a stop to such misconduct.

697.    All of the acts described herein were done by DEFENDANTS intentionally, knowingly, willfully, wantonly, maliciously, and recklessly in

185

disregard for HUNTER's federally protected rights, and they were done pursuant to the pre-existing and ongoing deliberately indifferent customs, policies and practices of the Defendant CITY OF AMARILLO, under color of state law.

698.   Upon information and belief, the AMARILLO POLICE DEPARTMENT's customs and practices of unlawful conduct (and failures to train/supervise to prevent the same) proximately causing the harms described herein to HUNTER.

699.   Upon information and belief, AMARILLO POLICE DEPARTMENT's custom and practice is to permit its officers to aggressively and violently arrest any citizen at the first sign of possible noncompliance with any command (regardless of whether that command is actually lawful).

700.   Upon information and belief, AMARILLO POLICE DEPARTMENT's custom and practice is to ignore all its written policies regarding de-escalation, reasonable use of force, appropriate treatment of people with disabilities.

701.   Upon information and belief, it is the custom and practice at AMARILLO POLICE DEPARTMENT to regularly use excessive force when putting someone into handcuffs and to regularly, needlessly, and deliberately throw

individuals to the ground in the process of doing so (which it is their custom and practice to describe in reports as "placing [the person] on the ground").

702.    Upon information and belief, it is the custom and practice at AMARILLO POLICE DEPARTMENT to try and cover-up and justify excessive use of force incidents by: (1) falsely claiming the person had committed obstruction or resisting after the fact; and (2) ignoring their protocol for writing reports regarding the use of force, so that the CIRT team will not be alerted to investigate their excessive uses of force.

703.    Upon information and belief, it is the custom and practice at AMARILLO POLICE DEPARTMENT to refuse to discipline its officers for misconduct and to refuse to ever find its officers have engaged in wrongdoing, in the face of obvious and repeated constitutional violations, which resulted in a foreseeable culture of police brutality and silence in the face of ongoing and repeated civil rights violations.

704.    The unlawful conduct of DEFENDANTS as set forth in detail herein, amounts to a custom and well-settled, widespread overall practice of police brutality deliberately insulated from police accountability, throughout the AMARILLO POLICE DEPARTMENT, even if not authorized by written law or

187

express municipal policy, and is so permanent and well-settled as to constitute a custom or usage with the force of law.

705.   Through the Defendant CITY OF AMARILLO's continuous ratification of unconstitutional detentions, arrests, prosecutions, and excessive force, Defendant CITY OF AMARILLO has condoned and become the driving force of the DEFENDANTS' unconstitutional conduct.

706.   Defendant CITY OF AMARILLO failed to properly train and supervise its officers to avoid their foreseeable use of excessive force, unlawful seizures and abuse of the vulnerable, disabled and elderly.

707.   Defendant CITY OF AMARILLO's policies, customs and practices in failing to properly train and supervise its employees were the moving force and proximate cause of the violations to HUNTER's constitutional rights.

708.   The custom, policy and practice of Defendant CITY OF AMARILLO of encouraging, condoning, tolerating, and ratifying the unreasonable and excessive use of illegal seizures and excessive force on citizens, as described herein, were the moving force behind and the proximate cause of, the violations to HUNTER's constitutional rights.

709.   Upon information and belief, Defendant CITY OF AMARILLO has been deliberately obfuscatory and in other litigation involving excessive force

188

claims against its officers, has made concerted efforts to withhold, destroy, conceal and delay the release of documents and correspondence that relate to the unconstitutional policies, customs, and practices set forth above, and which also evidence Defendant CITY OF AMARILLO's unconstitutional practices, customs, failures to train, and supervise defendant officers as set forth above.

710.    The acts or omissions of Defendant CITY OF AMARILLO caused HUNTER to suffer physical and mental pain, among other injuries, damages and losses.

711.    The actions and omissions of Defendant CITY OF AMARILLO as described herein deprived HUNTER of the rights, privileges, liberties, and immunities secured by the Constitution of the United States of America and caused his other damages.

### CLAIM FOR RELIEF 26

*42 U.S.C. § 1983 – 14th Amendment*
*Substantive Due Process Violation*

712.    HUNTER hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

713.    OFFICER DANIEL RIVERA's attack upon HUNTER was outrageous and conscience shocking.

714.   Officer DANIEL RIVERA's and OFFICER SAMANTHA FONTENOT's joined subsequent effort to purposefully abuse HUNTER, and the things that they both said and yelled at HUNTER while doing so, were also outrageous and conscience shocking.

715.   No one would be able to witness OFFICER DANIEL RIVERA's needless and pointless attack upon such a disabled human being – bothering no one – without feeling traumatized themselves.

716.   HUNTER's family, upon viewing the video of what the Defendant officers did to their loved one that day, have been deeply traumatized.  The brutality and callousness have been so conscience shocking to them that they have had to seek out counseling to help with their own grief after watching such tortuously outrageous conduct.

717.   There was absolutely no governmental interest served by what the defendant officers did to HUNTER that day.  The few seconds of interaction that OFFICER DANIEL RIVERA let elapse before he violently attacked HUNTER was arbitrary, in violation of policy, and outrageous.

718.   The sudden and violent arrest upon a mentally disabled man in this case – in the context of just an allegation of being a suspicious person – was so

egregious and extraordinary, and so severe, as to amount to brutal and inhumane abuse of official power.

719.    The Defendant officers' behavior in this case was conscience-shocking and will repeat and reverberate both trauma and harm into the Amarillo community indefinitely until and unless there is extreme intervention from this Court and from the public.

## CLAIM FOR RELIEF 27
### Constitutional and Civil Rights Pursuant to 42 U.S.C. § 1983, 1988
### Violation of Fifth and Fourteenth Amendment Rights
(against DISTRICT ATTORNEY LOVE, JUDGE DAN L. SCHAAP.)

720.    HUNTER hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

721.    HUNTER was denied due process and his rights were violated when DISTRICT ATTORNEY LOVE gave false information to JUDGE DAN L. SCHAAP.

722.    DEFENDANTS acted intentionally and with callous disregard for HUNTER's known statutory and Constitutional rights.

723.    As a direct and proximate result of DEFENDANTS' unlawful actions, HUNTER has suffered, and will continue to suffer severe and substantial damages.

These damages include lost income, lost career and business opportunities, litigation expenses including attorney fees, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish and distress.

## CLAIM FOR RELIEF 28
## Constitutional and Civil Rights Pursuant to 42 U.S.C. § 1983, 1988
## Violation of Fifth and Fourteenth Amendment Rights
(against all DEFENDANTS.)

724.   HUNTER hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

725.   The Indictment in this case violates Texas law and is a fraud.

726.   The RANDALL COUNTY DISTRICT ATTORNEY'S OFFICE has allowed the Purported Indictment to stand in gross abuse of Constitutional rights.

727.   By their conduct, as described herein, Defendants are liable to HUNTER under 42 U.S.C. § 1983 for the violation, under color of state law, of the Constitutional right to be free from any deprivation of liberty without due process of law under the Fifth and Fourteenth Amendments to the U.S. Constitution.

728.   DEFENDANTS acted intentionally and with callous disregard for HUNTER's known statutory and Constitutional rights.

729.   As a direct and proximate result of DEFENDANTS' unlawful actions,

HUNTER has suffered, and will continue to suffer severe and substantial damages. These damages include lost income, lost career and business opportunities, litigation expenses including attorney fees, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish and distress.

## CLAIM FOR RELIEF 29

### *(Monell* Claim)

(against CITY OF AMARILLO.)

730. HUNTER hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

731. At all relevant times herein, Defendant CITY OF AMARILLO, acting through its Police Department, Jail, District Attorney's Office, Judicial District Courts, and Clerk of Court's Office developed, implemented, enforced, encouraged and sanctioned de facto policies, practices, and/or customs exhibiting deliberate indifference to HUNTER's Constitutional rights which caused the violation of such rights.

732. DEFENDANTS' unlawful actions were done willfully, knowingly and with the specific intent to deprive HUNTER of his Constitutional rights under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the U.S. Constitution.

733.   The Constitutional abuses and violations Defendant CITY OF AMARILLO, acting through its Police Department, Jail, District Attorney's Office, Judicial District Courts, and Clerk of Court's Office, were and are directly and proximately caused by policies, practices and/or customs developed, implemented, enforced, encouraged and sanctioned by Defendant Randall County, including the failure: (a) to adequately supervise and train its officers and agents, including the DEFENDANTS, thereby failing to adequately discourage further Constitutional violations on the part of its Police Department, Jail, District Attorney's Office, Judicial District Courts, Clerk of Court's Office, and their employees; (b) to properly and adequately monitor and discipline its employees, including Defendants; and (c) to adequately and properly investigate citizen complaints of misconduct, and, instead, acts of misconduct were tolerated by the CITY OF AMARILLO.

734.   Upon information and belief, Defendant CITY OF AMARILLO, acting through its Police Department, Jail, District Attorney's Office, Judicial District Courts, and Clerk of Court's Office, developed, implemented, enforced, encouraged and sanctioned a de facto policy, practice, and/or custom of unlawfully interfering with and/or arresting, without reasonable suspicion or probable cause, individuals who exercise their rights under the First

Amendment by engaging in monitoring and documenting law enforcement and judicial misconduct.

735.    DEFENDANTS' unlawful actions were done willfully, knowingly and with the specific intent to deprive HUNTER of his Constitutional rights under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the U.S. Constitution.

736.    HUNTER has no adequate remedy at law and will suffer serious and irreparable harm to his constitutional rights unless DEFENDANTS are enjoined from continuing their unlawful policies, practices, and/or customs which have directly and proximately caused such Constitutional abuses.

737.    DEFENDANTS acted intentionally and with callous disregard for HUNTER's known statutory and Constitutional rights.

738.    As a direct and proximate result of Defendants' unlawful actions, HUNTER has suffered, and will continue to suffer severe and substantial damages. These damages include lost income, lost career and business opportunities, litigation expenses including attorney fees, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish and distress.

## CLAIM FOR RELIEF 30
## DEFAMATION; DEFAMATION PER SE;

## DEFAMATION AS A WHOLE; LIBEL: SLANDER; SLANDER PER SE

(against JUBILEE CHURCH DEFENDANTS, VOLLEYBALL DEFENDANTS.)

739.  HUNTER hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

740.  JUBILEE CHURCH DEFENDANTS AND VOLLEYBALL DEFENDANTS published false and defamatory words about HUNTER, a private individual.

741.  Some DEFENDANTS have orally communicated and published false and defamatory words about HUNTER.  These words were false.  Once obtained through discovery, audio recordings from the will be put into the record as evidence of the slander.

742.  The disparaging statements either named HUNTER or were of and concerning HUNTER.

743.  Statements that JUBILEE CHURCH DEFENDANTS AND VOLLEYBALL DEFENDANTS have published about HUNTER were communicated to third persons.  Many statements have been published online for the world to see.

744.  As a direct and proximate cause of the defamatory publications, HUNTER's reputation was damaged.  Statements made by JUBILEE CHURCH

196

DEFENDANTS AND VOLLEYBALL DEFENDANTS have harmed the reputation of HUNTER, have lowered him in the estimation of the community, and have deterred third persons from associating or dealing with him.

745.   Some statements made by JUBILEE CHURCH DEFENDANTS AND VOLLEYBALL DEFENDANTS impute the commission of crimes or acts that constitute an indictable offense.  Some statements linking HUNTER to crimes with no basis in fact demonstrate actual malice.

746.   Statements have been made unambiguously accusing HUNTER of committing crimes, dishonesty, fraud, rascality, and/or general depravity.  These statements constitute defamation per se.

747.   JUBILEE CHURCH DEFENDANTS AND VOLLEYBALL DEFENDANTS owed a duty to HUNTER not to make defamatory and/or false statements, that duty was violated and such violation of the duty was a proximate cause of damages to HUNTER as described herein. Accordingly, HUNTER states that JUBILEE CHURCH DEFENDANTS AND VOLLEYBALL DEFENDANTS were negligent in their actions in publishing false and defamatory statements regarding HUNTER and/or acted with malice or reckless disregard regarding the truth of their statements, and such breach of duty was a proximate cause of damages complained of by HUNTER in this case.

## CLAIM FOR RELIEF 31

## CIVIL CONSPIRACY

(against ALL DEFENDANTS)

748.   HUNTER hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

749.   DEFENDANTS conspired to damage HUNTER.

750.   DEFENDANTS formed and operated the conspiracy.  The object to be accomplished was to defame, libel, slander, harass, cyberstalk, invade his privacy, falsely charge HUNTER with felonies, cause emotional distress, invade his privacy, and damage him.  Evidence shows that DEFENDANTS had a meeting of the minds and actively worked together toward this objective.

751.   Multiple unlawful, overt acts were committed.  There was specific intent to agree to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means.  The conspiracy occurred in Texas.  The act in, and effect on, Texas was a direct and foreseeable result of the conduct in furtherance of the conspiracy.

752.   There are underlying torts that support the conspiracy cause of action, including defamation.

198

753.   Damage resulted to HUNTER from acts done in furtherance of the common design.  HUNTER has been caused pain and suffering, emotional distress, lost enjoyment of life, loss of his marriage, damage to his relationship with his family, severe damage to his reputation, damage to his career, and more. HUNTER's business relationships have been severely damaged.  HUNTER's reputation is now sullied by false, defamatory information online.  This defamation likely can never be erased because it is breeding in cyberspace.

754.   There was extreme risk by DEFENDANTS as there was not a remote possibility of injury or even a high probability of minor harm, but rather the likelihood of serious injury to HUNTER.

755.   Actual awareness existed because DEFENDANTS knew about the peril, but their acts demonstrated that they did not care.

756.   Some Defendants aided and abetted the conspiracy and underlying torts.

## CLAIM FOR RELIEF 32
## EXEMPLARY AND PUNITIVE DAMAGES
(against ALL DEFENDANTS)

757.   HUNTER hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

758. DEFENDANTS acted intentionally to damage HUNTER. DEFENDANTS committed fraud, malice, and gross negligence. This isn't the case of someone slipping up and making one false statement. The actions of DEFENDANTS were deliberate.

759. Conduct of DEFENDANTS, as described above, is willful, wanton, wicked, intentional, and malicious resulting from fraud, insult, and malice, and it is associated with aggravating circumstances, including willfulness, wantonness, malice, oppression, outrageous conduct, insult, and fraud, thus warranting HUNTER's recovery of punitive damages from each of the DEFENDANTS.

760. The entire want of care by the DEFENDANTS shows that the acts complained of were the result of conscious indifference to the rights or welfare of HUNTER.

761. HUNTER should receive an award of punitive/exemplary damages. Exemplary damages serve to provide the claimant with recovery above and beyond compensatory damages in order to punish the wrongdoers for egregious conduct and to deter the wrongdoers and others from similar conduct in the future.

762. Since HUNTER's damages can never be erased in this case; there is no amount of money that could compensate HUNTER for the loss of life as he

knew it; there is no amount of money to compensate a decent, honest, law-abiding citizen for the destruction of his reputation.

## CLAIM FOR RELIEF 33
## INJUNCTIVE RELIEF
(against ALL DEFENDANTS)

763. HUNTER hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

764. If not enjoined by this Court, DEFENDANTS and their agents, representatives, and employees will continue to implement similar policies and practices that deny citizens their Constitutional rights without due process, violate their right to equal protection of the laws, and deprive people of the privileges or immunities of citizenship. This course of conduct will cause citizens to suffer irreparable injury, including but not limited to, loss of business opportunities and the deprivation of their livelihoods. Citizens have no plain, speedy, and adequate remedy at law for such an injury. Accordingly, injunctive relief pursuant to 42 U.S.C. § 1983 and other authority is appropriate.

## CLAIM FOR RELIEF 34
## INJUNCTIVE RELIEF

201

(against JUDGE DANIEL L. SCHAAP, JUDGE ANA ESTEVEZ,
JUDGE KENT SIMS)

765.   HUNTER hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

766.   JUDGE DANIEL L. SCHAAP, JUDGE ANA ESTEVEZ, AND JUDGE KENT SIMS must be enjoined from violating Texas Statute 752, from interfering with filings submitted to the Clerk of Court, from denying a criminal defendant of legal representation

## CLAIM FOR RELIEF 35
## RICO RELIEF
(against ALL DEFENDANTS)

767.   HUNTER asks that this Court liberally construe the RICO laws and thereby find that all DEFENDANTS, both jointly and severally, have acquired and maintained, both directly and indirectly, an interest in and/or control of a RICO *enterprise* of *persons* and of other individuals who were associated in fact, all of whom engaged in, and whose activities did affect, interstate and foreign commerce in violation of 18 U.S.C. § 1962(c); that all DEFENDANTS be required to account for all gains, profits, and advantages derived from their several acts of *racketeering activity* in violation of 18 U.S.C. § 1962(c) and from all other violation(s) of applicable State and federal law(s); that judgment be entered HUNTER and against

202

all DEFENDANTS for HUNTER's actual damages, and for any gains, profits, or advantages attributable to all violations of 18 U.S.C. § 1962(c); that all DEFENDANTS pay to HUNTER treble (triple) damages, under authority of 18 U.S.C. § 1964(c), for any gains, profits, or advantages attributable to all violations of 18 U.S.C. § 1962(c), according to the best available proof; that all DEFENDANTS pay to HUNTER all damages sustained by HUNTER in consequence of DEFENDANTS' several violations of 18 U.S.C. § 1962(c); that all DEFENDANTS pay to HUNTER his costs of the lawsuit incurred herein including, but not limited to, all necessary research, all non-judicial enforcement, and all reasonable counsel's fees; that all damages caused by all DEFENDANTS, and all gains, profits, and advantages derived by all DEFENDANTS, from their several acts of racketeering in violation of 18 U.S.C. § 1962(c) and from all other violation(s) of applicable State and federal law(s), be deemed to be held in constructive trust for the benefit of HUNTER, his heirs and assigns; that HUNTER has such other and further relief as this Court deems just and proper, under the circumstances of this action; that DEFENDANTS have conspired to acquire and maintain an interest in, and/or conspired to acquire and maintain control of, a RICO *enterprise* engaged in a *pattern of racketeering activity* in violation of 18 U.S.C. §§ 1961(5), 1962(c) and (d); that DEFENDANTS have conspired to

conduct and participate in said RICO *enterprise through* a *pattern of racketeering activity* in violation of 18 U.S.C. §§ 1961(5), 1962(c) and (d); that all DEFENDANTS be required to account for all gains, profits, and advantages derived from their several acts of racketeering in violation of 18 U.S.C. § 1962(d) and from all other violation(s) of applicable State and federal law(s); that judgment be entered for HUNTER and against all DEFENDANTS for HUNTER's actual damages, and for any gains, profits, or advantages attributable to all violations of 18 U.S.C. § 1962(d); that all DEFENDANTS pay to HUNTER treble damages, under authority of 18 U.S.C. § 1964(c), for any gains, profits, or advantages attributable to all violations of 18 U.S.C. § 1962(d); that all DEFENDANTS pay to HUNTER all damages sustained by HUNTER in consequence of Defendants' several violations of 18 U.S.C. § 1962(d); that all DEFENDANTS pay to HUNTER his costs of the lawsuit incurred herein including, but not limited to, all necessary research, all non-judicial enforcement, and all reasonable counsel's fees; and that all damages caused by all DEFENDANTS, and all gains, profits, and advantages derived by all DEFENDANTS, from their several acts of racketeering in violation of 18 U.S.C. § 1962(d) and from all other violation(s) of applicable State and federal law(s), be deemed to be held in constructive trust for the benefit of HUNTER, his heirs and assigns.

## PREVIOUS LAWSUITS AND ADMINISTRATIVE RELIEF

768.    HUNTER has not filed other lawsuits in state or federal court that deal with the same facts involved in this action.

## PRAYER FOR RELIEF

WHEREFORE, HUNTER respectfully requests that this Court enter judgment in his favor and against the DEFENDANTS and grant:

A. Appropriate declaratory and injunctive relief regarding the unlawful and unconstitutional acts and practices of the DEFENDANTS;

B. Compensatory and consequential damages, including damages for emotional distress, humiliation, loss of enjoyment of life, loss of liberty, privacy, sense of security and individual dignity, and other pain and suffering on all claims allowed by law;

C. Appropriate equitable relief against all DEFENDANTS as allowed by the Civil Rights Act of 1871, 42 U.S.C. § 1983, including the enjoining and permanent restraining of these violations, and direction to DEFENDANTS to take such affirmative action as is necessary to ensure that the effects of the unconstitutional and unlawful practices are eliminated and do not continue to affect HUNTER or others;

D. All economic losses and damages on all claims allowed by law to be established at trial;

E. Expunge all criminal records regarding HUNTER;

F. Punitive damages on all claims allowed by law and in an amount to be determined at trial;

G. Issuance of an Order mandating appropriate equitable relief, including, but not limited to:

1. Issuance of a formal handwritten apology from each Defendant to HUNTER, his mother, his father, his sister, and his two brothers;

2. The imposition of policy changes designed to avoid future similar misconduct by DEFENDANTS;

3. Mandatory training designed to prevent future similar misconduct by DEFENDANTS;

4. Attorneys' fees and the costs on all claims allowed by law;

5. Name the volleyball courts at the Stiff Park: The Hunter Tyler Schreck Memorial Volleyball Courts with a bronze plaque commemorating the name and with this quote: "Just like the man who has done nothing wrong."

6. Permanently name June 24 "Hunter Tyler Schreck Day" in Amarillo and Randall County, Texas.

G. Pre- and post-judgment interest at the lawful rate; and

H. Any further relief to which HUNTER may show himself justly entitled.

## **REQUEST FOR TRIAL BY JURY**

HUNTER REQUESTS TRIAL BY JURY ON ALL ISSUES SO TRIABLE.


This 15th day of January, 2022,


**Hunter Tyler Schreck**
6302 Oakcrest Lane
Amarillo, Texas 79109
254-651-7078 -- StarSchreck7@gmail.com


**Marcie Schreck by Power of Attorney**
**for Hunter Tyler Schreck**
6302 Oakcrest Lane
Amarillo, Texas 79109
254-651-7078 -- StarSchreck7@gmail.com

207

## AFFIDAVIT

Personally appeared before me, the undersigned Notary Public duly authorized to administer oaths, Marcie Schreck, who after being duly sworn deposes and states that she is authorized to make this affidavit and that the facts alleged in the foregoing are true and correct based upon her personal knowledge and based upon her discussions with Hunter Tyler Schreck, except as to the matters herein stated to be alleged on information and belief, and that as to those matters, she believes them to be true.

I declare under penalty of perjury that the foregoing is true and correct based upon my personal knowledge. I will testify competently thereto. I am over the age of 18 and am a resident of the State of Texas.

Executed in Randall County Texas, on this _____th day of January, 2022,

_____
**Marcie Schreck**

Sworn and subscribed before me this 15th day of January, 2022, in Randall County Texas, personally appeared Marcie Schreck, who after being duly sworn, on oath has stated that the above is true and correct based upon her personal knowledge.

Michaela Diane Stout
My Commission Expires
10/01/2024
ID No 132706160

_____
**Notary Public**

208